## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID RUDOVSKY and<br>LEONARD SOSNOV, | : | CIVIL ACTION –<br>JURY TRIAL DEMANDED |
| Plaintiffs, | : | |
| v. | : | NO. 09-CV-727 |
| WEST PUBLISHING CORPORATION,<br>WEST SERVICES INC., AND<br>THOMSON LEGAL AND REGULATORY<br>INC. t/a THOMSON WEST | : | |
| Defendant. | : | |

### AMENDED COMPLAINT – CIVIL ACTION

Plaintiffs David Rudovsky and Leonard Sosnov, by their undersigned counsel, hereby allege as follows:

### Parties

1.    Plaintiff David Rudovsky ("Rudovsky") is an adult individual, residing at 636 Westview Street, Philadelphia, Pennsylvania 19119. Rudovsky has had a distinguished career in the law, since his graduation from the New York University School of Law in 1967. He has served in the Defender Association of Philadelphia, including as First Assistant Defender, 1983-1986, and is currently President of the Board of Directors. He is a founding partner of the firm of Kairys, Rudovsky, Messing & Feinberg, LLP, where he has practiced law since 1971, and in which Mr. Rudovsky has practiced civil rights law. He has taught each year since 1972 at the University of Pennsylvania Law School, first as an Instructor of Law,

then as Visiting Assistant Professor of Law, and, since 1988, as a Senior Fellow teaching courses in Criminal Law, Evidence and Constitutional Criminal Procedure. Among the awards which Mr. Rudovsky has received are the Judge Gerald F. Flood Memorial Award (given by the Philadelphia Bar Foundation for public interest accomplishments) (1985); the MacArthur Foundation Fellowship and Award for Accomplishments in Civil Rights Law and Criminal Justice (1986); the ACLU Civil Liberties Award (1990); the Harvey Levin Memorial Award for Teaching Excellence (1990, 1993, 2004, 2007); the University of Pennsylvania Lindback Award for Teaching Excellence (1996); and the Cesare Beccaria Award for Work in Criminal Justice, Philadelphia Bar Association (2006).

2.      Plaintiff Leonard Sosnov ("Sosnov") is an adult individual residing at 1027 Abington Avenue, Wyndmoor, PA.   Mr. Sosnov graduated from Harvard Law School in 1971, and has had a long and distinguished career in the law since then. Mr. Sosnov was an attorney with the Defender Association of Philadelphia from 1972 to 1990, where he successfully argued numerous cases before the Pennsylvania Supreme Court.   He has also argued before the United States Supreme Court.   He has authored several law review articles concerning Pennsylvania Criminal Procedure.   Since 1990, he has been a professor of law at Widener University School of Law, where he teaches Criminal Law, Criminal Procedure, Advanced Criminal Procedure, and Evidence, and has also served as a Lecturer in Law and Visiting Professor at Temple University School of Law.

3.      Defendant West Publishing Corporation ("West Publishing") is, upon information and belief, incorporated under the laws of the state of Minnesota, with its principal office at 610 Opperman Drive, St. Paul, Minnesota.   West Publishing has a branch located at 5301 Tacony St., Philadelphia. Pennsylvania.

2

4.     Defendant West Services Inc. ("West Services") is, upon information and belief, incorporated under the laws of the State of Delaware, with its principal place of business at 610 Opperman Drive, St. Paul, Minnesota.

5.     Thomson Legal & Regulatory Inc. is, upon information and belief, incorporated in the state of Delaware, with its principal place of business at 610 Opperman Drive, St. Paul, Minnesota. Upon information and belief, Thomson Legal & Regulatory Inc. is also known as "Thomson West." West Publishing and West Services are subsidiaries of Thomson West.

6.     West Publishing, West Services and Thomson West (collectively referred to hereafter as "West") are each engaged in the business consisting of, or related to, publishing legal case books, treatises, practice guides, and other materials of interest to the legal community.  With respect to treatises, this business includes the publishing of updates, usually on an annual basis, and generally in the form of "pocket parts."  West also makes many, if not all, of its publications available in various computerized forms, including, *inter alia,* on its commercial computerized database known as "Westlaw," and/or on various websites operated by West.  These computerized databases are operated for commercial purposes, and, upon information and belief, purport to include the annual updates associated with the various print titles published by West.

### Jurisdiction and Venue

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1332.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), because the defendants reside in this District and because a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this District.

**Factual Background**

A.      The *Criminal Procedure in Pennsylvania* Treatise: 1987 through 2007.

9.      In 1987-1988 David Rudovsky, Esquire and Leonard Sosnov, Esquire ("Plaintiffs") authored a work on Criminal Procedure in Pennsylvania entitled "CRIMINAL PROCEDURE Law Commentary and Forms", which was published by West as part of West's "Pennsylvania Practice" Series in 1988.

10.      Thereafter, Plaintiffs on an annual basis provided a manuscript for pocket part updates, and they published a second edition in 2001.

11.      Following the publication of the second edition, through 2007, Plaintiffs continued to prepare annual pocket parts which were published by West. (The original edition, second edition, and pocket parts through 2007-2008 hereinafter are collectively referred to as "the Treatise").

12.      In preparing the pocket parts, Plaintiffs reviewed Pennsylvania court decisions and selected federal appellate cases and rule changes that were relevant to the Treatise. Each pocket part contained citations and discussions of approximately 100 to 150 new reported court decisions, as well as any relevant amendments to the Pennsylvania Rules of Criminal Procedure and appellate court and juvenile court rules.  The pocket parts contained revisions of text and commentary where warranted by new developments. The pocket parts also contained subsequent history of cases previously cited in earlier pocket parts.

13.      To the Plaintiffs' knowledge, because of the high quality of the work they submitted no substantive changes were made by West prior to publication.

14.      Almost all of the work which Plaintiffs performed in connection with the Treatise was done in Pennsylvania.

4

15.     Upon information and belief, there are between 500 and 1000 subscribers to the Treatise, and many more users of the Treatise.  Subscribers include district attorneys' offices, public defenders' offices, courts, law schools, prisons, law libraries and many other multi-user organizations.

16.     Upon information and belief, the vast majority of the subscribers to and users of the Treatise reside in Pennsylvania.

17.     Upon information and belief, the Treatise is also available to certain subscribers to Westlaw, who have the Treatise included in their Westlaw subscription, and to members of each subscriber's organization.

B.     The "2008-09 Pocket Part."

18.     In 2008, Plaintiffs and West were unable to reach agreement on the financial terms pursuant to which plaintiffs would prepare either a new edition of the Treatise or an updated pocket part.

19.     Following the breakdown of these negotiations, in December 2008, without providing any notice to the Plaintiffs, Thomson West published a document which it described as a "2008-09 Pocket Part" to the Treatise (hereafter the "2008-09 Pocket Part"). Thomson West identified Plaintiffs as the authors of the 2008-09 Pocket Part, and, in smaller print, also identified "The Publisher's Staff" as an author.  A copy of the cover page of the 2008-09 Pocket Part is attached hereto as Exhibit A.

20.     The "2008-09 Pocket Part" was sent by Thomson West to all subscribers to the Treatise under the terms of the subscribers' agreements with Thomson West, which required them to accept and pay for the pocket part on an annual basis, subject to termination of the agreement, and was also sent to any new purchasers of the Treatise.

21.     The subscribers to and users of the Treatise rely on the pocket part to provide them with up-to-date citations and analysis of appellate cases and rule changes in Pennsylvania.

22.     In discussions with subscribers and users, Plaintiffs were often advised that lawyers and others used this book as an essential, and up-to-date, reference for criminal law issues in Pennsylvania.

23.     Plaintiffs did not participate in any way in the authorship or preparation of the "2008-09 Pocket Part."

24.     The "2008-09 Pocket Part" contained almost no substantive information that was not in the 2007-2008 pocket part.

25.     Specifically, the "2008-09 Pocket Part" contains no reference to or discussion of substantial new developments in criminal law and/or criminal procedure in Pennsylvania.  In this regard, the "2008-09 Pocket Part" cites no cases decided in 2008, and cites only three cases decided in 2007 after the preparation of the 2007-2008 pocket part.[1]

26.     The "2008-2009 Pocket Part" does not include negative history of any cases during the year following the preparation of the pocket part for 2007-2008. Specifically, the following negative history does not appear in the pocket part, nor does it appear in the Westlaw database for the Treatise:

- *Commonwealth v. Mallory*, 888 A.2d 854 (Pa. Super. 2005), *vacated by* 596 Pa. 172, 941 A.2d 686 (2008), *cert. denied*, 129 S. Ct. 257 (2008);

---

[1] Section 9.0 of the 2008-09 Pocket Part cites to *Commonwealth v. Hanford*, 937 A.2d 1094 (Pa. Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008), while Section 4.0 cites to *Commonwealth v. Floyd*, 937 A.2d 494 (Pa. Super. 2007), and Section 11.0 cites to *Commonwealth v. Jones*, 593 Pa. 295, 929 A.2d 2005 (2007).  Of the three, only *Hanford* is even discussed substantively (albeit via parenthetical), while *Jones* is merely a "see also" cite and the *Floyd* citation does no more than quote from an earlier decision, *Commonwealth v. Monica*, 597 A.2d. 600 (Pa. 1991), which was discussed in the main edition of the Treatise at Section 4.0, p. 44.

- *Commonwealth v. Brown*, 853 A.2d 1029 (Pa. Super. 2004), *rev'd by* 592 Pa. 376, 925 A.2d 147 (2007);

- *Commonwealth v. West*, 868 A.2d 1267 (Pa. Super. 2005), *rev'd by* 595 Pa. 483, 938 A.2d 1034 (2007);

- *Commonwealth v. Wilson*, 866 A.2d 1131 (Pa. Super. 2003), *rev'd by* 594 Pa. 106, 934 A.2d 1191 (2007);

- *Commonwealth v. Bennett,* 842 A.2d 953 (Pa. Super. 2004), *vacated by* 593 Pa. 382, 930 A.2d 1264 (2007);

- *Commonwealth v. Gravely*, 918 A.2d 761 (Pa. Super. 2007), *allowance of appeal granted*, --- A.2d ----, 2008 WL 878654 (Pa. Apr 02, 2008); and

- *Commonwealth v. Lee,* 594 Pa. 266, 935 A.2d 865 (2007) (reversing Court of Common Pleas, Phila. Co. on direct appeal).

27.    Nor does the "2008-09 Pocket Part" contain any subsequent history with respect to other actions by the Pennsylvania Supreme Court in the period following preparation of the 2007-2008 pocket part. By way of example only, with respect to the case of *Commonwealth v. Gravely*, 2007 Pa. Super. 49, 918 A.2d 761 (2007), petition for allowance of appeal was granted by the Pennsylvania Supreme Court on April 2, 2008, and the case remains pending in the Pennsylvania Supreme Court.    Review was granted by the Pennsylvania Supreme Court on the very question which is discussed in the commentary, but the commentary in the 2008-09 Pocket Part relies on the decision by the Superior Court without any reference to the fact that review of that decision has been granted by the Pennsylvania Supreme Court. *See* 2008-09 Pocket Part, §16.18. Similarly, with respect to *In*

*Re: K.A.P.,* 2007 Pa. Super. 22, 916 A.2d 1152 (2007), the 2008-09 pocket part does not reference the fact that the Supreme Court has affirmed the Superior Court decision. *Id.,* §22.0

28.     Nor does the "2008-09 Pocket Part" include a number of pertinent rules changes which were announced in the period between preparation of the 2007-2008 pocket part and the time at which a manuscript for a 2008-09 pocket part would have been submitted to West. For example, the "2008-09 Pocket Part" failed to include any reference to the amendment to Pa. R. App. P. 2111, which added new section (a)(7), providing that an appellant's brief must include a "[s]tatement of the reasons to allow an appeal to challenge the discretionary aspects of a sentence, if applicable." Pa. R. App. P. 2111 (a)(7). Although Rule 2111 was amended on June 5, 2008, the amendment was not mentioned in the Pocket Part. Moreover, no fewer than three new Juvenile Rules were excluded from the "2008-09 Pocket Part" (Rules 140, 630 and 632), and revisions to the Pa. Rules of Juvenile Court Procedure were not included, including Rules 120, 123, 124, 150, 360, 364, 631 and 800. In sum, the "2008-2009 Pocket Part," in being represented as an update to the Treatise, was a sham, and West falsely attributed this product to Rudovsky and Sosnov.

29.     Any reasonably competent legal author would have included reference to, and discussion of, new developments in an annual pocket part to the Treatise, and the legal community would have expected, and did expect, such developments to be addressed in the 2008-09 Pocket Part. Indeed, it is precisely the point of a pocket part to update the readers of the Treatise on relevant legal developments since the publication of the prior pocket part.

30.     West failed to disclose that the "2008-09 Pocket Part" was not a bona fide update or annual pocket part, or that it contained almost no substantive information not already contained in the 2007-2008 pocket part.

C.      West's False Advertising of the 2008-09 Pocket Part and False Representation of Endorsement By Rudovsky and Sosnov.

31.     West has misrepresented the nature, characteristics, and/or qualities of the "2008-09 Pocket Part," and has sold the "2008-09 Pocket Part" to many subscribers based on these misrepresentations.

32.     West has falsely represented, advertised and marketed the 2008-09 Pocket Part as having been authored by Rudovsky and Sosnov, and as having been endorsed and sponsored by Rudovsky and Sosnov as well recognized and highly regarded experts in Pennsylvania in criminal law and criminal procedure.

33.     West has advertised and represented, both expressly and by clear implication, that the "2008-09 Pocket Part" is an annual update to the Treatise. This is a misrepresentation.

34.     Upon information and belief, Thomson West sent the "2008-09 Pocket Part" to subscribers in the same package which contained the invoice for this sham publication. The invoice notified the subscribers that they were obligated to pay for the publication at the price of $46.50 unless they returned it, at their own expense, within forty-five days.

35.     There has been no change in the commentary and discussion from the 2007-2008 pocket part in the "2008-09 Pocket Part," even concerning topics for which there was major court activity after the preparation of the 2007-2008 pocket part. Reference to new cases is almost non-existent, and the 2008-09 Pocket Part omits pertinent rules changes.

36.     In short, it appears that almost no substantive changes were made from the pocket part published and distributed in 2007.

37.     The cover page of the "2008-09 Pocket Part" states that it was prepared by David Rudovsky and Leonard Sosnov and (in substantially smaller print) "The Publisher's Staff." As to the Plaintiffs, this representation was, and is, false. *See* Ex. A.

38.     West's representation that the publication in fact constitutes a "2008-09 pocket part" – *i.e.*, an update to the Treatise – is false.  The "2008-09 Pocket Part" is not a "pocket part" for 2008-2009, and is neither a supplement to, nor a revision of, the Treatise, including the 2007-2008 pocket part.  It is simply a re-publication of the 2007-2008 pocket part.

39.     The foregoing misrepresentations and concealments by West were deliberate and intentional, done by West for the purpose of selling the "2008-09 Pocket Part" to subscribers and potential subscribers under false pretenses, including particularly that the publication had been authored and prepared by Plaintiffs and that it incorporated relevant changes and developments in the law since the preparation of the 2007-2008 pocket part.

40.     These   misrepresentations,   concealments,   and   sales   by   West substantially occurred in Pennsylvania.

41.     West also falsely represented on Westlaw and on its other information platforms, that the Treatise had been updated and revised on an annual basis, and was therefore current, and that this updating and revision had been done by Rudovsky and Sosnov. For example, each individual section of the Treatise that appears on Westlaw in the "PAPRAC - CPFC" database (the database dedicated to the Treatise), reads as follows:

West's(R) Pennsylvania Practice Series TM
Current through the 2008 Update

Criminal Procedure
David Rudovsky, Leonard Sosnov [Footnotes omitted].

Thus, the Westlaw version of the Treatise likewise represents to the legal community that plaintiffs are responsible for updating the Treatise to be a current statement of the law. Moreover, the Westlaw version of the Treatise does not even contain the authorial reference to "The Publisher's Staff" that appears on the 2008-09 Pocket Part. A search of the PAPRAC-CPAC database conducted on March 23, 2009 reveals no cases decided in 2008 and only one case with a 2008 citation – the Supreme Court's denial of the appeal in the *Hanford* case. *See* footnote 1, *supra*.

D.   West's Unauthorized and Defamatory Use of the Plaintiffs' Names and/or Reputations.

42.   West has falsely attributed preparation and authorship of the "2008-09 Pocket Part" (as well as updates generally after 2007) to Plaintiffs.

43.   West has misappropriated the names of David Rudovsky and Leonard Sosnov, and has severely damaged their reputations by falsely representing to subscribers, potential subscribers, users and the public that Rudovsky and Sosnov prepared and authored the "2008-09 Pocket Part" and otherwise brought current the Treatise.

44.   Plaintiffs' names – individually and collectively – have commercial value.

45.   Plaintiffs did not consent to the use of their names for the purpose of falsely representing that they authored, prepared or participated in the preparation of the "2008-09 Pocket Part," or for the purpose of falsely representing that the "2008-09 Pocket Part" was an update to or revision of the Treatise, or for the purpose of falsely representing on other information platforms that Rudovsky and Sosnov had made revisions and updates to the Treatise after 2007 so that the content remained current. By the actions set forth above, West has used the names of Plaintiffs for commercial purposes without their consent.

46.     By the above actions, West has published false and defamatory statements concerning Plaintiffs, including that they have authored the sham publication which purports to be a 2008-09 pocket part for the Treatise.

47.     These intentional actions have substantially damaged the reputations of Plaintiffs, individually and collectively, particularly in Pennsylvania.

48.     By intentionally appropriating Plaintiffs' names and casting their activities in a false light, West has invaded Plaintiffs' privacy under Pennsylvania law.

E.     Plaintiffs' Request That West Take Remedial Actions

49.     On February 3, 2009, Plaintiffs, through undersigned counsel, sent a letter to West, by overnight delivery, setting forth the information contained herein and demanding remedial action. A copy of the letter is attached hereto as Exhibit "B", and incorporated herein.

50.     The remedial actions demanded by Rudovsky and Sosnov included disclosure to the subscribers and to all persons accessing the Treatise through platforms controlled by West (including internet sites controlled by West) that the Treatise has not been updated or revised, that the "2008-09 Pocket Part" is not an update or revision and that it contains almost no additional information for the period following the preparation of the 2007-2008 pocket part, that Rudovsky and Sosnov had no involvement or role in the purported "2008-09 Pocket Part." Rudovsky and Sosnov also demand that West refund promptly to the subscribers their payments for the "2008-09 Pocket Part."

51.     West refused to implement any of these remedial measures.

52.     The February 3, 2009 letter set forth the facts concerning the "2008-09 Pocket Part," substantially as set forth in this Complaint.  West did not dispute any of these facts.

12

53. West continues to represent to subscribers and to other users of the Treatise and to the public that Rudovsky and Sosnov authored and prepared the "2008-09 Pocket Part" and that the Treatise, as it appears on commercial informational platforms owned and operated by West, is up-to-date and current.

54. In response to this lawsuit, and only after this lawsuit was filed, West sent a letter to subscribers and made limited changes on Westlaw which did little to remedy its wrongful actions set forth herein.

55. West's refusal to correct its misrepresentations or to otherwise attempt to remedy the harm it has done to Plaintiffs, subscribers, and users of the Treatise, including lawyers, students, teachers and judges, further evidences the deliberate, intentional and outrageous nature of its wrongful actions.

56. Plaintiffs are being irreparably harmed by West's continuing misrepresentations and defamation. So, too, are subscribers for and users of the Treatise and other services which West provides which include access to the Treatise. Plaintiffs and these third parties have no adequate remedy at law.

57. West's refusal to undertake remedial actions shows that injunctive relief is necessary.

58. Plaintiff's reputational and professional interest, and the public interest, requires that injunctive relief be afforded promptly.

## COUNT I: VIOLATION OF THE LANHAM ACT (FALSE ADVERTISING)

59. Paragraphs 1 through 58 above are incorporated herein by reference.

60. Section 43(a) of the Lanham Act protects authors from, *inter alia*, misrepresentations of their contributions to goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B).

13

61.    The "2008-09 Pocket Part" is a "good, service, or commercial activity" within the meaning of the Lanham Act.

62.    West's false attribution of the Work to the Plaintiffs has harmed and/or will harm their reputations among their colleagues in the legal community, the academic community, and with the courts. West's actions were intentional and deliberate at all material times.

63.    West's representation that the "2008-09 Pocket Part" constitutes a supplement, update, revision, improvement and/or amplification of the Treatise and/or the "2007-08 Pocket Part" is both literally and implicitly false.

64.    As a result of the foregoing, West has misrepresented the nature, characteristics, and/or qualities of the "2008-09 Pocket Part" in violation of the Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

65.    This is an "exceptional case under 15 U.S.C. § 1117(a).

66.    Plaintiffs' reputation for scholarship is critically important to their employment and occupations.  In the absence of prompt remedial measures, Thomson West's actions in falsely attributing authorship of the sham 2008-09 Pocket Part to Plaintiffs is likely to cause one, or both, Plaintiffs financial harm.

WHEREFORE, plaintiffs David Rudovsky and Leonard Sosnov ask that this Court grant injunctive relief, damages, punitive damages, and award attorneys' fees, as follows:

A.    Plaintiffs ask that this Court enjoin West to take the following actions promptly:

1.    Send a written communication to all subscribers of the Treatise in which West discloses to each subscriber that neither David Rudovsky nor Leonard Sosnov had any role whatsoever in connection with the "2008-09 Pocket Part," that the

"2008-09 Pocket Part" contains almost no substantive additions or revisions to the Treatise, and that the Treatise, including all pocket parts, does not reflect changes in the law, court decisions or a number of rule changes, or any other legal developments, concerning criminal procedure and law in Pennsylvania after the date of preparation of the 2007-2008 pocket part in the summer of 2007.

2.     Send to each subscriber to the Treatise a self-adhesive notice of sufficient size, for the stated purpose of being placed on the pocket part, disclosing the substance of the information contained in the foregoing paragraph, and advising that the pocket part cannot be relied upon for changes in the law, legal developments, and subsequent history concerning cases.

3.     Refund to all subscribers their payments for the "2008-09 Pocket Part."

4.     Cease advertising, selling or use of the "2008-09 Pocket Part."

5.     Cease advertising, selling or use of the Treatise without prominent disclosure of the fact that it has not been updated with respect to new cases, many rules changes, or other legal developments since the date of preparation of the 2007-2008 pocket part.

6.     Prominently disclose on Westlaw and all other internet or website platforms which provide access to the Treatise that the Treatise has not been updated with respect to new cases, many rules changes, or other legal developments after the date of preparation of the 2007-2008 pocket part in the summer of 2007, and delete and statements which suggest that the Treatise has been updated or revised, or that it is current.

7.     Prominently disclose in connection with any other use which West makes of the Treatise that the Treatise has not been updated with respect to new cases, many

15

rules changes, or other legal developments since the date of preparation of the 2007-2008 pocket part.

B.   Plaintiffs ask that judgment be entered against West and in favor of Rudovsky and Sosnov for compensatory damages in the amount of at least $150,000, including, but not limited to payment to plaintiffs of defendants' profits associated with the "2008-09 Pocket Part" pursuant to 15 U.S.C. §1117(a) and for punitive damages in an amount to be determined by this Court, and that the Court enter judgment against West in an amount constituting reasonable attorneys' fees and legal expenses for services rendered to Rudovsky and Sosnov in this case.

C.   Additional relief as the Court deems appropriate.

## COUNT II: VIOLATION OF THE LANHAM ACT (FALSE ENDORSEMENT)

67.   Paragraphs 1 through 66 above are incorporated herein by reference.

68.   Section 43(a) of the Lanham Act prohibits any person from falsely implying that another person endorses or sponsors a particular good or service. 15 U.S.C. § 1125(a)(1)(a).

69.   The "2008-09 Pocket Part" is a "good, service, or commercial activity" within the meaning of the Lanham Act.

70.   The names of David Rudovsky and Leonard Sosnov are well-known among lawyers, judges, scholars and other persons knowledgeable in the field of Pennsylvania criminal law and practice as representing a high standard for scholarship and expertise in the area of Pennsylvania criminal law and procedure. Moreover, lawyers, judges, scholars and other persons knowledgeable in the field of Pennsylvania criminal law and practice have come to associate the Treatise with David Rudovsky and Leonard Sosnov, and their names have thereby acquired secondary meaning.

16

71.     David Rudovsky and Leonard Sosnov have a legally protectable interest in the use of their names under the Lanham Act, and have not authorized West to use their names in connection with the sham "2008-09 Pocket Part."

72.     West's false and misleading use of the names of Rudovsky and Sosnov as "authors" of the "2008-09 Pocket Part," and as "authors" of a current and up-to-date legal treatise, falsely implies that Rudovsky and Sosnov endorse or sponsor the "2008-09 Pocket Part," and is likely to cause confusion among users as to plaintiffs' endorsement or sponsorship thereof.

73.     West's actions violate Section 43(a) of the Lanham Act, prohibiting false endorsements.

74.     Plaintiffs' reputation for scholarship is critically important to their employment and occupations.  In the absence of prompt remedial measures, Thomson West's actions in falsely representing that Rudovsky and Sosnov endorse or sponsor the sham "2008-09 Pocket Part" to Plaintiffs is likely to cause Plaintiffs financial harm.

WHEREFORE, plaintiffs David Rudovsky and Leonard Sosnov ask that this Court grant injunctive relief, damages, punitive damages, and award attorneys' fees, as set forth in Count I.

## COUNT III:  UNAUTHORIZED USE OF NAME UNDER 42 PA. C.S. § 8316

75.     Paragraphs 1 through 74 above are incorporated herein by reference.

76.     Pennsylvania law provides that any person whose name "has commercial value and is used for any commercial or advertising purpose without the[ir] written consent . . . may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use." 42 Pa. C.S. § 8316.

77.    As attorneys well known for their expertise on Pennsylvania criminal procedure, the Plaintiffs' names, individually and collectively, have 'commercial value' within the meaning of the above statute.

78.    This commercial value was developed by Plaintiffs through substantial investments of time, effort and money.

79.    West unlawfully included and held out the Plaintiffs' names on, and in connection with, its distribution and/or sale of the "2008-09 Pocket Part," which is a product, merchandise, good, and/or service.

80.    By doing so, West misrepresented the nature, characteristics, and/or qualities of the "2008-09 Pocket Part."

81.    Plaintiffs did not authorize the use of their names in this manner.

82.    West had actual knowledge of the unauthorized use of the names of Rudovsky and Sosnov on the sham "2008-09 Pocket Part."

83.    Plaintiffs have sustained damages, and will continue to sustain damages, as a result of these violations of Section 8316, in the form of harm to their reputations among their colleagues in the legal community, in the academic community, and in the general public.

84.    The damages and harm to Plaintiffs have taken place, and are continuing, and are irreparable, so the Plaintiffs lack an adequate remedy at law and require injunctive relief.

85.    The wrongful actions by Defendants in this case were egregious, and done intentionally to injure Plaintiffs or with deliberate indifference to the reputation and rights of Plaintiffs.

WHEREFORE, plaintiffs David Rudovsky and Leonard Sosnov demand relief and judgment in their favor and against West as set forth in Count I.

### COUNT IV: DEFAMATION

86.     Paragraphs 1 through 85 above are incorporated herein by reference.

87.     The publication of the "2008-09 Pocket Part" constitutes a false statement that the Plaintiffs authored the publication and that it is an update and revision which contains information to bring the Treatise current in accordance with professional standards.

88.     These statements are defamatory. The publication is a sham – it is not an update to either the 2007-2008 pocket part or to the Treatise as a whole, and it does not contain substantial relevant material that the legal community would expect in such a publication in order for it to meet minimum professional standards, much less the high standard of professionalism and legal scholarship that the legal community associates with Plaintiffs.

89.     West has circulated these defamatory statements to all subscribers of the "2008-09 Pocket Part," and to all persons that access and/or use the publication.

90.     West made the above statements intentionally, with knowledge of their falsity and defamatory meaning.

91.     West was not privileged to make any of the above statements.

92.     West has made similar and equivalent representations on Westlaw and other information platforms that it owns and operates, and which are widely used by the legal community.

19

93.   As a direct and proximate result of this sham publication, West's false and defamatory statement regarding the Plaintiffs' authorship has harmed their personal and professional reputations.

94.   West's defamatory statements are continuing.

WHEREFORE, plaintiffs David Rudovsky and Leonard Sosnov demand relief and judgment in their favor and against West as set forth in Count I.

## COUNT V: INVASION OF PRIVACY – APPROPRIATION OF NAME

95.   Paragraphs 1 through 94 above are incorporated herein by reference.

96.   Under Pennsylvania common law, one who appropriates for its own use or benefit the name or likeness of another is subject to liability to the other for invasion of privacy – appropriation of name or likeness.

97.   By falsely describing Plaintiffs as authors of the 2008-09 Pocket Part, West has appropriated the names of Plaintiffs for its own commercial purposes.

98.   Neither of the Plaintiffs consented to West's use of their names as authors of a sham 2008-09 pocket part.  Hence, their privacy has been invaded.

99.   West's appropriation of the names of Rudovsky and Sosnov on the Treatise, Westlaw, and the other information platforms that it owns and operates for commercial purposes, as authors of the Treatise which they have updated and revised so that it is current, is a further unauthorized appropriation by West of their names for commercial purposes.

100.   West's appropriation of their names, individually and collectively, has harmed Plaintiffs, in the legal community, in the academic community, and with the public, and has caused them distress.

WHEREFORE, plaintiffs David Rudovsky and Leonard Sosnov demand relief and judgment in their favor and against West as set forth in Count I.

## COUNT VI: INVASION OF PRIVACY – FALSE LIGHT

101.    Paragraphs 1 through 100 above are incorporated herein by reference.

102.    Under Pennsylvania common law, one who makes a major misrepresentation of a person's activities or beliefs is subject to liability to the other for invasion of privacy – false light.

103.    West's publication of the "2008-09 Pocket Part" constitutes a major misrepresentation of the Plaintiffs' activities with respect to their involvement with the publication, when in fact they had no involvement.

104.    West's publication of the "2008-09 Pocket Part" also constitutes a major misrepresentation of the Plaintiffs' beliefs, because West's publication represents that Plaintiffs approve of the publication as updated and revised so that it is current for use in 2008-2009, when in fact they do not.

105.    West's use of the Plaintiffs' names in connection with the Treatise, on the informational commercial platforms owned and controlled by West, is a similar and equivalent misrepresentation of Plaintiffs' activities and beliefs.

106.    The above acts have cast the Plaintiffs in a false light which is highly offensive to Plaintiffs and to a reasonable person in the Plaintiffs' position.

107.    Plaintiffs have been harmed by West's invasion of their privacy, individually and collectively, because the sham publication of the 2008-09 Pocket Part has damaged their reputations in the legal community, and has caused them distress and/or humiliation.

WHEREFORE, plaintiffs David Rudovsky and Leonard Sosnov demand relief and judgment in their favor and against West as set forth in Count I.

Richard L. Bazelon, Esquire (I.D. No. 02505)
Noah H. Charlson, Esquire (I.D. No. 89210)
Michael F. Harris, Esquire (I.D. No. 56948)
Matthew R. Skolnik, Esquire (I.D. No. 89423)
BAZELON LESS & FELDMAN, P.C.
1515 Market Street, Suite 700
Philadelphia, PA  19102
(215) 568-1155
Email: rbazelon@bazless.com

Attorneys for Plaintiffs,
David Rudovsky and Leonard Sosnov

Dated:  March 24, 2009

## CERTIFICATE OF SERVICE

I certify that on this 24th day of March, 2009, I served a true and correct copy of the foregoing Amended Complaint upon the following person, by first class mail and Federal Express:

James Rittinger, Esquire
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, Suite 1130
New York, NY 10169
*Counsel for Defendants*

Noah H. Charlson

# EXHIBIT A

# WEST'S® PENNSYLVANIA PRACTICE SERIES™

## Volume 2

## CRIMINAL PROCEDURE

Law, Commentary and Forms

2008–2009 Pocket Part
Issued in December 2008

By

**DAVID RUDOVSKY**
Member of the Pennsylvania Bar
Senior Fellow, University of Pennsylvania Law School

**LEONARD SOSNOV**
Member of the Pennsylvania Bar
Professor of Law, Widener University School of Law

and
THE PUBLISHER'S STAFF

**THOMSON**
**WEST**

*For Customer Assistance Call 1-800-328-4880*

Mat #40609233

# EXHIBIT B

# BLF Bazelon Less & Feldman, P.C.

1515 Market Street   Suite 700   Philadelphia   Pennsylvania 19102-1907   215.568.1155   215.568.9319 fax   www.bazless.com

Richard L. Bazelon·†
Jeffrey A. Less·†
A. Richard Feldman·†
Jerrilyn G. Marston·
Thomas Patrick Kelly·†
Jennifer L. Hoagland·†
Helen R. Helfets·†
Paul B. Bech·†
Noah H. Charlson·§†
Lisa A. Barton·†
E. McCord Clayton·†

Michael A. Shapiro·†
Matthew Skolnik·
Christina M. Reger·†
Cary Joshi·

Diane R. Bech·
Michael F. R. Harris·
Steven Kudatzky·§
Peter F. Marvin·
Of Counsel

*Admitted in PA
†Admitted in NJ
§Admitted in NY
‡Admitted in DC

New Jersey Office
6000 Sagemore Drive
Suite 6301
Marlton
New Jersey 08053-3944
856.988.1319
856.988.0194 fax

February 3, 2009

**Richard L. Bazelon**
rbazelon@bazless.com

Direct Dial: (215) 609-3141
Direct Fax: (215) 609-3211

<u>**VIA FEDERAL EXPRESS**</u>

Deidre Stanley, Esquire
General Counsel, Thomson Reuters
3 Times Square
New York, NY 10036

    Re:   **David Rudovsky and Leonard Sosnov,**
               **Pennsylvania Practice–Criminal Procedure**
               <u>**Our File No. 3977/1**</u>

Dear Ms. Stanley:

    This firm represents David Rudovsky, Esquire and Leonard Sosnov, Esquire, with respect to their claim against Thomson West arising from the publication of the 2009-2009 Pocket Part of their treatise, *Pennsylvania Practice–Criminal Procedure, Law Commentary and Forms.*

    A.    HISTORY

    David Rudovsky and Leonard Sosnov ("authors") entered into an Agreement with Thomson West ("publisher") in 1987 to write a text on Criminal Procedure in Pennsylvania to be published as part of West's Pennsylvania Practice Series. The authors completed the text and it was first published in 1988. Thereafter, the authors on an annual basis provided a manuscript for pocket part updates and published a second edition in 2001. Following the publication of the second edition, authors continued to write and publish annual pocket parts. (The original edition, second edition, and pocket parts are hereinafter referenced as "the Treatise").

    In preparing the pocket parts, the authors read all decisions in Pennsylvania and selected federal appellate courts that were relevant to the Treatise. Each pocket part contained citations and discussions of approximately 100 new cases, and of amendments to the Rules of Criminal Procedure by the Pennsylvania Supreme Court, with revision of text and commentary where warranted. To the authors' knowledge,

**BLF**

Deidre Stanley, Esquire
February 3, 2009
Page 2

the work they submitted was so well done, it never needed editorial changes with respect to the substance of the revisions.

In 2008, authors and publisher were unable to reach agreement on the financial terms for a new edition or pocket part. Publisher, without additional notice to the authors, decided to publish a pocket part for 2008-2009. This pocket part was published in December, 2008, with the title, listing of authors, and, in smaller print, an additional author identified as "The Publisher's Staff."

The 2008-2009 pocket part was sent to all subscribers of the Treatise under the terms of their agreement with publisher to accept and pay for the pocket part on an annual basis, subject to termination of the agreement. The subscribers are lawyers and others who are involved in criminal justice issues in Pennsylvania (and elsewhere) including, presumably, libraries and courts, who rely on the pocket part to provide them with up-to-date citations and analysis of appellate cases and rule changes in Pennsylvania. In discussions with subscribers, the authors were often advised that lawyers used this book as an essential, *and up to date*, reference for criminal law issues in Pennsylvania.

B.   THE 2008-2009 POCKET PART

Review of the 2009-2009 pocket part reveals that it is not an update or revision to the treatise, including the 2007-2008 pocket part. To the contrary, it is simply a re-publication of the 2007-2008 pocket part. The 2008-2009 pocket part contains no new cases and no reference or discussion of new developments in criminal law and/or criminal procedure in Pennsylvania. In this regard, there are no cases dated "2008" in the table of cases. Further, all the 2007 cases that are cited appear to have been part of the 2007-2008 pocket part, and there is no subsequent history given for these cases, including action by the Pennsylvania Supreme Court.[1] There does not appear to be any change in the commentary and discussion from the 2007-2008 pocket part, even concerning topics for which there was major court activity between the dates of preparation of the 2007-2008 pocket part and the publication of the 2008-2009 pocket part. In short, it appears that *no changes were made from the pocket part published and distributed in 2007.*

The 2008-2009 pocket part, on the cover page, states that it was prepared by David Rudovsky and Leonard Sosnov and (in substantially smaller print) "The

[1]     For example, with respect to the case of *Commonwealth v. Gravely*, 2007 Pa. Super. 49, 918 A.2d 761 (2007), petition for allowance of appeal was granted by the Pennsylvania Supreme Court on April 2, 2008, and the case remains pending in the Pennsylvania Supreme Court. Review was granted by the Pennsylvania Supreme Court on the very question which is discussed in the commentary, and the commentary relies on the decision by the Superior Court without any reference to the fact that review of that decision has been granted by the Pennsylvania Supreme Court. Similarly, with respect to *In Re: K.A.P.*, 2007 Pa. Super. 22, 916 A.2d 1152 (2007), the 2008-2009 pocket part does not reference the subsequent history in the form of affirmance of the Superior Court decision.

**BLF**

Deidre Stanley, Esquire
February 3, 2009
Page 3

Publisher's Staff". As to David Rudqvsky and Leonard Sosnov, this representation is clearly false. Moreover, the entire representation that the publication is a "2008-2009 pocket part" is blatantly false. The "2008-2009 pocket part" is not a "pocket part" for 2008-2009, and is not a revision of the Treatise, including the 2007-2008 pocket part. It is simply a re-publication of the 2007-2008 pocket part.

C.    THE CURRENT SITUATION

Thomson West has used the name of David Rudovsky and the name of Leonard Sosnov to promote a publication (the "2008-2009 pocket part") concerning which they played no role. The publication which Thomson West has falsely attributed to David Rudovsky and Leonard Sosnov is worse than unprofessional – it is a sham. Thomson West has not only misappropriated the names of David Rudovsky and Leonard Sosnov, but has also severely damaged their reputations by associating their names with a sham publication.

Thomson West has also perpetrated a fraud on the subscribers to this publication, by falsely representing that (1) David Rudovsky and Leonard Sosnov are responsible for the publication, and (2) that the publication is an update of the treatise authored by David Rudovsky and Leonard Sosnov, including the 2007-2008 pocket part. Thomson West has taken payments from the subscribers based on intentional misrepresentation and false advertising, and has falsely associated David Rudovsky and Leonard Sosnov with these actions.

D.    VIOLATIONS OF LAW BY THOMSON WEST

The actions by Thomson West have substantially damaged the reputations of David Rudovsky and Leonard Sosnov and will inflict further severe damage to their reputations in the absence of prompt remedial action, as set forth herein. The false representations are defamatory. *See, e.g., Walker v. Grand Central Sanitation, Inc.,* 634 A.2d 237, 240 (Pa. Super. 1993). Recovery for damage to reputation does not require proof of pecuniary loss; damages can be inferred from the circulation of a defamatory publication. *Walker, supra* at 251; *Joseph v. Scranton Times, L.P.,* 959 A.2d 322, 344 (Pa. Super. 2008). In addition, the actions by Thomson West constitute misappropriation of the names of David Rudovsky and Leonard Sosnov. *See Fanelle v. LoJack Corp.,* 79 F.Supp. 2d 558, 563-564 (E.D. Pa. 2000).

In addition, the actions by Thomson West violate section 43(a)(1)(B) of the federal Lanham Act, 15 U.S.C. § 1125, on the basis that Thomson West has engaged in false attribution under the false advertising prong of that statute. *See Gilliam v. ABC, Inc.,* 538 F.2d 14, 24-25 (2d Cir. 1976); *Follett v. New Am. Library, Inc.,* 497 F. Supp. 304, 313 (S.D.N.Y. 1980); McCarthy on Trademarks & Unfair Competition, §§ 27:77.1, 27:84 (4th ed.). Moreover, this false attribution was intentional and

**BLF**

Deidre Stanley, Esquire
February 3, 2009
Page 4

deliberate, which would allow David Rudovsky and Leonard Sosnov to recover their legal fees in this matter.

There are other legal bases for David Rudovsky and Leonard Sosnov obtaining injunctive relief, damages, and attorneys' fees. The foregoing bases are sufficient for the purposes of this letter and the relief demanded herein. We anticipate setting forth additional bases for relief in the event that it is necessary for David Rudovsky and Leonard Sosnov to seek relief in court.

E.   DEMAND FOR RELIEF

Based on the foregoing, and without prejudice to the relief which they may seek in the event that they need to take action in court, David Rudovsky and Leonard Sosnov demand that the following relief be promptly provided:

1.   A letter by Thomson West to all subscribers of the Treatise in which Thomson West discloses to each subscriber that neither David Rudovsky nor Leonard Sosnov had any role whatsoever in connection with the 2008-2009 pocket part, that the 2008-2009 pocket part contains no substantive additions or revisions to the Treatise (including the 2007-2008 pocket part), and that the Treatise, including all pocket parts, does not reflect changes in the law, court decisions or rule changes, or any other legal developments, concerning criminal procedure and law in Pennsylvania after the date of preparation of the 2007-2008 pocket part. The letter shall contain a complete refund of any money paid by the subscriber for the 2008-2009 pocket part.

2.   Thomson West shall not advertise or make any further sales, or use of, the 2008-2009 pocket part.

3.   Thomson West shall not advertise, sell or otherwise use the Treatise without prominent disclosure of the fact that it has not been updated with respect to new cases, rules changes, or other legal developments since the date of preparation of the 2007-2008 pocket part.

4.   Thomson West shall prominently disclose on Westlaw and all other internet or website communications that the Treatise has not been updated with respect to new cases, rules changes, or other legal developments after the date of preparation of the 2007-2008 pocket part, and any references to updating or pocket parts at a date thereafter shall be deleted.

5.   To the extent that Thomson West makes any other use of the Treatise, it shall prominently disclose that the Treatise has not been updated

**BLF**

Deidre Stanley, Esquire
February 3, 2009
Page 5

with respect to new cases, rules changes, or other legal developments
since the date of preparation of the 2007-2008 pocket part.

6. Thomson West shall not use the name of David Rudovsky nor the
name of Leonard Sosnov with respect to any pocket part or other
revision of the Treatise in the future.

7. Thomson West shall pay David Rudovsky and Leonard Sosnov the
sum of $75,000 in damages.

8. Thomson West shall pay David Rudovsky and Leonard Sosnov, or
other counsel, the sum of $10,000 in attorneys' fees.

The foregoing demands for relief are predicated on Thomson West promptly
accepting these terms, and thereby relieving David Rudovsky and Leonard Sosnov of
the necessity of proceeding by court action.

In the event that this matter is not resolved in the next two weeks, or by
February 17, 2009, Mr. Rudovsky and Mr. Sosnov intend to proceed in court and to
seek immediate injunctive relief. Please identify the attorneys on whom we should
make service if court action is required.

Sincerely yours,

Richard L. Bazelon

RLB/stj

cc:    David Rudovsky, Esq.
       Leonard Sosnov, Esq.