# IN THE U.S. DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID RUDOVSKY and LEONARD SOSNOV, | CIVIL ACTION |
| Plaintiffs, | NO. 09-CV-727 |
| v. | |
| WEST PUBLISHING CORPORATION, WEST SERVICES INC., and THOMSON LEGAL AND REGULATORY INC. t/a THOMSON WEST, | |
| Defendants. | |

## ORDER

AND NOW, this ____ day of _____, 2009, upon consideration of the Emergency Motion For Adjournment of Preliminary Injunction Hearing Currently Set for April 9, 2009 (the "Motion") of Defendants West Publishing Corporation, West Services Inc., and Thomson Reuters (Legal) Inc. (formerly known as Thomson Legal and Regulatory Inc.) d/b/a Thomson West, IT IS HEREBY ORDERED that the Motion is GRANTED;

AND IT IS FURTHER ORDERED that the hearing on plaintiffs' motion for preliminary injunction is hereby rescheduled to _____, 2009.

_____
John P. Fullam, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID RUDOVSKY and<br>LEONARD SOSNOV,<br>             Plaintiffs,<br><br>      v.<br><br>WEST PUBLISHING CORPORATION,<br>WEST SERVICES INC., AND<br>THOMSON LEGAL AND REGULATORY<br>INC. t/a THOMSON WEST,<br>             Defendants. | : CIVIL ACTION<br>:<br>:<br>:<br>: NO. 09-CV-727<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## DEFENDANTS' EMERGENCY MOTION FOR ADJOURNMENT OF PRELIMINARY INJUNCTION HEARING CURRENTLY SET FOR APRIL 9, 2009

COME NOW, the defendants West Publishing Corporation, West Services Inc., and Thomson Reuters (Legal) Inc. (formerly known as Thomson Legal and Regulatory Inc.) d/b/a Thomson West (together "West"), by and through their attorneys Klehr, Harrison, Harvey, Branzburg & Ellers LLP and Satterlee Stephens Burke & Burke LLP, to move for an adjournment of the preliminary injunction hearing that the Court set *sua sponte* on April 9, 2009 – a date that problematically: (i) falls on the Jewish holiday of Passover, (ii) cuts short West's time, pursuant to Local Rule 7.1 and Fed. R. Civ. P. Rule 6(d), to oppose plaintiffs' preliminary injunction motion, and (iii) cuts short West's time of April 22 (stipulated to by the parties) to answer or move with respect to plaintiffs' Amended Complaint.

Despite the foregoing issues, plaintiffs' counsel has refused to consent to an adjournment of the hearing from April 9 to the following week (April 14 or 15), or any week following (April 20-22 or 27-29). Rather, plaintiffs' counsel insisted on moving the hearing up to April 8 (also Passover) or April 6 – either of which further prejudices defendants in their

766351_5

opposition, further seeks to deny defendants' rights under the FRCP and prior stipulation, and conflicts with a scheduled hearing of West's lead counsel on April 7.

It should also be noted that plaintiffs filed their complaint over a month ago (on February 19, 2009) and ***did not*** move for a TRO or preliminary injunctive relief. Moreover, plaintiffs just served their amended complaint and motion for preliminary injunction, by mail, on March 24. Defendants have expeditiously brought this motion within two business days of the Court's notice setting the preliminary injunction hearing for April 9.

Finally, plaintiffs' Amended Complaint amounts to nothing more than a publishing dispute over "West's Pennsylvania Practice Series, Criminal Procedure" (Am. Compl. ¶¶ 11, 19 & Ex. A), which is governed by a <u>written publishing agreement</u>. Yet, plaintiffs have blatantly misrepresented to the Court the basis of their claims by failing to mention an agreement anywhere in their allegations, much less mention that they, as authors, signed a written publishing contract with West on August 22, 2000 (the "**Agreement**") that governs their claims. Among other things, the Agreement: (i) eviscerates **all** of plaintiffs' claims (which is clearly why plaintiffs have purposefully omitted any reference to it); and (ii) sets venue in Minnesota pursuant to a mandatory venue clause. See Points I & II, <u>infra</u>. In addition, West's own actions in sending a March 2009 letter to subscribers of the work (which plaintiffs mention, but fail to attach to their Amended Complaint) demonstrates that any potential harm that would remotely support the issuance of a preliminary injunction has already been attenuated. See Point III, <u>infra</u>.

Based upon Points I and II, West is moving to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(3) & (b)(6). In light of that impending motion and the lack of irreparable harm (Point III), West respectfully requests that the preliminary injunction hearing be adjourned and that a briefing schedule be set to address the viability of plaintiffs' claims in light of the Agreement and West's 12(b) motion to dismiss.

# ARGUMENT

It is well-settled in this Circuit that a plaintiff with a legally deficient claim cannot survive a motion to dismiss simply by failing to attach a dispositive document on which its claims rely. Miller v. Clinton County, 544 F.3d 542, 550 n. 3 (3d Cir (Pa.) 2008); In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Ben. Guar. Corp. ["PBGC"] v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. (Pa.) 1993). Indeed, in the PBGC case, a defendant had asked the district court to consider a purchase and sale agreement between plaintiff and defendant that the plaintiff did not attach to the complaint, and the Third Circuit first announced the rule that:

> a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

PBGC, 998 F.2d at 1196 (internal citations omitted)

Apropos of the case at bar, the court in Majewski v. Luzerne County, 2007 WL 1074769, 18-19 (M.D. Pa. 2007), considered a collective bargaining agreement that plaintiff nowhere mentioned in his amended complaint because the agreement was "integral" to plaintiff's claims (tort and due process claims); as the court reasoned, plaintiff would not have had an employment relationship on which to sue but for the agreement.

Here, as in PBGC and Majewski, plaintiffs attempt to bring legally deficient claims by avoiding any mention of a publishing Agreement which is integral to their claims. (Annexed hereto as **Exhibit A** is the publishing Agreement between plaintiffs Rudovsky and Sosnov, as authors, and West, as publisher, executed by plaintiffs on August 22, 2000).

3

766351_5

### Plaintiffs' Claims

The sum and substance of plaintiffs' claims is that West "wrongfully" published a "2008-09 Pocket Part" to the "Treatise" (i.e., "West's Pennsylvania Practice Series, Criminal Procedure" and pocket parts) because: (i) plaintiffs did not participate in creating the 2008-09 Pocket Part (which states on the cover that it was prepared by plaintiffs and "The Publisher's Staff"); and (ii) the 2008-09 Pocket Part was allegedly incompetently authored/revised. See Am. Compl. ¶¶ 11, 19, 23, 29, 37 & Ex. A thereto.

Based upon West's alleged misuse of plaintiffs' names and the alleged poor quality of the 2008-09 Pocket Part, plaintiffs set forth six causes of action: false advertising and false endorsement under the Lanham Act (Counts I & II); unauthorized use of name under Pennsylvania Code § 8316 (Count III); defamation (Count IV); and common law claims for misappropriation of name and invasion of privacy/false light (Counts V & VI). Am. Compl. ¶¶ 59-107. None of these claims are viable in light of the Agreement.

### The Publishing Agreement

Exhibit A to the Amended Complaint clearly identifies the work about which plaintiffs complain: "West's Pennsylvania Practice Series, Criminal Procedure" (Am. Compl. ¶¶ 11, 19 & Ex. A thereto) – a work that the Agreement clearly controls, defining "Work" as:

> two original works (the "Work") tentatively entitled 1) West's Pennsylvania Forms Criminal Procedure and 2) West's Pennsylvania Practice Criminal Procedure regarding the law of criminal procedure in Pennsylvania.

Agmt., § 1, Ex. A hereto (emphasis added). In particular, plaintiffs take issue with the "2008-09 Pocket Part" (Am. Compl. ¶ 19), which the Agreement also controls as part of the Work: "**All references to the 'Work' in this Agreement also apply to such upkeep as well as to the original Work** unless otherwise provided." Id., § 2(B) (emphasis added); see also § 3(A)(2).

4

Indeed, West possesses the right to "edit, alter, and reorganize the Work as it deems appropriate" (id., § 7), and to:

> <u>publish</u>, reproduce, transmit, <u>adapt</u>, <u>sell</u>, <u>or otherwise make use of the Work</u> or portions of the Work (including **<u>all subsequent editions, supplements, and versions of the Work, regardless of length or nature</u>**) <u>throughout the world</u> **in any form** <u>or medium</u>, now or hereinafter devised . . .

Id., § 4(B)(2) (emphasis added). Thus, the 2008-09 Pocket Part that is the subject of plaintiffs' claims is indisputably governed by the Agreement, despite plaintiffs' failure to mention the existence of the August 22, 2000 Agreement.[1]

The Court need only compare the Agreement against plaintiffs' Amended Complaint to see that plaintiffs have submitted a materially misleading pleading in an attempt to plead around the Agreement, as several of the Agreement's provisions are integral to, and dispositive of, plaintiffs' claims. <u>PBGC</u>; <u>Majewski</u>, <u>supra</u>.

First, West has the unequivocal right to use plaintiffs' names in connection with the Work:

> Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work. If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit in addition to or in lieu of credit given to Authors.

Agmt., § 3(A)(2). Similarly, plaintiffs gave West the right to:

> Use, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, including revisions and new editions, as

---

[1] Indeed, plaintiffs never mention the Agreement in the Amended Complaint as if to suggest that plaintiffs' efforts on the Treatise and subsequent pocket parts had occurred in a vacuum rather than under the parties' written Agreement. Yet, plaintiffs themselves define the "Treatise" as "[t]he original edition, <u>second edition, and pocket parts through 2007-2008</u>" and allege that "[f]ollowing publication of the second edition, through 2007, Plaintiffs <u>continued to prepare annual pocket parts</u> which were published by West." <u>See</u> Am. Compl. ¶ 11 (emphasis added).

>Publisher sees fit, and generally in connection with the advertising and promotion of the Work, including revisions and new editions.

Id. § 7(4).

Second, "Publisher has sole discretion in determining the acceptability of the Work" and "may edit, alter, and reorganize the Work as it deems appropriate." Id. § 7.

Third, the Work was and is "a work made for hire within the meaning of the United States copyright laws" [§ 4(A)7], and to the extent that "any portion of the Work or work product" is not deemed to be a work made for hire under applicable copyright law:

> <u>each Author grants, transfers and assigns</u> exclusively to Publisher for the full term of the copyright and any renewals or extensions of the copyright all rights in the Work, or any portion of the Work, including but not limited to: . . . 2. The right to <u>publish</u>, reproduce, transmit, <u>adapt</u>, <u>sell</u>, <u>or otherwise make use of the Work</u> or portions of the Work (including **all subsequent editions, supplements, and versions of the Work, regardless of length or nature**) throughout the world in any form or medium, now or hereinafter devised . . . for the entire term of the copyright.

Id. § 4(B)(2) (emphasis added).

Fourth, plaintiffs were required to bring this action, though specious, in Minnesota, pursuant to an exclusive venue provision: "Any legal action arising under this Agreement will be brought in the appropriate federal or state court in the State of Minnesota." Id. § 11(B).

Finally, the Agreement provides that it "is the entire agreement of the parties," that "[a]ll prior negotiations and representations are merged into this Agreement" and that "[t]his Agreement supercedes all previous agreements regarding the Work." Id. § 11(H).[2]

---

[2] There was a July 31, 1987 publishing agreement concerning a work entitled "Pennsylvania Legal Forms – Criminal Procedure" which is not at issue in the Amended Complaint and was superceded by the parties' 2000 Agreement. See Agmt., §§ 1, 11(H). Moreover, the parties had a stand-alone agreement concerning a "Pennsylvania Practice Criminal Procedure 2007 Supplement" which, as plaintiffs concede, is also not at issue in the Amended Complaint. See Pls.' Prelim. Injunction Br., p. 1 fn. 2 (Docket #4).

## Point I
## Plaintiffs' Failure To State Any Viable Claims

Count II (false endorsement under the Lanham Act), Count III (unauthorized use of name under Pennsylvania Code § 8316), and Counts V and VI (common law claims for misappropriation of name and invasion of privacy/false light) all fail as a matter of law here because West possesses <u>written authority</u> "to use Authors' names in connection with the Work and upkeep of the Work" [Agmt., § 3(A)(2)], and to "[u]se, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, including revisions and new editions, as Publisher sees fit." <u>Id.</u>, § 7[4]. Given that the statutory and common law claims are premised upon <u>unauthorized</u> use of one's name, those four causes of action must be dismissed in light of the Agreement.

Plaintiffs' Count I (false advertising under the Lanham Act) fails as a matter of law because, among other reasons, West possesses the right to use plaintiffs' names "generally in connection with the <u>advertising</u> and <u>promotion</u> of the Work." Agmt. § 7[4] (emphasis added). Moreover, to the extent that plaintiffs complain that West's cover-page gives attribution to the "Publisher's Staff" and the plaintiffs (Am. Compl. ¶¶ 37, 62), the Agreement clearly gives West such right:

> Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work. If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit <u>in addition to or in lieu of credit given to Authors</u>.

Agmt., § 3(A)(2) (emphasis added).

Similarly, plaintiffs' Count IV for defamation is legally devoid of merit because, among other things, it is based upon the allegation that "the 2008-09 Pocket Part constitutes a false statement that the Plaintiffs authored the publication." Am. Compl. ¶ 87. While plaintiffs

7

also assert that the alleged poor quality of the 2008-09 is actionable because "it does not contain substantial relevant material that the legal community would expect in such a publication" (id.), such editorial claims do not sound in defamation and are barred by the express provision of the Agreement giving West the power to "edit, alter, and reorganize the Work as it deems appropriate." Agmt., § 7.

In light of the patent deficiencies in plaintiffs' claims and plaintiffs' materially misleading Amended Complaint, defendants suggest that an adjournment of the April 9 preliminary injunction hearing is appropriate.

## Point II
### Improper Venue

The preliminary injunction hearing should also be adjourned in light of the Agreement's exclusive venue provision, which provides that: "Any legal action arising under this Agreement will be brought in the appropriate federal or state court in the State of Minnesota." Agmt., § 11(B). Based upon the Agreement and plaintiffs' own averments, it is indisputable that plaintiffs authored the Work as a work for hire and assigned all their rights in it to West. Agmt. §§ 1, 4; Am. Compl. ¶ 11. Since all of plaintiffs' claims concern the allegedly improper use of plaintiffs' names, false advertising, and the editorial quality of the Work – topics which are expressly covered by the Agreement (§§ 3, 4 & 7) – plaintiffs' claims clearly arise under this Agreement and must be brought in Minnesota. Agmt., § 11(B).

## Point III
### Irreparable Harm

An adjournment is also warranted here because defendants have already addressed the majority of what plaintiffs are seeking as injunctive relief. Specifically, West sent a March 2009 letter to all subscribers of the Work stating: (i) that plaintiffs had no role

8

whatsoever in the 2008-09 Pocket Part; (ii) that any customer, if dissatisfied, could receive a refund; (iii) that the 2008-09 Pocket Part does not reflect all changes in the law that have occurred since the prior year's update,[3] and (iv) that West is preparing a new, replacement pocket part free of charge. Compare West's letter (annexed hereto as **Exhibit B**) with plaintiffs' proposed Order, ¶¶ 1-5 (Docket #4). Moreover, West is sending a new replacement supplement to subscribers (that will also be referenced on Westlaw) on or about April 15, 2009, thereby mooting anything not reasonably covered by the March 2009 letter. Finally, plaintiffs have not identified one actual complaint or injury that they have received about the 2008-09 Pocket Part, and West, even after sending its March 2009 letter, has received no complaints. In short, there is no need for injunctive relief under any circumstances.

## CONCLUSION

Plaintiffs should not be able to mislead the Court (by omission) about the existence of the parties' contract, attempt to plead around it as if it does not exist, and then try to force an unnecessary preliminary injunction hearing in a Pennsylvania forum in contravention of Section 11(B) of the Agreement – especially given West's March 2009 letter and the imminent distribution of the replacement supplement – before West is given an opportunity to gather the required materials and respond meaningfully in the times allotted under the FRCP and Local Rules.

WHEREFORE, West respectfully requests that the preliminary injunction hearing be adjourned and that a briefing schedule be set to address the viability of plaintiffs' claims in light of the Agreement and West's impending 12(b) motion to dismiss for failure to

---

[3] In this regard, West does concede that the current pocket part does not meet West's high standards, but West vigorously disputes the hyperbolic description of the pocket part offered by plaintiffs.

9

766351_5

state a claim and improper venue. In any event, West respectfully requests that no hearing be held on April 9 (Passover).

Dated: March 30, 2009

Respectfully submitted,

/s/ James F. Rittinger
James F. Rittinger, Esquire (*pro hac vice* pending)
Aaron M. Zeisler, Esq. (*pro hac vice* pending)
Satterlee Stephens Burke & Burke LLP
230 Park Avenue,
New York, NY 10169-0079
(212) 818-9200
Email: jrittinger@ssbb.com
azeisler@ssbb.com


/s/ Matthew J. Borger
Matthew J. Borger, Esquire (I.D. No. 84282)
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
260 South Broad Street
Philadelphia, PA 19102-5003
(215) 568-6060
Email: mborger@klehr.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I, Matthew J. Borger, hereby certify that the foregoing Emergency Motion for Adjournment of Preliminary Injunction Hearing Currently Set for April 9, 2009 has been filed electronically and is available for viewing and downloading from the Court's ECF system. I further certify that on this date I served the foregoing Emergency Motion for Adjournment of Preliminary Injunction Hearing Currently Set for April 9, 2009 upon counsel listed below via email and first class mail as follows:

Richard L. Bazelon
Noah H. Charlson
BAZELON LESS & FELDMAN, P.C.
1515 Market Street, Suite 700
Philadelphia, PA 19102-1907
215-568-1155
rbazelon@bazless.com
ncharlson@bazless.com

March 30, 2009

Matthew J. Borger