# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DAVID RUDOVSKY and LEONARD SOSNOV, | : CIVIL ACTION |
| Plaintiffs, | : |
| v. | : NO. 09-CV-727 |
| WEST PUBLISHING CORPORATION, WEST SERVICES INC., AND THOMSON LEGAL AND REGULATORY INC. t/a THOMSON WEST, | : |
| Defendants. | : |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**SATTERLEE STEPHENS BURKE & BURKE LLP**
James F. Rittinger, Esquire (adm. *pro hac vice*)
Aaron M. Zeisler, Esquire (adm. *pro hac vice*)
230 Park Avenue
New York, New York 10169
Telephone: (212) 818-9200

**KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP**
Matthew J. Borger, Esquire
260 South Broad Street
Philadelphia, PA 19102-5003
Telephone: (215) 568-6060

Dated: April 3, 2009

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS .............................................................................................3

ARGUMENT

I.     THE PARTIES' WRITTEN AGREEMENT CLEARLY CONTROLS
THE WORK AT ISSUE IN PLAINTIFFS' AMENDED COMPLAINT .........................8

II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED GIVEN THE
PARTIES' EXCLUSIVE FORUM SELECTION CLAUSE
DESIGNATING MINNESOTA AS THE PROPER VENUE FOR
THESE DISPUTES .................................................................................................9

III.   ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED
PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ..................11

        A.    Plaintiffs' Statutory and Common Law Claims For False
             Endorsement, Name Misappropriation and Invasion of Privacy Are
             Incurably Deficient And Must Be Dismissed ........................................................11

             1.    Plaintiffs have no viable false endorsement claim under the
                    Lanham Act (Count II). .............................................................................11

             2.    Plaintiffs' claim under Pennsylvania Code § 8316(a) is
                    specious given the Agreement (Count III)..................................................12

             3.    Plaintiffs' common law claim for name misappropriation is
                    also specious given the Agreement (Count V). .........................................13

             4.    Plaintiffs' common law claim for invasion of privacy/false
                    light is not viable given the Agreement (Count VI). .................................14

        B.    Plaintiffs' Statutory Claim For False Advertising Under the
             Lanham Act Should Be Dismissed as a Matter of Law (Count I) .........................14

        C.    Plaintiffs' Common Law Claim For Defamation Lacks Merit In
             Light of the Agreement and Should Be Dismissed (Count IV) .............................16

CONCLUSION..............................................................................................................17

**CASES**

Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC,
    467 F. Supp. 2d 394 (S.D.N.Y. 2006) ............................................................... 15

Baker v. Lafayette College,
    504 A.2d 247 (Pa. Super. 1986) ................................................................ 16, 17

Banco Popular de Puerto Rico v. Airborne Group PLC,
    882 F. Supp. 1212 (D.P.R. 1995) .............................................................. 10, 11

Barbuto v. Med. Shoppe Int'l, Inc.,
    166 F. Supp. 2d 341 (W.D. Pa. 2001) ................................................................ 9

Brunson Comm'ns, Inc. v. Arbitron, Inc.,
    239 F. Supp. 2d 550 (E.D. Pa. 2002) .............................................................. 15

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997) ............................................................................ 6

Cairns v. Franklin Mint Co.,
    107 F. Supp. 2d 1212 (C.D. Cal. 2000) ........................................................... 12

Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,
    709 F.2d 190 (3d Cir. 1983) ......................................................................... 9, 10

Crescent Int'l, Inc. v. Avatar Cmty., Inc.,
    857 F.2d 943 (3d Cir. 1988) ......................................................................... 9, 10

Darling v. Piniella,
    1991 WL 193524 (E.D. Pa. 1991) ................................................................... 17

Erie R.R. Co. v. Tompkins,
    304 U.S. 64 (1938) ............................................................................................ 9

Gans v. Gray,
    612 F. Supp. 608 (E.D. Pa. 1985) ................................................................... 17

Holm v. Art Leather Mfrg., Inc.,
    2006 WL 1662722 (D. Minn. 2006) ........................................................... 9, 10

Jordan v. SEI Corp.,
    1996 WL 296540 (E.D. Pa. 1996) ............................................................... 9, 11

Jumara v. State Farm Ins. Co.,
    55 F.3d 873 (3d Cir. 1995) ...........................................................................9

Kahn v. American Heritage Life Ins. Co.,
    2006 WL 1879192 (E.D. Pa. 2006) .................................................................9

Lauro Lines S.R.L. v. Chasser,
    490 U.S. 495 (1989)........................................................................................10

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972)...........................................................................................9

Majewski v. Luzerne County,
    2007 WL 1074769 (M.D. Pa. 2007) ...............................................................7

Marketing Prods. Mgmt., LLC v. HealthAndBeautyDirect.com, Inc.,
    333 F. Supp. 2d 418 (D. Md. 2004) ..............................................................12

McFadden v. United States of America,
    2005 WL 1413196 (M.D. Pa. 2005) ..............................................................14

Miller v. Clinton County,
    544 F.3d 542 (3d Cir (Pa.) 2008)...................................................................6

Pension Ben. Guar. Corp. ["PBGC"] v. White Consol. Indus., Inc.,
    998 F.2d 1192 (3d Cir. (Pa.) 1993).............................................................6, 7

Salovaara v. Jackson Nat'l Life Ins. Co.,
    246 F.3d 289 (3d Cir. 2001) ...........................................................................9

Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.,
    401 F.3d 123 (3d Cir. 2005) .........................................................................15

Sharman v. C. Schmidt & Sons, Inc.,
    216 F. Supp. 401 (E.D. Pa. 1963) ......................................................13, 16, 17

Sobel v. Wingard,
    531 A.2d 520 (Pa. Super. 1987) ...................................................................16

Synygy, Inc. v. Scott-Levin, Inc.,
    51 F. Supp. 2d 570 (E.D. Pa. 1999), aff'd, 229 F.3d 1139 (3d Cir. 2000).........17

Terra Int'l, Inc. v. Mississippi Chem. Corp.,
    119 F.3d 688 (8th Cir. 1997) .........................................................................10

Thomas Publ'g Co. v. Technology Evaluation Ctrs., Inc.,
    2007 WL 2193964 (S.D.N.Y. 2007)................................................................15

Tillery v. Leonard & Sciolla, LLP,
    437 F. Supp. 2d 312 (E.D. Pa. 2006)............................................................13

Troyer v. Shrider,
    No. 08 Civ. 5042, 2008 WL 4291450 (C.D. Cal. Sept. 15, 2008)............................11, 12

Wall Street Aubrey Golf, LLC v. Aubrey,
    189 Fed. Appx. 82 (3d Cir. 2006)..................................................................9

Warnaco Inc. v. VF Corp.,
    844 F. Supp. 940 (S.D.N.Y. 1994) ...............................................................10

**STATUTES AND RULES**

Fed. R. Civ. P. 12(b)(6) ...........................................................................2, 9, 11, 17

42 P.A. C.S.A. § 8316(a) .........................................................................5, 11, 12, 13

Lanham Act, Section 43(a) ......................................................................11

Defendants West Publishing Corporation, West Services Inc., and Thomson Reuters (Legal) Inc. (formerly known as Thomson Legal and Regulatory Inc.) d/b/a Thomson West (together "West"), submit this memorandum of law in support of their motion to dismiss the Amended Complaint of plaintiffs David Rudovsky and Leonard Sosnov, dated March 24, 2009.

## PRELIMINARY STATEMENT

Plaintiffs' entire complaint amounts to nothing more than a publishing dispute over "West's Pennsylvania Practice Series, Criminal Procedure," a work that plaintiffs authored as a work for hire for West pursuant to a <u>written publishing agreement</u>, dated August 22, 2000 (the "Agreement"). Yet, plaintiffs (who now concede that they are in possession of the Agreement) misrepresented to the Court the basis of their claims by failing to mention the existence of the Agreement in the Amended Complaint, or that they, as authors, both signed this written publishing Agreement that governs their claims.

The motive for plaintiffs' material omission concerning the Agreement is obvious after comparing the Amended Complaint to the Agreement. Plaintiffs allege six tort causes of action: four statutory and common law claims for false endorsement and name misappropriation (Counts II, III, V and VI), one false advertising claim (Count I), and one defamation claim (Count IV) - none of which have any legal merit in light of the Agreement.

First, plaintiffs' claims are improperly raised in Pennsylvania because the Agreement sets venue in Minnesota pursuant to a mandatory venue clause covering any legal action arising under the Agreement. Since all of plaintiffs' claims concern West's alleged improper use of plaintiffs' names, false advertising, and the editorial quality of the Work – topics which are expressly covered by the Agreement (§§ 3[A][2], 4[B] & 7) – plaintiffs' claims arise under this Agreement and must be brought in Minnesota.

Second, all of plaintiffs' causes of action fail to state claims upon which relief may be granted. Plaintiffs' false endorsement and name misappropriation claims (Counts II, III,

V and VI) fail as a matter of law because such claims are premised upon the <u>unauthorized</u> use of one's name.   Yet, West possesses express <u>written</u> <u>authority</u> under the Agreement "to use Authors' names in connection with the Work and upkeep of the Work" – ***even if* the plaintiffs do not participate in the upkeep and another person prepares it**.   Agmt., §§ 3(A)(2). Moreover, plaintiffs gave West the right to "[u]se, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, <u>including revisions and new editions, as Publisher sees fit</u>."   <u>Id.</u> § 7(4).

Similarly, plaintiffs' false advertising claim under the Lanham Act (Count I) fails as a matter of law because, among other reasons, West possesses the right to use plaintiffs' names "<u>generally</u> in connection with the <u>advertising and promotion</u> of the Work."   Agmt. § 7(4) (emphasis added).   And, plaintiffs' claim for defamation (Count IV) is devoid of merit because, among other things, it is based upon the allegation that "the 2008-09 Pocket Part constitutes a false statement that the Plaintiffs authored the publication" (Am. Compl. ¶ 87), which, as stated above, West had the contractual right to do.   Furthermore, plaintiffs' assertion that the alleged poor quality of the 2008-09 Pocket Part is somehow <u>defamatory of them</u> because it allegedly "does not contain substantial relevant material that the legal community would expect in such a publication," is not actionable as defamation because: (i) plaintiffs do not allege any false statement that is "of and concerning" them; (ii) plaintiffs fail to allege any special harm; and (iii) plaintiffs apparent editorial dissatisfaction is barred by the provision of the Agreement giving West the power to "edit, alter, and reorganize the Work as it deems appropriate."   Agmt., § 7.

For these reasons and those set forth herein, West respectfully submits that its motion should be granted pursuant to Fed. R. Civ. P. 12(b)(6).

766983_3

## STATEMENT OF FACTS

Plaintiffs David Rudovsky ("Rudovsky") and Leonard Sosnov ("Sosnov") allege that they are law professors who have had distinguished careers in the law. See Am. Compl. ¶¶ 1-2, which is annexed to the accompanying April 3, 2009 Declaration of James F. Rittinger ("Rittinger Decl."), Ex. A. West is engaged in the business of publishing legal case books, treatises, practice guides and other materials, both in book form and in various computerized formats, including a database known as "Westlaw." Id. ¶ 6. With respect to treatises, West often publishes updates or supplements, usually on an annual basis and generally in the form of "pocket parts." Id.

Plaintiffs aver that they authored an original work on Criminal Procedure in 1987, which was published by West in 1998, and that plaintiffs "published a second edition in 2001." Id. ¶¶ 9-10. They further allege that, following the publication of the second edition in 2001, they "continued to prepare annual pocket parts which were published by West." Id. ¶ 11. Plaintiffs define "the Treatise" as "[t]he original edition, second edition, and pocket parts through 2007-2008." Id.

### 1. The Parties' 2000 Publishing Agreement Addresses "West's Pennsylvania Practice Criminal Procedure"

Plaintiffs do not disclose in the Amended Complaint that they, as authors, entered into a written publishing agreement with West, as publisher, concerning the treatise entitled "West's Pennsylvania Practice Criminal Procedure" – an agreement that plaintiffs executed on August 22, 2000. See the "Agreement" (annexed to the Rittinger Decl., Ex. B). The Agreement defines "Work" as:

> two original works (the "Work") tentatively entitled 1) West's Pennsylvania Forms Criminal Procedure and 2) **West's Pennsylvania Practice Criminal Procedure** regarding the law of criminal procedure in Pennsylvania.

Agmt., § 1 (emphasis added). The Agreement also includes as part of its definition of "Work" all future pocket parts and other upkeep:

3

Authors will provide upkeep to the Work on an annual basis, or as otherwise agreed by Publisher and Authors, **including but not limited to supplements, revisions, or new editions of the Work** in order to keep it current and marketable. All references to the "Work" in this Agreement **also apply to such upkeep as well as to the original Work** unless otherwise provided.

Id., § 2(B) (emphasis added).

Under the Agreement, plaintiffs were required to deliver the first update of the Work to West in 11 months, and plaintiffs agreed that "subsequent upkeep will be due annually thereafter." Id., § 2(B)(1). As compensation for print material, West was obligated to pay each author a fee of $12,000 under the Agreement. Id., § 8(A).

## 2. Plaintiffs' Present Dispute With West Concerns "West's Pennsylvania Practice Criminal Procedure"

Plaintiffs did not provide upkeep to the Work in 2008, alleging that they were unable to reach agreement on the financial terms on which they would prepare an updated pocket part. Am. Compl. ¶¶ 18, 23 (Rittinger Decl., Ex. A). Plaintiffs further aver that, in 2008, West published a "2008-09 Pocket Part" to the Work. Id. ¶ 19 & Ex. A thereto (the cover of the pocket part at issue).

Among other things, plaintiffs assert that "the '2008-09 Pocket Part' contained almost no substantive information that was not in the 2007-08 pocket part," and lacked other information that "any reasonably competent legal author would have included reference to." Id. ¶¶ 24, 29. Plaintiffs also claim that they "did not consent to the use of their names for the purpose of falsely representing that they authored, prepared or participated in the preparation of the '2008-09 Pocket Part.'" Id. ¶ 45.

In sum, plaintiffs assert that West "wrongfully" published the 2008-09 Pocket Part of the Work because: (i) plaintiffs did not participate in creating the 2008-09 Pocket Part (which allegedly falsely states on the cover that it was prepared by plaintiffs and "The Publisher's Staff"); and (ii) the 2008-09 Pocket Part was allegedly incompetently authored/revised. Id. ¶¶ 11, 19, 23, 29, 37, 45 & Ex. A thereto.

4

### 3. Various Provisions of the Agreement Cover All of Plaintiffs' Causes of Action

Based upon West's alleged misuse of plaintiffs' names and the alleged poor quality of the 2008-09 Pocket Part, plaintiffs' Amended Complaint sets forth six causes of action: false advertising and false endorsement under the Lanham Act (Counts I & II); unauthorized use of name under Pennsylvania Code § 8316 (Count III); defamation (Count IV); and common law claims for misappropriation of name and invasion of privacy/false light (Counts V & VI). Id. ¶¶ 59-107.

In relevant part, the Agreement gives West the right to use plaintiffs' names in connection with the Work – **regardless of whether or not plaintiffs participate in any upkeep**:

> Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work. If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit **in addition to or in lieu of credit given to Authors**.

Agmt., § 3(A)(2) (Rittinger Decl., Ex. B) (emphasis added). Plaintiffs also gave West the right to use their names and summaries of their backgrounds and qualifications in connection with advertising and promotion of the Work:

> Use, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, including revisions and new editions, as Publisher sees fit, and generally in connection with the advertising and promotion of the Work, including revisions and new editions.

Id. § 7(4).

The Work was and is "a work made for hire within the meaning of the United States copyright laws" [§ 4(A)7], and to the extent that "any portion of the Work or work product" is not deemed to be a work made for hire under applicable copyright law:

> each Author grants, transfers and assigns exclusively to Publisher for the full term of the copyright and any renewals or extensions of the copyright all rights in the Work, or any portion of the Work, including but not limited to: . . . 2. The right to publish, reproduce,

transmit, <u>adapt</u>, <u>sell</u>, <u>or otherwise make use of the Work</u> or portions of the Work (including **all subsequent editions, supplements, and versions of the Work, regardless of length or nature**) throughout the world in any form or medium, now or hereinafter devised . . . for the entire term of the copyright.

<u>Id.</u> § 4(B)(2) (emphasis added).

The Agreement also provides that it "is the entire agreement of the parties," that "[a]ll prior negotiations and representations are merged into this Agreement" and that "[t]his Agreement supercedes all previous agreements regarding the Work." <u>Id.</u> § 11(H). The Agreement also contains an exclusive venue provision: "Any legal action arising under this Agreement will be brought in the appropriate federal or state court in the State of Minnesota." <u>Id.</u> § 11(B).

### 4.    <u>Plaintiffs' Request For Relief</u>

Despite that the fee each plaintiff received under the Agreement was $12,000 (Agmt.,§ 8(A), Rittinger Aff., Ex. B), Plaintiffs assert that they are entitled to broad injunctive relief and "damages of at least $150,000" – plus West's profits associated with the 2008-09 Pocket Part, punitive damages, attorney's fees and expenses – based upon West's alleged misappropriation of plaintiffs' names and West's supposed failure to bring current the Work. Am. Compl. ¶¶ 43, 66A & 66B (Rittinger Decl., Ex. A).  On March 24, 2009, plaintiffs served by mail the Amended Complaint and a motion for preliminary injunction.

### <u>ARGUMENT</u>

It is well-settled in this Circuit that a plaintiff with a legally deficient claim cannot survive a motion to dismiss simply by failing to attach a dispositive document on which its claims rely.  <u>Miller v. Clinton County</u>, 544 F.3d 542, 550 n.3 (3d Cir (Pa.) 2008);  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997); <u>Pension Ben. Guar. Corp. ["PBGC"] v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. (Pa.) 1993). Indeed, in <u>PBGC</u>, a defendant in its motion to dismiss had asked the district court to consider a

purchase and sale agreement between plaintiff and defendant that the plaintiff did not attach to the complaint, and the Third Circuit first announced the now-established rule that:

> a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.

PBGC, 998 F.2d at 1196 (internal citations omitted); see also Majewski v. Luzerne County, 2007 WL 1074769, at *18-19 (M.D. Pa. 2007) (considering a collective bargaining agreement on a motion to dismiss that plaintiff had nowhere mentioned in his amended complaint because the agreement was "integral" to plaintiff's tort and due process claims; plaintiff would not have had an employment relationship on which to sue but for the agreement).

Here, plaintiffs attempt to bring legally deficient claims by avoiding any mention of the publishing Agreement that is integral to their claims. Plaintiffs have asserted that West committed torts for name misappropriation, false advertising and defamation (Am. Compl. ¶¶ 62-63, 72, 79-83, 88-89, 97-98, 103) based upon allegations that: (i) plaintiffs did not participate in creating the 2008-09 Pocket Part (which states on the cover that it was prepared by plaintiffs and "The Publisher's Staff"); and (ii) the 2008-09 Pocket Part was allegedly incompetently authored/revised. See Am. Compl. ¶¶ 11, 19, 23, 29, 37 & Ex. A thereto. The Agreement, however, clearly covers use of plaintiffs' names, as well as any advertising, marketing, and the editing and publishing of the Work, including all updates and revisions thereto. See Agmt., §§ 1, 2(B), 3(A)(2), 4(B) & 7 (Rittinger Decl., Ex. B).

As is demonstrated more fully herein, the Agreement is clearly integral to plaintiffs' claims. In addition, plaintiffs' counsel has now admitted in correspondence that plaintiffs executed the Agreement and have a copy of it, so there can be no issues of surprise. See Rittinger Decl., Ex. C (Apr. 1, 2009 email from plaintiffs' counsel). Thus, the Court should consider the Agreement in connection with West's present motion to dismiss. See PBGC, 998 F.2d at 1196; Majewski, 2007 WL 1074769, at *19.

7

## I.  THE PARTIES' WRITTEN AGREEMENT CLEARLY CONTROLS THE WORK AT ISSUE IN PLAINTIFFS' AMENDED COMPLAINT

The Amended Complaint clearly identifies the work about which plaintiffs complain: "West's Pennsylvania Practice Series, Criminal Procedure."  Am. Compl. ¶¶ 11, 19 & Ex. A (Rittinger Decl., Ex. A).  The Agreement clearly controls that work, defining "Work" as:

> two original works (the "Work") tentatively entitled 1) West's Pennsylvania Forms Criminal Procedure and 2) **West's Pennsylvania Practice Criminal Procedure** regarding the law of criminal procedure in Pennsylvania.

Agmt., § 1 (Decl., Ex. B) (emphasis added).  Plaintiffs also take issue with the "2008-09 Pocket Part" in particular (Am. Compl. ¶ 19), which the Agreement also controls as part of the Work:

> **B.  Upkeep--Supplements, Revisions, and New Editions.**  Authors will provide upkeep to the Work on an annual basis, or as otherwise agreed by Publisher and Authors, **including but not limited to supplements, revisions, or new editions of the Work** in order to keep it current and marketable.  All references to the "Work" in this Agreement **also apply to such upkeep as well as to the original Work** unless otherwise provided.

Id., § 2(B) (emphasis added); see also § 3(A)(2).  Indeed, West possesses the right to "edit, alter, and reorganize the Work as it deems appropriate" (id., § 7), and to:

> publish, reproduce, transmit, adapt, sell, or otherwise make use of the Work or portions of the Work (including **all subsequent editions, supplements, and versions of the Work, regardless of length or nature**) throughout the world **in any form** or medium, now or hereinafter devised . . . .

Id., § 4(B)(2) (emphasis added).  Accordingly, the 2008-09 Pocket Part on which the plaintiffs have fixated is indisputably governed by the Agreement, despite plaintiffs' failure to mention the existence of the Agreement.[1]

---

[1]  Oddly, plaintiffs never mention this 2000 Agreement in the Amended Complaint as if to suggest that plaintiffs' efforts on the Treatise and subsequent pocket parts had occurred in a vacuum rather than under the parties' written Agreement.  Yet, plaintiffs themselves define the "Treatise" as "[t]he original edition, second edition, and pocket parts through 2007-2008" and allege that "[f]ollowing publication of the second edition, through 2007, Plaintiffs continued to prepare annual pocket parts which were published by West."  See Am. Compl. ¶ 11 (emphasis added).  Thus, by their own allegations, plaintiffs clearly prepared the pocket parts pursuant to the Agreement.

## II.	PLAINTIFFS' CLAIMS SHOULD BE DISMISSED GIVEN THE PARTIES' EXCLUSIVE FORUM SELECTION CLAUSE DESIGNATING MINNESOTA AS THE PROPER VENUE FOR THESE DISPUTES

In the Third Circuit, a forum selection clause is properly enforced through a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6).  See Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298-99 (3d Cir. 2001); Kahn v. American Heritage Life Ins. Co., 2006 WL 1879192, at *7 & n.3 (E.D. Pa. 2006); Barbuto v. Med. Shoppe Int'l, Inc., 166 F. Supp. 2d 341, 348 (W.D. Pa. 2001).

Forum selection clauses are presumptively valid and are generally to be enforced as a matter of public policy.[2]  See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983); Jordan v. SEI Corp., 1996 WL 296540, at *5 (E.D. Pa. 1996); see also M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).  The Third Circuit has also held that forum selection clauses are not defeated by the artful pleading of claims; thus, where the relationship between the parties is created by a contract containing a forum selection clause, the pleading of non-contractual theories of liability will not circumvent such a clause.  See Crescent Int'l, Inc. v. Avatar Cmty., Inc., 857 F.2d 943, 945 (3d Cir. 1988) ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms.");  Jordan, 1996 WL 296540, at *7 n.10 (finding that, although no breach of contract was alleged, plaintiff's common law fraud and negligent misrepresentation claims were subject to the forum selection clause because such claims "grew out of the relationship defined by the agreement").

---

[2]  The Third Circuit looks to federal law, not state law, when determining the effect of forum selection clauses because venue questions and enforcement of forum selection clauses touch on procedural matters and are not substantive in nature.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995) (stating that federal law applies to questions of venue in diversity cases irrespective of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 (1938)); Wall Street Aubrey Golf, LLC v. Aubrey, 189 Fed. Appx. 82, 84 (3d Cir. 2006) (applying federal law and enforcing the forum selection clause); accord Holm v. Art Leather Mfrg., Inc., 2006 WL 1662722, at *1 (D. Minn. 2006) (applying federal law to question of forum selection clause applicability).

Where, as here, a plaintiff's tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are subject to a contractually-based forum selection clause. See Coastal Steel, 709 F.2d at 203 (finding that plaintiff's tort claims were subject to the forum selection clause because the contract was the basic source of any duty defendant owed to plaintiff), overruled on other grounds, Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989); see also Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 694 (8th Cir. 1997) (applying the Third Circuit standard); Holm, 2006 WL 1662722, at *3 (same).

Here, the forum selection clause contained in the parties' Agreement provides that: "Any legal action arising under this Agreement will be brought in the appropriate federal or state court in the State of Minnesota." Agmt., § 11(B) (Rittinger Decl., Ex. B). Federal courts have generally found that forum selection clauses referring to claims arising "hereunder" or "under the agreement" cover contract-related tort claims. See Terra Int'l, 119 F.3d at 694 (stating that 'hereunder' or 'under the agreement' may go beyond contract breach claims and include contract-related tort claims); Holm, 2006 WL 1662722, at *3 (finding that, pursuant to the Third Circuit standard, plaintiff's statutory claims were "inextricably bound up and ultimately depend[ed]" on the existence of an agreement and therefore "arise under" the agreement); Banco Popular de Puerto Rico v. Airborne Group PLC, 882 F. Supp. 1212 (D.P.R. 1995) (finding that forum selection clause providing that "disputes hereunder" are to be resolved by an English court encompassed all of plaintiff's tort claims, including negligent manufacture and maintenance); Warnaco Inc. v. VF Corp., 844 F. Supp. 940, 947-49 (S.D.N.Y. 1994) (finding tort claims covered by forum selection clause that covered "[a]ny dispute or issue arising hereunder").

Since all of plaintiffs' claims here concern the allegedly improper use of plaintiffs' names, false advertising, and the editorial quality of the Work (Am. Compl. ¶¶ 62-63, 72, 79-83, 88-89, 97-98, 103) – topics which are expressly covered by the Agreement (§§ 3, 4 & 7) – plaintiffs' claims clearly arise under this Agreement and should have been brought in Minnesota. Crescent Int'l, 857 F.2d at 945; Coastal Steel, 709 F.2d at 203; Terra Int'l, 119 F.3d

at 694; Banco Popular, 882 F. Supp. at 1214-17; Jordan, 1996 WL 296540, at *7 n.10. Accordingly, the Amended Complaint should be dismissed on venue grounds pursuant to Fed. R. Civ. P. Rule 12(b)(6).

## III. ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

In light of several of the Agreement's express provisions, all of plaintiffs' causes of action are legally deficient and should be dismissed.

### A. Plaintiffs' Statutory and Common Law Claims For False Endorsement, Name Misappropriation and Invasion of Privacy Are Incurably Deficient And Must Be Dismissed

Plaintiffs' Count II (false endorsement under the Lanham Act), Count III (unauthorized use of name under Pennsylvania Code § 8316), and Counts V and VI (common law claims for misappropriation of name and invasion of privacy/false light) all fail as a matter of law here because these four statutory and common law claims are premised upon unauthorized use of one's name. West, however, possesses written authority in the Agreement to use plaintiffs' names, likenesses, and backgrounds in connection with the Work, including updates, revisions and new editions, as West sees fit in order to publish, sell, advertise or otherwise promote the Work.

#### 1. Plaintiffs have no viable false endorsement claim under the Lanham Act (Count II).

Plaintiffs allege in Count II (false endorsement under the Lanham Act) that West's use of their names as authors of the 2008-09 Pocket Part falsely implies that plaintiffs endorse or sponsor the 2008-09 Pocket Part and that such endorsement is likely to cause consumer confusion in violation of Section 43(a) of the Lanham Act. Am. Compl. ¶¶ 68, 70, 72. This claim, however, is incurably flawed.

It is well recognized that consent to the use of one's name or likeness is a valid defense against false endorsement claims under the Lanham Act. See, e.g., Troyer v. Shrider, 2008 WL 4291450, at *4-5 (C.D. Cal. 2008) (denying plaintiff's motion for preliminary

11

injunction and stating that false endorsement claims are based on unauthorized use of celebrity's identity); Marketing Prods. Mgmt., LLC v. HealthAndBeautyDirect.com, Inc., 333 F. Supp. 2d 418, 432-33 (D. Md. 2004) (granting defendant's motion to dismiss false endorsement claim brought under Lanham Act because, among other things, defendant's continued use of plaintiff's likeness was "in no sense a violation of the authority granted by plaintiffs to the defendants"); Cairns v. Franklin Mint Co., 107 F. Supp. 2d 1212 (C.D. Cal. 2000) ("A false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim for it alleges that misuse of a trademark which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product.") (citations and quotation marks omitted); see also Restatement (Third) of Unfair Competition § 46 (stating that one may be liable for appropriating the commercial value of another's identity where the appropriation was without consent).

Here, West expressly possessed the right "to use Authors' names in connection with the Work and upkeep of the Work," even when plaintiffs are not involved with any upkeep. See Agmt., § 3(A)(2). Also, West had the right to "[u]se, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, including revisions and new editions, as Publisher sees fit." Id., § 7(4). Since the Work includes all upkeep, supplements and revisions, such as the 2008-09 Pocket Part (Point I, supra) – plaintiffs' false endorsement claim under the Lanham Act must be dismissed in light of the Agreement. See Agmt., §§ 3(A)(2) & 7(4); Troyer; Marketing Prods., supra.

## 2. Plaintiffs' claim under Pennsylvania Code § 8316(a) is specious given the Agreement (Count III).

Pursuant to Pennsylvania Code § 8316(a), "[a]ny natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose **without the written consent** of such natural person . . . may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use." 42 P.A. C.S. § 8316 (emphasis added).

Here, despite the Agreement that plaintiffs signed giving West the express right to use plaintiffs' names (Agmt., §§ 3(A)(2) & 7(4)), plaintiffs allege in Count III that they did not authorize West to use their names as authors with respect to the distribution and/or sale of the 2008-09 Pocket Part and that such use by West constituted unlawful use of their names in violation of Pennsylvania Code § 8316(a). See Am. Compl. ¶¶ 79, 81, 83.

Obviously, because West possessed written permission, plaintiffs' Section 8316(a) claim is legally deficient. See 42 Pa. C.S.A. § 8316(a) (stating that one may not use another's name for a commercial purpose "without the written consent of such natural person"); see, e.g., Tillery v. Leonard & Sciolla, LLP, 437 F. Supp. 2d 312, 328-29 (E.D. Pa. 2006) (denying plaintiff's motion for preliminary injunction pursuant to § 8316 because, among other things, plaintiff signed a written consent agreement allowing defendant to use his name for certain purposes).

### 3. Plaintiffs' common law claim for name misappropriation is also specious given the Agreement (Count V).

Plaintiffs allege in Count V (misappropriation of name) that they did not authorize West to use their names as authors with respect to the 2008-09 Pocket Part and that such false use of plaintiffs' names constitutes invasion of privacy through the misappropriation of their name or likeness in violation of Pennsylvania common law. Am. Compl. ¶¶ 96-98.

As demonstrated above, however, the Agreement grants West the right to use Plaintiffs' names in connection with the "Work and upkeep of the Work" [Agmt., § 3(A)(2)], and to use and license to use Plaintiffs' names and likenesses with respect to revisions and new editions as West sees fit. See id., § 7(4).

Since West possessed written permission, plaintiffs' common law claim for invasion of privacy through misappropriation of names is legally deficient. See Sharman v. C. Schmidt & Sons, Inc., 216 F. Supp. 401 (E.D. Pa. 1963) ("One universally accepted principle of the right of privacy is that a consent to an invasion is a complete defense to the appropriation of a plaintiff's likeness to sell products"); 2 Summary of Pa. Jur. 2d Torts § 22:19, Effect of Release

(stating that, to be actionable, invasions of privacy with respect to appropriation of name or likeness must be made without authority).

      **4.**      **Plaintiffs' common law claim for invasion of privacy/false light is not viable given the Agreement (Count VI).**

Plaintiffs further allege in Count VI (invasion of privacy - false light) that West's use of plaintiffs' names with respect to the publication of the 2008-09 Pocket Part constitutes a major misrepresentation of plaintiffs' involvement with the 2008-09 Pocket Part. Specifically, plaintiffs claim that use of their names suggests that they approve of the 2008-09 Pocket Part as updated and revised, which thereby invades their privacy and casts it in a false light. See Am. Compl. ¶¶ 103-04.

Once again, the Agreement grants West the right to use plaintiffs' names in connection with the "Work and upkeep of the Work" even when plaintiffs are not involved with any upkeep, and to use and license to use plaintiffs' names and likenesses with respect to revisions and new editions as West sees fit. Agmt., § 3(A)(2). Since West possessed written permission, plaintiffs' common law claim for invasion of privacy through false light is legally deficient. See McFadden v. United States of America, 2005 WL 1413196, at *6 (M.D. Pa. 2005) (finding signed written consent granting defendant right to make certain disclosures was dispositive of plaintiff's invasion of privacy claim); see also Am. Jur. § 92 (right of privacy waived by written consent).

      **B.**      **Plaintiffs' Statutory Claim For False Advertising Under the Lanham Act Should Be Dismissed as a Matter of Law (Count I)**

Plaintiffs' Count I (false advertising under the Lanham Act) fails as a matter of law because, among other reasons, West possessed the right to use plaintiffs' names "generally in connection with the advertising and promotion of the Work." Agmt. § 7[4] (emphasis added). Indeed, to the extent that plaintiffs complain that West's cover-page gives attribution (or false attribution) to both the "Publisher's Staff" and the plaintiffs as authors (Am. Compl. ¶¶ 37, 62), the Agreement clearly gives West that right:

14

> Publisher will have the right to use Authors' names in connection
> with the Work and upkeep of the Work. If the Work or upkeep is
> prepared by a person other than Authors, Publisher may identify
> that person on the new material and any related advertising and
> give him or her authorship credit <u>in addition to or in lieu of credit</u>
> <u>given to Authors</u>.

Agmt., § 3(A)(2) (emphasis added).

Furthermore, plaintiffs' allegation that "West's false attribution of the Work to the Plaintiffs has harmed and/or will harm their reputations" (Am. Compl. ¶ 62) fails because courts have generally determined that such claims for false authorship are not actionable under the Lanham Act. <u>See</u> <u>Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC</u>, 467 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2006) (granting motion to dismiss because false authorship claims are not actionable on Lanham Act false advertising claims); <u>Thomas Publ'g Co. v. Technology Evaluation Ctrs., Inc.</u>, 2007 WL 2193964, at *3 (S.D.N.Y. 2007) (same).

Additionally, to the extent plaintiffs baldly allege that West made false representations that the 2008-09 Pocket Part "constitutes a supplement, update, revision, improvement and/or amplification of the Treatise and/or '2007-08 Pocket Part'" (Am. Compl. ¶ 63), such a bald allegation is not actionable because plaintiffs <u>do not allege any specific advertising by West, false or otherwise, that supposedly contains such a description</u>. <u>See, e.g.</u>, <u>Brunson Comm'ns, Inc. v. Arbitron, Inc.</u>, 239 F. Supp. 2d 550, 574 (E.D. Pa. 2002) (granting motion to dismiss plaintiff's false advertising claim based on the Lanham Act for lack of standing because, among other things, plaintiff did not allege any actions that could possibly bear a resemblance to advertising activity complained of); <u>see also</u> <u>Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.</u>, 401 F.3d 123 135-36 (3d Cir. 2005) (citing § 43(a) of the Lanham Act and determining that, for a plaintiff to succeed on a false advertising claim, he must prove that the defendant used the mark "in commercial advertising or promotion").

## C. Plaintiffs' Common Law Claim For Defamation Lacks Merit In Light of the Agreement and Should Be Dismissed (Count IV)

Plaintiffs' Count IV for defamation is deficient because, among other things, it is based upon the allegation that "the 2008-09 Pocket Part constitutes a false statement that the Plaintiffs authored the publication." Am. Compl. ¶ 87. As previously addressed, West had the broad right to use "Authors' names in connection with the Work and upkeep of the Work" even if plaintiffs performed no upkeep. Agmt., § 3(A)(2). And, although plaintiffs would not agree to update the Work (Am. Compl. ¶ 18), West was permitted under the Agreement to use another author and "identify that person on the new material and any related advertising and give him or her authorship credit in addition to or in lieu of credit given to Authors." Agmt., § 3(A)(2) (emphasis added).

Courts applying Pennsylvania law have long held that a plaintiff's consent to a defendant's communication precludes any liability for defamation with respect to such communications. See Sharman, 216 F. Supp. at 405 (stating that release signed by plaintiff precluded any liability on behalf of defendant with respect to the communications at issue and that "[s]uch consent negatives the existence of any tort in the first instance"); Baker v. Lafayette College, 504 A.2d 247 (Pa. Super. 1986) (finding professor's consent to publication of his performance evaluations gave college absolute privilege against defamation claim with respect to those evaluations); see also Sobel v. Wingard, 531 A.2d 520, 522 (Pa. Super. 1987) (stating that evaluations of an employee by an employer are deemed to be consented to by employee and finding that "consent is an absolute privilege"). Since plaintiffs consented to, among other things, the use of their names in connection with the Work, which by definition includes upkeep and revisions such as the pocket parts [Agmt., §§ 1, 2(B), 3(A)(2); 7(4)], plaintiffs are precluded from asserting a defamation claim based upon the use of their names on the cover of the 2008-09 Pocket Part. Sharman; Baker, supra.

Plaintiffs also assert that the alleged poor quality of the 2008-09 Pocket Part itself is actionable as defamation because the pocket part "does not contain substantial relevant material that the legal community would expect in such a publication." Am. Compl. ¶ 87.

However, such editorial claims are barred by the express provision of the Agreement giving West the power to "edit, alter, and reorganize the Work as it deems appropriate." Agmt., § 7. Moreover, plaintiffs' allegation that the 2008-09 Pocket Part itself lacks "substantial relevant material that the legal community would expect in such a publication" does not sound in defamation because: (i) it is not "of and concerning" plaintiffs as is required for a defamation claim, see Darling v. Piniella, 1991 WL 193524, at *2 (E.D. Pa. 1991); Gans v. Gray, 612 F. Supp. 608, 612, n.4 (E.D. Pa. 1985), and plaintiffs fail to allege any special harm. See Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 583 (E.D. Pa. 1999), aff'd, 229 F.3d 1139 (3d Cir. 2000) (holding that plaintiff must satisfy the sixth element of a defamation claim under Pennsylvania law, special harm, because a slide shown at a conference "cannot constitute defamation per se [since] [t]he slide did not facially defame plaintiff"). For all of these reasons, plaintiffs' defamation claim should be dismissed as a matter of law.

## CONCLUSION

Defendants respectfully request that their Motion to Dismiss be granted and that the Amended Complaint be dismissed on venue grounds pursuant to Fed. R. Civ. P. Rule 12(b)(6) in light of the Agreement's forum selection clause. Should the Amended Complaint not be dismissed on venue grounds, defendants respectfully request that all of plaintiffs' claims be dismissed as a matter of law pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim.

Dated: April 3, 2009       Respectfully submitted,

            /s/ James F. Rittinger
           James F. Rittinger, Esquire (adm. *pro hac vice*)
           Aaron M. Zeisler, Esq. (adm. *pro hac vice*)
           SATTERLEE STEPHENS BURKE & BURKE LLP
           230 Park Avenue
           New York, NY 10169-0079
           (212) 818-9200
           Email: jrittinger@ssbb.com
               azeisler@ssbb.com

/s/ Matthew J. Borger
Matthew J. Borger, Esquire
Klehr, Harrison, Harvey, Branzburg
 & Ellers LLP
260 South Broad Street
Philadelphia, PA 19102-5003
(215) 568-6060
Email: mborger@klehr.com

*Attorney for the Defendants*