## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID RUDOVSKY and<br>LEONARD SOSNOV,<br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>WEST PUBLISHING CORPORATION,<br>WEST SERVICES INC., AND<br>THOMSON LEGAL AND REGULATORY<br>INC. t/a THOMSON WEST,<br>　　　　　　Defendants. | : CIVIL ACTION<br>:<br>:<br>: NO. 09-CV-727<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## ORDER

AND NOW, this ___ day of April, 2009, upon consideration of the plaintiffs' Motion

For Preliminary Injunction, the parties' submissions in support thereof and in opposition

thereto, the arguments and/or hearings thereon, and all prior pleadings and proceedings had

herein, IT IS HEREBY ORDERED that plaintiffs' Motion is DENIED with prejudice.


　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　John P. Fullam, J.

Dockets.Justia.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID RUDOVSKY and
LEONARD SOSNOV,

     Plaintiffs,

    v.

WEST PUBLISHING CORPORATION,
WEST SERVICES INC., AND
THOMSON LEGAL AND REGULATORY
INC. t/a THOMSON WEST,

     Defendants.

CIVIL ACTION

NO. 09-CV-727

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

SATTERLEE STEPHENS BURKE & BURKE LLP
James F. Rittinger, Esquire (adm. *pro hac vice*)
Aaron M. Zeisler, Esquire (adm. *pro hac vice*)
230 Park Avenue
New York, New York 10169
Telephone: (212) 818-9200

KLEHR, HARRISON, HARVEY, BRANZBURG
 & ELLERS LLP
Matthew J. Borger, Esquire
260 South Broad Street
Philadelphia, PA 19102-5003
Telephone: (215) 568-6060

Dated: April 10, 2009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND................................................................................................ 3

ARGUMENT

I.   PLAINTIFFS BEAR A HIGH BURDEN IN DEMONSTRATING ANY
     ENTITLEMENT TO PRELIMINARY INJUNCTIVE RELIEF ........................................ 9

II.  PLAINTIFFS' DEMAND FOR PRELIMINARY INJUNCTIVE RELIEF
     SHOULD BE DENIED ............................................................................................... 10

     A.   Plaintiffs Cannot Demonstrate The Requisite Irreparable Harm............................ 10

     B.   Plaintiffs Cannot Satisfy Their Burden Of Demonstrating A
          Likelihood Of Succeeding On The Merits Of Their Claims ................................... 12

          1.   The parties' 2000 Agreement clearly controls the Treatise
               and pocket part supplement at issue in plaintiffs' Amended
               Complaint. .................................................................................................. 13

          2.   Plaintiffs' statutory and common law claims for false
               endorsement, name misappropriation and invasion of
               privacy are incurably deficient. .................................................................. 15

               a.   Plaintiffs have no viable false endorsement claim
                    under the Lanham Act (Count II) ................................................... 16

               b.   Plaintiffs' claim under Pennsylvania Code §
                    8316(a) is specious given the Agreement (Count III) ................... 17

               c.   Plaintiffs' common law claim for name
                    misappropriation is also specious given the
                    Agreement (Count V) ..................................................................... 18

               d.   Plaintiffs' common law claim for invasion of
                    privacy/false light is not viable given the
                    Agreement (Count VI).................................................................... 19

          3.   Plaintiffs' statutory claim for false advertising under the
               Lanham Act is legally deficient (Count I). ................................................. 19

          4.   Plaintiffs' common law claim for defamation has no legal
               merit (Count IV). ....................................................................................... 21

# TABLE OF CONTENTS
## (Continued)

Page

C.     The Potential Harm To West By Granting The Requested Injunction Far Outweighs Any Potential Harm To Plaintiffs If Their Request Is Denied .................................................................... 22

D.     The Public's Interest Favors Denial Of The Requested Injunction ....................... 23

CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**CASES**

Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC,
  467 F. Supp. 2d 394 (S.D.N.Y. 2006) ..................................................................20

Baker v. Lafayette College,
  504 A.2d 247 (Pa. Super. 1986) ...............................................................21, 22

Barton v. Eichelberger,
  311 F. Supp. 1132 (M.D. Pa. 1970) ...........................................................22

Bennington Foods LLC v. St. Croix Renaissance Group, LLP,
  528 F.3d 176 (3d Cir. 2005) ..........................................................................10

Brunson Comm'ns, Inc. v. Arbitron, Inc.,
  239 F. Supp. 2d 550 (E.D. Pa. 2002) .........................................................20

Cairns v. Franklin Mint Co.,
  107 F. Supp. 2d 1212 (C.D. Cal. 2000) ......................................................16

Darling v. Piniella,
  1991 WL 193524 (E.D. Pa. 1991) ..............................................................22

eBay Inc. v. MercExchange, LLC,
  547 U.S. 388 (2006)..............................................................................10-11

Facenda v. NFL Films, Inc.,
  542 F.3d 1007 (3d Cir. 2008) .......................................................................16

First Health Group Corp. v. Nat'l Prescription Adm'r, Inc.,
  155 F. Supp. 2d 194 (M.D. Pa. 2001) .........................................................10

Gans v. Gray,
  612 F. Supp. 608 (E.D. Pa. 1985) ...............................................................22

Gilliam v. ABC, Inc.,
  538 F.2d 14 (2d Cir. 1976) ..........................................................................12

Great American Ins. Co. v. Norwin School Dist.,
  544 F.3d 229 (3d Cir. 2008) .......................................................................13

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
  882 F.2d 797 (3d Cir. 1989) ..........................................................................9

767220_7

<u>Marketing Prods. Mgmt., LLC v. HealthAndBeautyDirect.com, Inc.</u>,
  333 F. Supp. 2d 418 (D. Md. 2004) ............................................................ 16, 17

<u>McFadden v. United States of America</u>,
  2005 WL 1413196 (M.D. Pa. 2005) ................................................................ 19

<u>MercExchange, LLC v. eBay, Inc.</u>,
  500 F. Supp. 2d 556 (E.D. Va. 2007) .............................................................. 11

<u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ........................................................... 11

<u>Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.</u>,
  290 F.3d 578 (3d Cir. 2002) ............................................................................. 10

<u>In re Old Summit Mfg.</u>,
  523 F.3d 134 (3d Cir. 2008) ............................................................................. 13

<u>SNA, Inc. v. Array</u>,
  51 F. Supp. 2d 542 (E.D. Pa. 1999) .................................................................. 12

<u>Sampson v. Murray</u>,
  415 U.S. 61 (1974) ........................................................................................... 10

<u>Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.</u>,
  401 F.3d 123 (3d Cir. 2005) ............................................................................. 20

<u>Sentry Paint Techs., Inc. v. Topth, Inc.</u>,
  No. 08 Civ. 1064 .............................................................................................. 13

<u>Sharman v. C. Schmidt & Sons, Inc.</u>,
  216 F. Supp. 401 (E.D. Pa. 1963) ......................................................... 18, 21, 22

<u>Shire U.S. Inc. v. Barr Laboratories Inc.</u>,
  329 F.3d 348 (3d Cir. 2003) ............................................................................. 10

<u>Sobel v. Wingard</u>,
  531 A.2d 520 (Pa. Super. 1987) ....................................................................... 21

<u>Synygy, Inc. v. Scott-Levin, Inc.</u>,
  51 F. Supp. 2d 570 (E.D. Pa. 1999), <u>aff'd</u>, 229 F.3d 1139 (3d Cir. 2000) ........ 22

<u>Thomas Publ'g Co. v. Technology Evaluation Ctrs., Inc.</u>,
  2007 WL 2193964 (S.D.N.Y. 2007) ................................................................ 20

Tillery v. Leonard & Sciolla, LLP,
    437 F. Supp. 2d 312 (E.D. Pa. 2006) ................................................................18

Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC,
    212 F.3d 157 (3d Cir. 2000) ............................................................................11

Troyer v. Shrider,
    2008 WL 4291450 (C.D. Cal. 2008) ................................................................16, 17

**STATUTES AND RULES**

42 P.A. C.S. § 8316 ................................................................7, 15, 16, 17, 18

Lanham Act, § 43(a) ................................................................passim

**MISCELLANEOUS**

2 Summary of Pa. Jur. 2d Torts § 22:19 ................................................................18

Am. Jur. § 92 ................................................................19

Restatement (Third) of Unfair Competition § 46 ................................................................17

Defendants West Publishing Corporation, West Services Inc., and Thomson Reuters (Legal) Inc. (formerly known as Thomson Legal and Regulatory Inc.) d/b/a Thomson West (together "West"), submit this memorandum of law in opposition to Plaintiffs' Motion for Preliminary Injunction, dated March 24, 2009.

## PRELIMINARY STATEMENT

Plaintiffs are before this Court seeking extraordinary and unwarranted injunctive relief. Plaintiffs seek to enjoin West from "advertising, selling, and/or using" the Treatise entitled "West's Pennsylvania Practice Series, Criminal Procedure: Law Commentary and Forms," including the first and second edition and pocket parts (the "Treatise" or "Work").

Specifically, plaintiffs ask this Court to enjoin West from any advertising, selling or use of the Treatise without first: (i) sending a letter to all of the Treatise's subscribers stating that the 2008-2009 pocket part "cannot be relied upon" and that plaintiffs had no involvement with the Treatise since the 2007-2008 pocket part; (ii) sending a sticker to all subscribers to place on the 2008-2009 pocket part stating that plaintiffs had no involvement with the Treatise since the 2007-2008 pocket part and that it "should not be relied upon for any information," and (iii) sending each subscriber a refund payment, enclosed with the above-letter and sticker, equaling the price paid for the 2008-2009 pocket part.[1]

In short, plaintiffs are unhappy with West's editing and publishing of the 2008-2009 pocket part – including the fact that plaintiffs' names are listed as co-authors on that pocket part along with West's "Publisher's Staff" – and plaintiffs want this Court to order West to publish to the world that the 2008-2009 pocket part cannot be relied upon for any purpose.

Plaintiffs' requested injunction should be promptly denied because, among other reasons, plaintiffs face no irreparable harm and have no likelihood of success on the merits of their claims. Putting aside for the moment the sheer over-breadth and vagueness of what

---

[1] Plaintiffs also ask the Court to order West to "prominently disclose on Westlaw" that the 2008-2009 pocket part cannot be relied upon and that plaintiffs had no involvement with the Treatise since the 2007-2008 pocket part.

plaintiffs mean when they ask the Court to enjoin West from "using" the Treatise – which in and of itself is a reason to deny the injunction – the plaintiffs' request lacks legal merit.

With respect to plaintiffs' supposed irreparable harm, plaintiffs avoid the fact that West has already addressed the majority of what plaintiffs seek as injunctive relief. Specifically, West sent a March 2009 letter to all subscribers stating that: (i) plaintiffs had no involvement with the 2008-2009 pocket part; (ii) plaintiffs "have discontinued their involvement in the publication;" (iii) the "2008-2009 pocket part does not reflect all changes in the law that have occurred since the prior year's update" and "should be checked for later developments;" (iv) West is "in the process of preparing a new 2009 pocket part which will be shipped to you free of charge;" (v) if the subscriber is not satisfied, he or she may receive a credit for the 2008-2009 pocket part; and (vi) "Westlaw will also reflect that the database is current through 2007-2008 pocket edition, pending further supplementation." Based on the foregoing, if there ever was any harm to plaintiffs (and West disputes that there ever was any), that harm was cured by West's March 2009 letter, and any remaining harm plaintiffs now allege in their injunction motion is purely contrived.

Moreover, plaintiffs cannot demonstrate a likelihood of success on the merits of their claims. Indeed, plaintiffs attempted to mislead the Court in their injunction motion and Amended Complaint by failing to mention the existence of a written publishing agreement, dated August 22, 2000 (the "**2000 Agreement**"), under which plaintiffs authored the publication at issue – the second edition of the Treatise and all subsequent pocket parts through 2007 (except for the 2007-2008 pocket part, which is not at issue).[2] The 2000 Agreement is important because plaintiffs gave West express written authority to use their "names in connection with the Work and upkeep of the Work," *including the 2008-2009 pocket part that is at issue here, **even if the plaintiffs did not participate in the upkeep and another person, such as West's Publisher's Staff, prepared it.** See Agmt., §§ 3(A)(2). In addition, plaintiffs gave West the right to "[u]se, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds

---

[2] See fn. 6, infra.

767220_7

and professional qualifications as part of the Work, <u>including revisions and new editions, as Publisher sees fit</u>," and to use plaintiffs' names "<u>generally</u> in connection with the <u>advertising and promotion</u> of the Work." Agmt. § 7(4) (emphasis added).

Plaintiffs' failure to mention the 2000 Agreement in their Amended Complaint, their motion and their memorandum of law was a gross misrepresentation by omission, especially since the Agreement clearly: (i) grants West authority to use plaintiffs' names in connection with the Treatise and pocket parts, and (ii) contains an exclusive Minnesota forum selection clause that required plaintiffs to file their claims in Minnesota (a clause which they have obviously tried to avoid). Nevertheless, West filed a Motion to Dismiss the Amended Complaint that fully demonstrates the incurable deficiencies in plaintiffs' claims as a matter of law; thus, for purposes of assessing the merits of plaintiffs' request for injunctive relief, plaintiffs have no likelihood of success on the merits.

Under these circumstances, plaintiffs are not entitled to any relief, let alone the preliminary injunctive relief they now seek. West respectfully requests that plaintiffs' motion for preliminary injunction be denied.

## **FACTUAL BACKGROUND**

Plaintiffs David Rudovsky ("Rudovsky") and Leonard Sosnov ("Sosnov") allege that they are law professors who have had distinguished careers in the law. <u>See</u> Am. Compl. ¶¶ 1-2. West is engaged in the business of publishing legal case books, treatises, practice guides and other materials, both in book form and in various computerized formats, including a database known as "Westlaw." <u>Id.</u> ¶ 6. With respect to treatises, West often publishes updates or supplements, usually on an annual basis and generally in the form of "pocket parts." <u>Id.</u>

The treatise at issue is entitled, "West's Pennsylvania Practice Series, Criminal Procedure: Law Commentary and Forms." <u>See</u> the Declaration of Jean Maess, dated April 10, 2009 ("Maess Decl."), ¶ 3 & Ex. A thereto. The Treatise is currently in its second edition, which was published in 2001. <u>Id.</u> ¶¶ 3, 4. After West's publication of the second edition of the

3

Treatise, plaintiffs prepared annual pocket parts to update the material, which West published and sent to subscribers to be placed in the back pocket of the Treatise. Id. ¶ 6.

1. **The Parties' 2000 Publishing Agreement Addresses "West's Pennsylvania Practice Criminal Procedure"**

Plaintiffs did not disclose in the Amended Complaint that they, as authors, entered into a written publishing agreement with West, as publisher, concerning the Treatise then tentatively entitled "West's Pennsylvania Practice Criminal Procedure" – an agreement that plaintiffs executed on August 22, 2000. See Agmt. (Maess Decl., Ex. B). The 2000 Agreement defines "Work" as:

> two original works (the "Work") tentatively entitled 1) West's Pennsylvania Forms Criminal Procedure and 2) **West's Pennsylvania Practice Criminal Procedure** regarding the law of criminal procedure in Pennsylvania.

Agmt., § 1 (emphasis added). The 2000 Agreement also includes as part of its definition of "Work" all future pocket parts and other upkeep:

> Authors will provide upkeep to the Work on an annual basis, or as otherwise agreed by Publisher and Authors, **including but not limited to supplements, revisions, or new editions of the Work** in order to keep it current and marketable. All references to the "Work" in this Agreement **also apply to such upkeep as well as to the original Work** unless otherwise provided.

Id., § 2(B) (emphasis added).

Under the 2000 Agreement, plaintiffs were required to deliver the first update of the Work to West in 11 months, and plaintiffs agreed that "subsequent upkeep will be due annually thereafter." Id., § 2(B)(1).

### 2. Plaintiffs Gave West Written Permission To Use Their Names In Connection With The Treatise and Pocket Parts, Regardless of Whether or Not Plaintiffs Authored Them

In relevant part, the 2000 Agreement gives West the right to use plaintiffs' names in connection with the Treatise – **regardless of whether or not plaintiffs participate in any upkeep**:

> Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work. <u>If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit</u> **in addition to or in lieu of credit given to Authors**.

<u>Id</u>., § 3(A)(2) (emphasis added). Plaintiffs also gave West the right to use their names and summaries of their backgrounds and qualifications in connection with advertising and promotion of the Work:

> Use, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, including revisions and new editions, as Publisher sees fit, and generally in connection with the advertising and promotion of the Work, including revisions and new editions.

<u>Id</u>., § 7(4).

The Work was and is "a work made for hire within the meaning of the United States copyright laws" [§ 4(A)7], and to the extent that "any portion of the Work or work product" is not deemed to be a work made for hire under applicable copyright law:

> <u>each Author grants, transfers and assigns</u> exclusively to Publisher for the full term of the copyright and any renewals or extensions of the copyright all rights in the Work, or any portion of the Work, including but not limited to: . . . 2. The right to <u>publish</u>, reproduce, transmit, <u>adapt, sell, or otherwise make use of the Work</u> or portions of the Work (including **all subsequent editions, supplements, and versions of the Work, regardless of length or nature**) throughout the world in any form or medium, now or hereinafter devised . . . for the entire term of the copyright.

<u>Id</u>., § 4(B)(2) (emphasis added).

5

The 2000 Agreement also provides that it "is the entire agreement of the parties," that "[a]ll prior negotiations and representations are merged into this Agreement" and that "[t]his Agreement supercedes all previous agreements regarding the Work." Id., § 11(H).[3] The 2000 Agreement also contains an exclusive venue provision: "Any legal action arising under this Agreement will be brought in the appropriate federal or state court in the State of Minnesota." Id., § 11(B).

### 3.   Plaintiffs' Present Dispute With West

Plaintiffs did not provide upkeep to the Treatise in 2008, alleging that they were unable to reach agreement on the financial terms on which they would prepare an updated pocket part. Am. Compl. ¶¶ 18, 23. Given plaintiffs' unwillingness to prepare a 2008-2009 pocket part, West used its own publisher's staff as authors in order to prepare the pocket part (hereinafter, the "2008-2009 Pocket Part"). See Maess Decl. ¶ 8 & Ex. D thereto (the cover of the pocket part at issue). The 2008-2009 Pocket Part states on its cover that it is by "David Rudovsky," "Leonard Sosnov," and "The Publisher's Staff." See id. Ex. D.

Among other things, plaintiffs assert that "the '2008-09 Pocket Part' contained almost no substantive information that was not in the 2007-08 pocket part," and lacked other information that "any reasonably competent legal author would have included reference to." Am. Compl. ¶¶ 24, 29. Plaintiffs also claim that they "did not consent to the use of their names for the purpose of falsely representing that they authored, prepared or participated in the preparation of the '2008-09 Pocket Part.'" Id. ¶ 45.

In sum, plaintiffs assert that West "wrongfully" published the 2008-2009 Pocket Part because: (i) plaintiffs did not participate in creating the 2008-2009 Pocket Part (which allegedly falsely states on the cover that it was prepared by plaintiffs and "The Publisher's

---

[3]   Although the parties had entered into a 1987 agreement concerning the first edition of the Treatise (Ex. 2 to the March 23, 2009 Rudovsky Declaration), the 2000 Agreement clearly supercedes the 1987 agreement.  See Point II.B.1 & n. 7, infra.  The second edition replaced the first edition of the Treatise (which was also authored by plaintiffs and published in 1990, but is no longer in publication). Maess Decl. ¶ 4.

6

Staff"); and (ii) the 2008-2009 Pocket Part was allegedly incompetently authored/revised.  Id. ¶¶ 11, 19, 23, 29, 37, 45 & Ex. A thereto.

Based upon West's alleged misuse of plaintiffs' names and the alleged poor quality of the 2008-2009 Pocket Part, plaintiffs' Amended Complaint sets forth six causes of action: false advertising and false endorsement under the Lanham Act (Counts I & II); unauthorized use of name under Pennsylvania Code § 8316 (Count III); defamation (Count IV); and common law claims for misappropriation of name and invasion of privacy/false light (Counts V & VI).  Id. ¶¶ 59-107.

### 4. West's March 2009 Letter To Subscribers

The 2008-2009 Pocket Part was not issued until December 2008.  On February 3, 2009, plaintiffs complained to West about the sufficiency of, or quality of, the 2008-2009 Pocket Part.  See letter, Am. Compl., Ex. B.  In response to plaintiffs' complaints – and West had received no other complaints from customers about the 2008-2009 Pocket Part – West looked into plaintiffs' assertions through several of its departments.  Maess Decl. ¶ 13.

After a thorough review of the 2008-2009 Pocket Part, West concluded that there were some deficiencies in the pocket part, and West sent a letter dated March 2009 to all of its Treatise subscribers, informing them that:

(i)     plaintiffs had no involvement with the 2008-2009 pocket part;

(ii)    plaintiffs "have discontinued their involvement in the publication;"

(iii)   the "2008-2009 pocket part does not reflect all changes in the law that have occurred since the prior year's update" and "should be checked for later developments;"

(iv)    West is "in the process of preparing a new 2009 pocket part which will be shipped to you free of charge;"

(v)     if the subscriber is not satisfied, he or she may receive a credit for the 2008-2009 pocket part; and

(vi)    "Westlaw will also reflect that the database is current through 2007-2008 pocket edition, pending further supplementation."

7

Maess Decl. ¶ 14 & Ex. F thereto (West's March 2009 letter).

West has received no complaints or dissatisfaction from any customers or users of the 2008-2009 Pocket Part, except for plaintiffs' complaints. Id. ¶ 26. As of March 2009, there were 378 subscribers to the Treatise, and since January 2009, the entire Treatise was only searched on Westlaw by 55 unique Westlaw users – clearly, Westlaw use of the Treatise is quite limited. Id. ¶ 27. Nevertheless, as stated in the March 2009 letter, West has published a "2009 Cumulative Supplement" to the Treatise, which West will ship to subscribers on or about April 15, 2009. The 2009 Cumulative Supplement will be sent with "Filing/Shelving Instructions" stating that it should be placed in the back pocket of the Treatise and that the 2008-2009 Pocket Part should be removed and the paper recycled. Id. ¶ 15. The 2009 Cumulative Supplement includes new content and revisions to prior content, and should provide excellent quality and content to the Treatise's users. Id. ¶ 17.

## 5.  Plaintiffs' Request For Preliminary Injunctive Relief

Despite the foregoing, plaintiffs assert that they are entitled to broad injunctive relief and "damages of at least $150,000" – plus West's profits associated with the 2008-2009 Pocket Part, punitive damages, attorney's fees and expenses – based upon West's alleged misappropriation of plaintiffs' names and West's supposed failure to edit the 2008-2009 Pocket Part properly. Am. Compl. ¶¶ 43, 66A & 66B. On March 24, 2009, plaintiffs moved for a preliminary injunction, with a proposed Order of injunction to enjoin West from <u>any advertising, selling or use of the Treatise</u> without first:

> (i)     sending a letter to all of the Treatise's subscribers stating that the 2008-2009 pocket part "cannot be relied upon" and that plaintiffs had no involvement with the Treatise since the 2007-2008 pocket part;
>
> (ii)    sending a sticker to all subscribers to place on the 2008-2009 pocket part stating that plaintiffs had no involvement with the Treatise since the 2007-2008 pocket part and that it "should not be relied upon for any information;"
>
> (iii)   sending each subscriber a refund payment, enclosed with the above-letter and sticker, equaling the price paid for the 2008-2009 pocket part; and

(iv)    making a disclosure on Westlaw that the 2008-2009 pocket part cannot be relied upon and that plaintiffs had no involvement with the Treatise since the 2007-2008 pocket part.

<u>See</u> Plaintiffs' proposed Order ("Pls.' Order"), #s 1-5.

### 6.    Plaintiffs' Dubious Assertions<br>About The 2008-2009 Pocket Part

Although plaintiffs make many assertions about the quality of the 2008-2009 Pocket Part and the use of their names in connection therewith, those assertions are disingenuous at best, and often, untrue.  <u>See</u> Maess Decl. ¶¶ 9-12; 19-26 (which West incorporates by reference as if fully set forth herein).

## ARGUMENT

Plaintiffs attempt to bring legally deficient claims by avoiding any mention of the 2000 Agreement.  Specifically, plaintiffs have asserted that West committed torts for name misappropriation, false advertising and defamation (Am. Compl. ¶¶ 62-63, 72, 79-83, 88-89, 97-98, 103) based upon their allegations that: (i) plaintiffs did not participate in creating the 2008-09 Pocket Part (which states on the cover that it was prepared by plaintiffs and "The Publisher's Staff"); and (ii) the 2008-09 Pocket Part was allegedly incompetently authored/revised.  <u>See</u> Am. Compl. ¶¶ 11, 19, 23, 29, 37 & Ex. A thereto.  The 2000 Agreement, however, clearly covers use of plaintiffs' names on the Treatise and any updates or pocket parts thereto – **<u>regardless of whether or not plaintiffs participated in that upkeep</u>** – as well as any advertising, marketing, or publishing of the Treatise.  <u>See</u> Agmt., §§ 1, 2(B), 3(A)(2), 4(B) & 7 (Maess Decl., Ex. B).

## I.    PLAINTIFFS BEAR A HIGH BURDEN IN DEMONSTRATING ANY ENTITLEMENT TO PRELIMINARY INJUNCTIVE RELIEF

A preliminary injunction is "an extraordinary remedy which should be granted only in limited circumstances."  <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3d Cir. 1989).  As at least one court has stated that:

> there is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing (of) an

9

> injunction; it is the strong arm of equity, that never ought to be
> extended unless to cases of great injury, where courts of law
> cannot afford an adequate or commensurate remedy in damages.

First Health Group Corp. v. Nat'l Prescription Adm'r, Inc., 155 F. Supp. 2d 194, 235 (M.D. Pa. 2001).

To justify a preliminary injunction, a district court must be convinced that the moving party has established: (i) a likelihood of success on the merits; (ii) that it will suffer irreparable harm if the injunctive relief is not granted; (iii) that the harm suffered by the moving party absent the requested injunction will outweigh the harm to the nonmoving party if the injunctive relief is granted; and (iv) that the public interest favors granting the injunctive relief. Shire U.S. Inc. v. Barr Laboratories Inc., 329 F.3d 348, 352 (3d Cir. 2003). Plaintiffs bear the burden of satisfying each of these elements, Bennington Foods LLC v. St. Croix Renaissance Group, LLP, 528 F.3d 176, 179 (3d Cir. 2005), a burden which plaintiffs cannot meet here.

## II. PLAINTIFFS' DEMAND FOR PRELIMINARY INJUNCTIVE RELIEF SHOULD BE DENIED

### A. Plaintiffs Cannot Demonstrate The Requisite Irreparable Harm

In evaluating whether the moving party will suffer irreparable harm absent the entry of a preliminary injunction, a district court must determine whether the moving party will suffer a particular kind of irreparable harm which cannot be redressed by a legal or equitable remedy following a trial. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 595 (3d Cir. 2002). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

Plaintiffs' assertion that "[a] likelihood of success leads to a presumption of irreparable harm" (see Pls.' Mem. at 20) is simply misguided. Indeed, the United States Supreme Court in eBay Inc. v. MercExchange, LLC found that a "plaintiff must demonstrate . . .

10

that it has suffered an irreparable injury" before a court may grant an injunction.[4] 547 U.S. 388 (2006) (holding that plaintiffs seeking injunctive relief must satisfy the traditional four-factor test, including demonstrating irreparable injury, before a court may grant injunctive relief).

Here, plaintiffs certainly cannot establish irreparable harm. Not only is most of their "harm" feigned (Maess Decl. ¶¶ 9-12; 19-26), but West has proactively addressed most of what plaintiffs seek as injunctive relief. See Maess Decl. ¶¶ 14-17. Specifically, West sent a March 2009 letter (the "March 2009 Letter") to all subscribers stating that: (i) plaintiffs had no involvement with the 2008-2009 pocket part; (ii) plaintiffs "have discontinued their involvement in the publication;" (iii) the "2008-2009 pocket part does not reflect all changes in the law that have occurred since the prior year's update" and "should be checked for later developments;" (iv) West is "in the process of preparing a new 2009 pocket part which will be shipped to you free of charge;" (v) if the subscriber is not satisfied, he or she may receive a credit for the 2008-2009 pocket part; and (vi) "Westlaw will also reflect that the database is current through 2007-2008 pocket edition, pending further supplementation." See Maess Decl. ¶ 14 & Ex. F.

Furthermore, West has published a new replacement supplement which it will deliver to subscribers on or about April 15, 2009 (the "2009 Cumulative Supplement"), with instructions to discard the 2008-09 Pocket Part. See id. ¶ 15. And, though West was not obligated to do so, the cover of the 2009 Cumulative Supplement will clearly indicate that it was prepared by "Publisher's Editorial Staff" and that "Supplements issued prior to 2008 and the main volume were prepared by authors Leonard Sosnov and David Rudovsky." Id. ¶ 16.

---

[4] Most courts addressing this issue have found that a presumption of irreparable harm is irreconcilable with eBay because the application of the presumption would effectively shift the burden of proof to the defendant. See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1211 (C.D. Cal. 2007) (stating that, in the context of injunctive relief, there can be no presumption of irreparable harm and that "[t]his view appears to have been followed by perhaps every court expressly considering eBay"); MercExchange, LLC v. eBay, Inc., 500 F. Supp. 2d 556, 569 (E.D. Va. 2007) (stating that a "presumption of irreparable harm is inconsistent with the Supreme Court's instruction that traditional equitable principles require the plaintiff to demonstrate that it has suffered an irreparable injury") (emphasis in original). Plaintiffs mistakenly rely on Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC, 212 F.3d 157, 169 (3d Cir. 2000) for assertion that courts may presume irreparable harm (see Pls.' Mem. at 20); however, such reliance is inappropriate because Times Mirror was decided in 2000, before the Supreme Court's 2006 eBay decision.

11

Because West published and will disseminate the 2009 Cumulative Supplement to all subscribers, plaintiffs cannot establish that they would be irreparably harmed by the denial of the motion for injunctive relief, most notably with respect to their defamation claim.[5]

Finally, plaintiffs mistakenly rely on Gilliam v. ABC, Inc., 538 F.2d 14 (2d Cir. 1976) for the apparent proposition that misrepresentation of an author's work can satisfy the irreparable harm standard. Pls.' Mem. at 20. However, Gilliam did not involve a written agreement granting permission to the publisher (as is the case here). Moreover, the instant action is clearly distinguishable from Gilliam because of the lengths West has undertaken, as demonstrated by the March 2009 Letter and the 2009 Cumulative Supplement, to address any shortcomings in the 2008-2009 Pocket Part.

Based on the foregoing, if there ever was any harm to plaintiffs (and West disputes that there ever was any), that harm was cured by the March 2009 Letter and the 2009 Cumulative Supplement, and any assertion by plaintiffs to the contrary is merely a poor attempt to feign irreparable injury.

### B. Plaintiffs Cannot Satisfy Their Burden Of Demonstrating A Likelihood Of Succeeding On The Merits Of Their Claims

As addressed in West's pending Motion to Dismiss the Amended Complaint, plaintiffs have failed to state any claims on which relief may be granted. See Defs.' Mot. to Dismiss and Memo. of Law, Dkt. #s 22, 23 (which West hereby incorporate by reference as if fully set forth herein). Thus, plaintiffs have no likelihood of success on the merits, and cannot satisfy their burden on this necessary element of injunctive relief.

---

[5]  It is well-settled Pennsylvania law that "[a]ny defamation or disparagement that [existed] in the past and has since been removed is properly remedied by a damages action," not preliminary injunctive relief. SNA, Inc. v. Array, 51 F. Supp. 2d 542, 546-47 (E.D. Pa. 1999). Even assuming that plaintiffs could establish a likelihood of success on their defamation claim – which they cannot as discussed in greater detail in Point II.B.4, infra – plaintiffs cannot establish irreparable injury with respect to their defamation claim, especially given West's March 2009 Letter, and therefore, plaintiffs are not entitled to injunctive relief.

1. **The parties' 2000 Agreement clearly controls the Treatise and pocket part supplement at issue in plaintiffs' Amended Complaint.**

The applicability of the parties' 2000 Agreement to plaintiffs' claims is a question of law for the Court to decide. Great American Ins. Co. v. Norwin School Dist., 544 F.3d 229, 243 (3d Cir. 2008) (citations and quotation marks omitted); Sentry Paint Techs., Inc. v. Topth, Inc., No. 08 Civ. 1064, WL 4787579, at *7-8 (E.D. Pa. Oct. 21, 2008). Moreover, courts "assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used." In re Old Summit Mfg., 523 F.3d 134, 137-38 (3d Cir. 2008); see also Great American, 544 F.3d at 243 (citing Murphy v. Duquesne Univ., 565 Pa. 571, 777 A.2d 418 (2001)).

Here, the Amended Complaint clearly identifies the work about which plaintiffs complain: "**West's Pennsylvania Practice Series, Criminal Procedure: Law, Commentary and Forms, Second Edition.**" Am. Compl. ¶ 11; Maess Decl., Ex. A (title page of the Treatise). The 2000 Agreement clearly controls this Treatise, defining "Work" as:

> two original works (the "Work") tentatively entitled 1) West's Pennsylvania Forms Criminal Procedure and 2) **West's Pennsylvania Practice Criminal Procedure** regarding the law of criminal procedure in Pennsylvania.

Agmt., § 1 (Maess Decl., Ex. A) (emphasis added). Moreover, the 2000 Agreement also clearly governs all upkeep, such as the 2008-09 Pocket Part at issue here:

> **B. Upkeep--Supplements, Revisions, and New Editions.** Authors will provide upkeep to the Work on an annual basis, or as otherwise agreed by Publisher and Authors, **including but not limited to supplements, revisions, or new editions of the Work** in order to keep it current and marketable. All references to the "Work" in this Agreement **also apply to such upkeep as well as to the original Work** unless otherwise provided.

Id., § 2(B) (emphasis added).[6]

In relevant part, the 2000 Agreement also gives West the right to use plaintiffs' names in connection with the Treatise and upkeep – **regardless of whether or not plaintiffs participate in any upkeep**:

> Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work. If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit **in addition to or in lieu of credit given to Authors**.

Id., § 3(A)(2) (emphasis added). Plaintiffs also gave West the right to use their names and summaries of their backgrounds and qualifications in connection with advertising and promotion of the Work:

> Use, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, including revisions and new editions, as Publisher sees fit, and generally in connection with the advertising and promotion of the Work, including revisions and new editions.

Id. § 7(4).

---

[6] As recently as April 2, 2009, plaintiffs and their counsel finally recalled the existence of the 2000 Agreement, although they stated in an email dated April 2 that they intend to take the position that the 2000 Agreement does not apply to the 2008-2009 Pocket Part. However, such a position is indefensible. The only other written agreement that the parties entered into after 2000 was a separate stand-alone agreement concerning the authorship of a single 2007-08 pocket part for the Treatise. (A copy of the 2007 stand-alone agreement is attached to plaintiff Rudovsky's March 23, 2009 Declaration, Ex. 3). That 2007 agreement, however, cannot govern the 2008-2009 Pocket Part, or any supplement other than the 2007-08 pocket part, because the 2007 agreement expressly states that the work entitled "Pennsylvania Practice Criminal Procedure 2007 Supplement" is the subject of the 2007 agreement. See Rudovsky's March 23, 2009 Decl., Ex. 3, § 1 (emphasis added). Indeed, Mr. Rudovsky concedes in his March 23, 2009 Declaration that "[t]he 2007 pocket part was prepared pursuant to a stand-alone agreement dated 2007 with West Services, Inc. governing only that particular pocket part." Rudovsky March 23, 2009 Decl., ¶ 7 (emphasis added); see also Pls.' Mem. at 2 n.2 ("The June 2007 Agreement, which contained a Minnesota forum selection clause is a stand-alone agreement that pertains only to the 2007-08 Pocket Part, and does not address in any way the parties' rights, including the right to use plaintiffs' names, concerning any other editions of the Treatise or any new pocket parts, such as the "2008-09 Pocket Part.") (emphasis added). Thus, even in plaintiffs' own words, the 2007 agreement is inapplicable to plaintiffs' claims.

The Treatise was and is "a work made for hire within the meaning of the United States copyright laws" [§ 4(A)7], and to the extent that "any portion of the Work or work product" is not deemed to be a work made for hire under applicable copyright law:

> each Author grants, transfers and assigns exclusively to Publisher for the full term of the copyright and any renewals or extensions of the copyright all rights in the Work, or any portion of the Work, including but not limited to: . . . 2. The right to publish, reproduce, transmit, adapt, sell, or otherwise make use of the Work or portions of the Work (including **all subsequent editions, supplements, and versions of the Work, regardless of length or nature**) throughout the world in any form or medium, now or hereinafter devised . . . for the entire term of the copyright.

Id. § 4(B)(2) (emphasis added).

Finally, the 2000 Agreement could not be modified orally. Id. § 11(H). Thus, based upon the foregoing definitions and provisions, the 2000 Agreement controls the Treatise at issue, including the 2008-09 Pocket Part.[7]

**2. Plaintiffs' statutory and common law claims for false endorsement, name misappropriation and invasion of privacy are incurably deficient.**

Plaintiffs' Count II (false endorsement under the Lanham Act), Count III (unauthorized use of name under Pennsylvania Code § 8316), and Counts V and VI (common law claims for misappropriation of name and invasion of privacy/false light) all fail as a matter of law and do not have a likelihood of success on the merits because these four statutory and common law claims are premised upon unauthorized use of one's name. West, however, possesses written authority in the Agreement to use plaintiffs' names, likenesses, and backgrounds in connection with the Work, including updates, revisions and new editions, as

---

[7] Plaintiff Rudovsky also submitted an Amended Declaration, dated "April __ 2009," after conceding that the parties' 2000 Agreement existed. To the extent that his Amended Declaration implies that the 1987 agreement – rather than the 2000 Agreement – controls authorship of current pocket parts, that position is indefensible. Rudovsky's Am. Decl. ¶ 7. The 2000 Agreement unequivocally provides that "[t]his Agreement supercedes all previous agreements regarding the Work" and that "[a]ll prior negotiations and representations are merged into this Agreement." See Agmt., § 11(H) (Maess Decl., Ex. B). Based upon the definition of "Work" contained in the 2000 Agreement, the 2000 Agreement clearly supercedes the 1987 agreement. See Agmt., §§ 1, 2(B) & 4(B)(2) (Maess Decl., Ex. B).

West sees fit in order to publish, sell, advertise or otherwise promote the Work. None of plaintiffs' authorities cited in their memorandum contradict this well-settled legal principle.[8] See, e.g., Pls.' Mem. at 11-20.

>  a.  Plaintiffs have no viable false endorsement claim under the Lanham Act (Count II)

Plaintiffs allege that they have a likelihood of success on Count II (false endorsement under the Lanham Act), which asserts that West's use of plaintiffs' names as authors of the 2008-09 Pocket Part falsely implies that plaintiffs endorse or sponsor the 2008-09 Pocket Part and that such endorsement is likely to cause consumer confusion in violation of Section 43(a) of the Lanham Act. Am. Compl. ¶¶ 68, 70, 72; Pls.' Mem. at 12. This claim, however, does not have a likelihood of success.

It is well recognized that consent to the use of one's name or likeness is a valid defense against false endorsement claims under the Lanham Act. See, e.g., Troyer v. Shrider, 2008 WL 4291450, at *4-5 (C.D. Cal. 2008) (denying plaintiff's motion for preliminary injunction and stating that false endorsement claims are based on unauthorized use of celebrity's identity); Marketing Prods. Mgmt., LLC v. HealthAndBeautyDirect.com, Inc., 333 F. Supp. 2d 418, 432-33 (D. Md. 2004) (granting defendant's motion to dismiss false endorsement claim brought under Lanham Act because, among other things, defendant's continued use of plaintiff's likeness was "in no sense a violation of the authority granted by plaintiffs to the defendants"); Cairns v. Franklin Mint Co., 107 F. Supp. 2d 1212 (C.D. Cal. 2000) ("A false endorsement claim

---

[8] Plaintiffs, for example, rely on the inapposite and clearly distinguishable case Facenda v. NFL Films, Inc., 542 F.3d 1007 (3d Cir. 2008), as support for the likelihood of success with respect to their claims under for violation of Pennsylvania Code § 8316, the Lanham Act, and the common law claim of invasion of privacy. See Pls.' Mem. at 13, 14, 17-19. In Facenda, the plaintiff signed a general release allowing defendant to use the plaintiff's voice recordings as it sees fit, provided that such use "does not constitute an endorsement of any product or service." Facenda, 542 F.3d at 1012. The court found that the defendant used the plaintiff's voice recording in connection with the endorsement of a product or service and determined that the defendant exceeded the scope of consent. Id. at 1025. In the instant action, however, the 2000 Agreement's broad language authorized West to use plaintiffs' names in connection with upkeep such as the 2008-09 Pocket Part, and it contained no relevant exceptions. See, e.g., Agmt., §§ 1, 2(B), 3(A)(2), 7(4).

based on the unauthorized use of a celebrity's identity is a type of false association claim for it alleges that misuse of a trademark which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product.") (citations and quotation marks omitted); see also Restatement (Third) of Unfair Competition § 46 (stating that one may be liable for appropriating the commercial value of another's identity where the appropriation was without consent).

Here, West expressly possessed the right "to use Authors' names in connection with the Work and upkeep of the Work," even when plaintiffs are not involved with any upkeep. See Agmt., § 3(A)(2) (emphasis added). Also, West had the right to "[u]se, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, including revisions and new editions, as Publisher sees fit." Id., § 7(4). Since the Work includes all upkeep, supplements and revisions, such as the 2008-09 Pocket Part (Point I, supra) – plaintiffs' false endorsement claim under the Lanham Act does not have a likelihood of success on the merits, and accordingly, the motion for preliminary injunction should be denied. See Agmt., §§ 3(A)(2) & 7(4); Troyer; Marketing Prods., supra.

> b. Plaintiffs' claim under Pennsylvania Code § 8316(a) is specious given the Agreement (Count III)

Pursuant to Pennsylvania Code § 8316(a), "[a]ny natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose **without the written consent** of such natural person . . . may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use." 42 P.A. C.S. § 8316 (emphasis added).

Here, despite having given West the express right to use plaintiffs' names (Agmt., §§ 3(A)(2) & 7(4)), plaintiffs assert that they have a likelihood of success on Count III (misappropriation of name under § 8316) because they allegedly did not authorize West to use their names as authors with respect to the distribution and/or sale of the 2008-09 Pocket Part and that such use by West constituted unlawful use of their names in violation of Pennsylvania Code § 8316(a). See Am. Compl. ¶¶ 79, 81, 83; Pls.' Mem. at 12.

17

Obviously, because West possessed written permission under the 2000 Agreement, plaintiffs do not have a likelihood of success with respect to their Section 8316(a) claim. See 42 Pa. C.S.A. § 8316(a) (stating that one may not use another's name for a commercial purpose "without the written consent of such natural person"); see, e.g., Tillery v. Leonard & Sciolla, LLP, 437 F. Supp. 2d 312, 328-29 (E.D. Pa. 2006) (denying plaintiff's motion for preliminary injunction pursuant to § 8316 because, among other things, plaintiff signed a written consent agreement allowing defendant to use his name for certain purposes).

>       c.      Plaintiffs' common law claim for name misappropriation is
>               also specious given the Agreement (Count V)

Plaintiffs assert that they have a likelihood of success on Count V (misappropriation of name), which alleges that they did not authorize West to use their names as authors with respect to the 2008-09 Pocket Part and that such false use of plaintiffs' names constitutes invasion of privacy through the misappropriation of their name or likeness in violation of Pennsylvania common law. Am. Compl. ¶¶ 96-98; Pls.' Mem. at 14.

Again, as is demonstrated above, the 2000 Agreement grants West the right to use Plaintiffs' names in connection with the "Work and upkeep of the Work" [Agmt., § 3(A)(2)], and to use and license to use Plaintiffs' names and likenesses with respect to revisions and new editions as West sees fit. See id., § 7(4).

Since West possessed written permission, plaintiffs' common law claim for invasion of privacy through misappropriation of names cannot succeed on the merits. See Sharman v. C. Schmidt & Sons, Inc., 216 F. Supp. 401 (E.D. Pa. 1963) ("One universally accepted principle of the right of privacy is that a consent to an invasion is a complete defense to the appropriation of a plaintiff's likeness to sell products"); 2 Summary of Pa. Jur. 2d Torts § 22:19, Effect of Release (stating that, to be actionable, invasions of privacy with respect to appropriation of name or likeness must be made without authority).

767220_7

>    d.    Plaintiffs' common law claim for invasion of privacy/false
>          light is not viable given the Agreement (Count VI)

Plaintiffs further assert that they have a likelihood of success on Count VI (invasion of privacy - false light), which is premised upon their allegations that West's use of their names on the 2008-2009 Pocket Part constitutes a major misrepresentation of plaintiffs' involvement with the 2008-2009 Pocket Part. Specifically, plaintiffs claim that use of their names suggests that they approve of the 2008-2009 Pocket Part as updated and revised, which thereby invades their privacy and casts it in a false light. See Am. Compl. ¶¶ 103-04; Pls.' Mem. at 14.

Once again, the 2000 Agreement grants West the right to use plaintiffs' names in connection with the "Work and upkeep of the Work" even when plaintiffs are not involved with any upkeep, and to use and license to use plaintiffs' names and likenesses with respect to revisions and new editions as West sees fit. See Agmt., § 3(A)(2). Since West possessed written permission, plaintiffs' common law claim for invasion of privacy through false light is not likely to succeed on the merits. See McFadden v. United States of America, 2005 WL 1413196, at *6 (M.D. Pa. 2005) (finding signed written consent granting defendant right to make certain disclosures was dispositive of plaintiff's invasion of privacy claim); see also Am. Jur. § 92 (right of privacy waived by written consent).

### 3.    Plaintiffs' statutory claim for false advertising under the Lanham Act is legally deficient (Count I).

Although plaintiffs assert that they have a likelihood of success on Count I (false advertising under the Lanham Act), this claim fails as a matter of law because, among other reasons, West possessed the right to use plaintiffs' names "generally in connection with the advertising and promotion of the Work." Agmt. § 7[4] (emphasis added); Pls.' Mem. at 15. Indeed, to the extent that plaintiffs complain that West's cover-page gives attribution (or false attribution) to both the "Publisher's Staff" and the plaintiffs as authors (Am. Compl. ¶¶ 37, 62), the 2000 Agreement clearly gives West that right:

Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work. If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit <u>in addition to or in lieu of credit given to Authors</u>.

Agmt., § 3(A)(2) (emphasis added).

Furthermore, plaintiffs' allegation that "West's false attribution of the Work to the Plaintiffs has harmed and/or will harm their reputations" (Am. Compl. ¶ 62) is not likely to succeed because courts have generally determined that such claims for false authorship are not actionable under the Lanham Act. <u>See</u> <u>Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC</u>, 467 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2006) (granting motion to dismiss because false authorship claims are not actionable on Lanham Act false advertising claims); <u>Thomas Publ'g Co. v. Technology Evaluation Ctrs., Inc.</u>, 2007 WL 2193964, at *3 (S.D.N.Y. 2007) (same).

Additionally, to the extent plaintiffs baldly allege that West made false representations that the 2008-2009 Pocket Part "constitutes a supplement, update, revision, improvement and/or amplification of the Treatise and/or '2007-08 Pocket Part'" (Am. Compl. ¶ 63), such a bald allegation is not actionable, and thus not likely to succeed, because plaintiffs <u>do not allege any specific advertising by West, false or otherwise, that supposedly contains such a description</u>. <u>See, e.g.</u>, <u>Brunson Comm'ns, Inc. v. Arbitron, Inc.</u>, 239 F. Supp. 2d 550, 574 (E.D. Pa. 2002) (granting motion to dismiss plaintiff's false advertising claim based on the Lanham Act for lack of standing because, among other things, plaintiff did not allege any actions that could possibly bear a resemblance to advertising activity complained of); <u>see also</u> <u>Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.</u>, 401 F.3d 123 135-36 (3d Cir. 2005) (citing § 43(a) of the Lanham Act and determining that, for a plaintiff to succeed on a false advertising claim, he must prove that the defendant used the mark "in commercial advertising or promotion").

4.  **Plaintiffs' common law claim for defamation has no legal merit (Count IV).**

Plaintiffs' memorandum of law omits any reference addressing their likelihood of success on Count IV (common law defamation claim). Such an omission is understandable, since the defamation claim is legally deficient and not likely to succeed on the merits. Among other shortcomings, plaintiffs' defamation claim is based upon the allegation that "the 2008-09 Pocket Part constitutes a false statement that the Plaintiffs authored the publication." Am. Compl. ¶ 87. As previously addressed, West had the broad right to use "Authors' names in connection with the Work and upkeep of the Work" even if plaintiffs performed no upkeep. Agmt., § 3(A)(2). Moreover, even though plaintiffs would not agree to update the Work (Am. Compl. ¶ 18), West was permitted under the 2000 Agreement to use another author and "identify that person on the new material and any related advertising and give him or her authorship credit in addition to or in lieu of credit given to Authors." Agmt., § 3(A)(2) (emphasis added).

Courts applying Pennsylvania law have long held that a plaintiff's consent to a defendant's communication precludes any liability for defamation with respect to such communications. See Sharman, 216 F. Supp. at 405 (stating that release signed by plaintiff precluded any liability on behalf of defendant with respect to the communications at issue and that "[s]uch consent negatives the existence of any tort in the first instance"); Baker v. Lafayette College, 504 A.2d 247 (Pa. Super. 1986) (finding professor's consent to publication of his performance evaluations gave college absolute privilege against defamation claim with respect to those evaluations); see also Sobel v. Wingard, 531 A.2d 520, 522 (Pa. Super. 1987) (stating that evaluations of an employee by an employer are deemed to be consented to by employee and finding that "consent is an absolute privilege"). Since plaintiffs consented to, among other things, the use of their names in connection with the Work, which by definition includes upkeep and revisions such as the pocket parts [Agmt., §§ 1, 2(B); 3(A)(2); 7(4)], plaintiffs are precluded from asserting a defamation claim based upon the use of their names on the cover of the 2008-09 Pocket Part and have no likelihood of success on such a claim. Sharman; Baker, supra.

21

In addition, it should be noted that any pocket part or supplement, such as the 2008-2009 Pocket Part, is a cumulative supplement which contains the work of prior years' authors, such as the plaintiffs' work here. Maess Decl. ¶ 10. Thus, West's use of plaintiffs' names and the "Publisher's Staff" as authors on the 2008-2009 Pocket Part was accurate, since plaintiffs had authored much of the content in that pocket part.

Plaintiffs also assert that the alleged poor quality of the 2008-2009 Pocket Part itself is actionable as defamation because the pocket part "does not contain substantial relevant material that the legal community would expect in such a publication." Am. Compl. ¶ 87. However, such editorial claims are barred by the express provision of the 2000 Agreement giving West the power to "edit, alter, and reorganize the Work as it deems appropriate." Agmt., § 7. Moreover, plaintiffs' allegation that the 2008-09 Pocket Part itself lacks "substantial relevant material that the legal community would expect in such a publication" does not sound in defamation because: (i) it is not "of and concerning" plaintiffs as is required for a defamation claim, see Darling v. Piniella, 1991 WL 193524, at *2 (E.D. Pa. 1991); Gans v. Gray, 612 F. Supp. 608, 612, n.4 (E.D. Pa. 1985), and plaintiffs fail to allege any special harm. See Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 583 (E.D. Pa. 1999), aff'd, 229 F.3d 1139 (3d Cir. 2000) (holding that plaintiff must satisfy the sixth element of a defamation claim under Pennsylvania law, special harm, because a slide shown at a conference "cannot constitute defamation *per se* [since] [t]he slide did not facially defame plaintiff"). For all of these reasons, plaintiffs' defamation claim is specious and not likely to succeed.

## C. The Potential Harm To West By Granting The Requested Injunction Far Outweighs Any Potential Harm To Plaintiffs If Their Request Is Denied

Injury to West by granting injunctive relief far outweighs any potential harm to plaintiffs if the motion is denied. Injunctions ordering an affirmative act or that mandating a specified course of conduct are "not regarded with favor" by the courts and are "used only with caution and in cases of great necessity." See Barton v. Eichelberger, 311 F. Supp. 1132, 1157 (M.D. Pa. 1970).

In the instant action, plaintiffs are seeking an injunction that would force West to send notices to subscribers, and place notices on Westlaw, stating that the 2008-2009 Pocket Part "cannot be relied upon," likely exposing West to potential claims by users of the Treatise based upon plaintiffs' specious assertion that the Treatise cannot be relied upon. See Pls.' Order, #s 1 & 5; Pls.' Mem. at 8. These forced actions would also likely result in the loss of potential sales by West.

Conversely, plaintiffs would suffer virtually no harm from a denial of their motion. As stated supra, the relevant Westlaw database was changed to reflect that it was current through the 2007-2008 pocket part edition and that it was pending further supplementation. West also sent the March 2009 Letter to all subscribers, which stated, among other things, that plaintiffs had no involvement in the 2008-2009 Pocket Part, that plaintiffs have discontinued their involvement with the publication, that the 2008-2009 Pocket Part does not reflect all changes in the law that have occurred since the prior update, and that West was in the process of preparing the 2009 Cumulative Supplement. See Maess Decl. ¶ 14 & Ex. F. West will deliver the 2009 Cumulative Supplement on or about April 15, 2009 to all subscribers with instructions to discard the 2008-09 Pocket Part. Id. ¶ 15. The cover of the 2009 Cumulative Supplement will clearly indicate that it was prepared by "Publisher's Editorial Staff" and that "Supplements issued prior to 2008 and the main volume were prepared by authors Leonard Sosnov and David Rudovsky." Id. ¶ 16.

Because West will face great harm if the requested injunction forcing West to act is granted, and plaintiffs would suffer virtually no harm from the denial of their motion, the balance of the harms weighs heavily in favor of West.

### D. The Public's Interest Favors Denial Of The Requested Injunction

The public's interest favors denial of plaintiffs' motion. First, plaintiffs seek to enjoin publishing and distribution of a Treatise, and such restrictions on speech are disfavored and clearly against the public interest. Second, by publishing its March 2009 Letter and the

forthcoming 2009 Cumulative Supplement, West has acted prudently and fairly – especially considering the obvious deficiencies of plaintiffs' claims. Plaintiffs, nonetheless, continue to press their unmeritorious claims, resulting in the waste of much time, money, and resources by both the parties and now the Court. The public interest would be better served by denying plaintiffs' obviously unmeritorious motion for an injunction.

<u>**CONCLUSION**</u>

Defendants respectfully request that plaintiffs' motion for preliminary injunction be denied.

Dated: April 10, 2009     Respectfully submitted,

            /s/ James F. Rittinger
          James F. Rittinger, Esquire (adm. *pro hac vice*)
          Aaron M. Zeisler, Esq. (adm. *pro hac vice*)
          SATTERLEE STEPHENS BURKE & BURKE LLP
          230 Park Avenue
          New York, NY 10169-0079
          (212) 818-9200
          Email: jrittinger@ssbb.com
             azeisler@ssbb.com

            /s/ Matthew J. Borger
          Matthew J. Borger, Esquire
          KLEHR, HARRISON, HARVEY, BRANZBURG
           & ELLERS LLP
          260 South Broad Street
          Philadelphia, PA 19102-5003
          (215) 568-6060
          Email: mborger@klehr.com

          *Attorney for the Defendants*

## CERTIFICATE OF SERVICE

I, Matthew J. Borger, hereby certify that Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction, Declaration of Jean Maess, and proposed Order have been filed electronically and are available for viewing and downloading from the Court's ECF system. I further certify that on this date I served the foregoing upon counsel listed below via email and first class mail as follows:

Richard L. Bazelon
Noah H. Charlson
BAZELON LESS & FELDMAN, P.C.
1515 Market Street, Suite 700
Philadelphia, PA 19102-1907
215-568-1155

/s/ Matthew J. Borger
Matthew J. Borger, Esquire

25