# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID RUDOVSKY and<br>LEONARD SOSNOV,<br>　　　　Plaintiffs,<br><br>　　　v.<br><br>WEST PUBLISHING CORPORATION,<br>WEST SERVICES INC., AND<br>THOMSON LEGAL AND REGULATORY<br>INC. t/a THOMSON WEST,<br>　　　　Defendants. | : CIVIL ACTION<br>:<br>:<br>:<br>: NO. 09-CV-727<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## ORDER

AND NOW, this _____ day of April, 2009, upon consideration of Defendants' Motion For Leave To File A Reply To Plaintiffs' Supplemental Memorandum of Law In Further Support of Motion For Preliminary Injunction, IT IS HEREBY ORDERED that the motion for leave to file said brief is GRANTED.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　John P. Fullam, J.

PHIL1 838607-1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID RUDOVSKY and LEONARD SOSNOV,<br><br>Plaintiffs,<br><br>v.<br><br>WEST PUBLISHING CORPORATION, WEST SERVICES INC., AND THOMSON LEGAL AND REGULATORY INC. t/a THOMSON WEST,<br><br>Defendants. | : CIVIL ACTION<br>:<br>:<br>: NO. 09-CV-727<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## DEFENDANTS' MOTION FOR LEAVE TO FILE A REPLY TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendants West Publishing Corporation, West Services Inc. and Thomson Legal and Regulatory Inc. t/a Thomson West hereby respectfully move for leave of Court to file a reply to plaintiffs' supplemental memorandum of law in further support of their motion for preliminary injunction. Defendants believe that a short reply brief is necessary to ensure that this Court has a complete and accurate understanding of the issues presented. Defendants submit that allowing them to file a reply brief will serve the interests of justice and aid the Court's analysis of the issues before it. The proposed reply brief is attached as Exhibit "A" hereto.

Dated: April 14, 2009

Respectfully submitted,

/s/ James F. Rittinger
James F. Rittinger, Esquire (adm. *pro hac vice*)
Aaron M. Zeisler, Esq. (adm. *pro hac vice*)
Satterlee Stephens Burke & Burke LLP
230 Park Avenue,
New York, NY 10169-0079
(212) 818-9200

PHIL1 838607-1

Email: jrittinger@ssbb.com
azeisler@ssbb.com


  /s/ Matthew J. Borger
Matthew J. Borger, Esquire
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
260 South Broad Street
Philadelphia, PA 19102-5003
(215) 568-6060
Email: mborger@klehr.com

*Attorneys for Defendants*

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID RUDOVSKY and<br>LEONARD SOSNOV,<br><br>      Plaintiffs,<br><br>  v.<br><br>WEST PUBLISHING CORPORATION,<br>WEST SERVICES INC., AND<br>THOMSON LEGAL AND REGULATORY<br>INC. t/a THOMSON WEST,<br><br>      Defendants. | CIVIL ACTION<br><br>NO. 09-CV-727 |

## DEFENDANTS' REPLY TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Defendants West Publishing Corporation, West Services Inc., and Thomson Reuters (Legal) Inc. (formerly known as Thomson Legal and Regulatory Inc.) d/b/a Thomson West (together "West"), submit this reply memorandum of law in opposition to Plaintiffs' "Supplemental" Memorandum of Law in Further Support of Their Motion for Preliminary Injunction, dated April 10, 2009 ("Pls.' Supp. Mem."). As an initial matter, West objects to plaintiffs' memorandum, which is not a reply brief and is nowhere permitted under the Court's individual practice rules or the Local Federal Rules.

### ARGUMENT

The Court should reject plaintiffs' three arguments as to why the parties' publishing agreement dated August 22, 2000 ("2000 Agreement") does not apply to their claims. It is undisputed that West publishes the Treatise at issue in this case, entitled "West's Pennsylvania Practice Series, Criminal Procedure" (the "Treatise"), which is currently in its second edition and was published in 2001. Maess Decl. ¶ 3 & Ex. A & C; Rudovsky Decl. ¶ 7. Yet, plaintiffs are desperately trying to run away from the 2000 Agreement, claiming that a 1987

agreement between the parties controls because the 1987 agreement is silent as to venue and conveys limited rights for West to use plaintiffs' names.[1] The 2000 Agreement, however, contains an exclusive forum selection clause (calling for claims to be brought in Minnesota) and contains several provisions under which plaintiffs gave West broad rights to use their names in connection with the Treatise and any subsequent upkeep (such as the pocket part at issue) regardless of whether or not plaintiffs authored such upkeep.

The applicability of the parties' 2000 Agreement to plaintiffs' claims is a question of law for the Court to decide. Great American Ins. Co. v. Norwin School Dist., 544 F.3d 229, 243 (3d Cir. 2008) (citations and quotation marks omitted); Sentry Paint Techs., Inc. v. Topth, Inc., No. 08 Civ. 1064, WL 4787579, at *7-8 (E.D. Pa. Oct. 21, 2008).

### A. Plaintiffs' Argument that the 2000 Agreement Should Not Be Considered Because Plaintiffs Are Unaware of the Identity of "West Group" Is Frivolous

Plaintiffs' most spurious assertion is that the Court should refuse to consider the 2000 Agreement because "'West Group' is nowhere identified in any of Defendants' submissions, and Plaintiffs do not know who 'West Group' is." Pls.' Supp. Mem. at 2 (emphasis added).[2] Yet, plaintiffs signed the 2000 Agreement, added their social security numbers, initialed several pages, and produced it to defense counsel from their own files in connection with this litigation. See 2000 Agmt. & related correspondence (Rittinger Apr. 3, 2009 Decl., Exhs. B & C). Moreover, plaintiff Rudovsky has declared that:

> Following the publication of this book [in 1987], Authors undertook the preparation of annual pocket parts to provide subscribers with updates to the text. The authors prepared pocket parts for every year through 2007, with the exception of 2001, when we wrote and published a second edition of the treatise.

Rudovsky Mar. 23, 2009 Decl. ¶ 7. The notion that two supposedly distinguished law professors and legal practitioners (who have been getting paid as authors by West) have no idea who their

---

[1] Plaintiffs and their attorneys commenced this action and filed their motion for a preliminary injunction in apparent ignorance of the existence of the 2000 Agreement.

[2] Contrary to plaintiffs' assertion, West identifies West Group and the genesis of the 2000 Agreement in the Declaration of Jean Maess dated April 10, 2009, ¶¶ 1, 3 - 7.

2

767790_4

publisher has been since 1987 (first edition) or since 2001 (second edition), and supposedly 'do not know who 'West Group' is'" (Pls.' Supp. Mem. at 2), is simply fantastic and should be rejected. Moreover, by plaintiffs' warped logic, the 1987 agreement that they claim controls would also be questionable because it was signed by plaintiffs and "West Publishing Company" (see the 1987 Agmt. annexed to Rudovsky Decl., Ex. 2) – not West Publishing *Corporation* – the entity that plaintiffs named as a defendant. Plaintiffs' gamesmanship should not be countenanced.

> B.   **Plaintiffs' Argument that the 2000 Agreement Was Superceded by a Stand-Alone 2007 Agreement Has No Legal Merit**

Plaintiffs' argument that the 2000 Agreement does not apply to the 2008-2009 pocket part because the 2000 Agreement was supposedly superceded by a 2007 agreement simply makes no sense and defies the plain language of the 2000 and 2007 agreements. The 2000 Agreement defines "Work" as:

> two original works (the "Work") tentatively entitled 1) West's Pennsylvania Forms Criminal Procedure and 2) **West's Pennsylvania Practice Criminal Procedure** regarding the law of criminal procedure in Pennsylvania.

See 2000 Agmt., § 1 (emphasis added). The 2000 Agreement also includes as part of its definition of "Work" all future pocket parts and other upkeep, such as the 2008-2009 pocket part:

> Authors will provide upkeep to the Work on an annual basis, or as otherwise agreed by Publisher and Authors, including but not limited to supplements, revisions, or new editions of the Work in order to keep it current and marketable. **All references to the "Work" in this Agreement also apply to such upkeep as well as to the original Work** unless otherwise provided.

Id., § 2(B) (emphasis added). Based upon these provisions, the Treatise and 2008-2009 pocket part – both part of "West's Pennsylvania Practice Series, Criminal Procedure" – clearly fall with the definition of "Work" contained in the 2000 Agreement. See 2000 Agmt., §§ 1 & 2(B).

In total contrast, the definition of "Work" in the 2007 agreement is limited to the 2007 Supplement:

> Publisher is preparing a Work for publication entitled
> *Pennsylvania Practice Criminal Procedure 2007 Supplement,*
> (the "Work").

2007 Agmt. § 1 (emphasis in original). Since the 2007 agreement only applies to the 2007 Supplement, the 2007 agreement's merger clause can only supercede prior agreements regarding the 2007 Supplement. See id. § 9(H) ("This Agreement supersedes all previous agreements regarding the Work."). As a matter of interpretation, courts "assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used," In re Old Summit Mfg., 523 F.3d 134, 137-38 (3d Cir. 2008); thus, the Court should reject plaintiffs' misguided attempt to claim that the 2007 agreement supersedes the 2000 Agreement by glossing over the definition of "Work" under the respective agreements.

Moreover, plaintiffs previously conceded that the 2007 agreement is limited to the 2007 pocket part. See Rudovsky March 23, 2009 Decl., ¶ 7 ("The 2007 pocket part was prepared pursuant to a stand-alone agreement dated 2007 with West Services, Inc. governing only that particular pocket part.") (emphasis added); see also Pls.' Mar. 23, 2009 Mem. at 2 n.2 ("The June 2007 Agreement, which contained a Minnesota forum selection clause is a stand-alone agreement that pertains only to the 2007-08 Pocket Part, and does not address in any way the parties' rights, including the right to use plaintiffs' names, concerning any other editions of the Treatise or any new pocket parts, such as the "2008-09 Pocket Part.") (emphasis added). Thus, in plaintiffs' own words, the 2007 agreement is a stand-alone agreement that pertains only to the 2007-2008 pocket part and does not address the parties' rights here "in any way."

### C. This Action Falls Within the 2000 Agreement's Forum Selection Clause and Should Be Dismissed on Improper Venue Grounds As Set Forth In Defendants' Motion to Dismiss

Here, the forum selection clause contained in the parties' 2000 Agreement provides that: "Any legal action arising under this Agreement will be brought in the appropriate federal or state court in the State of Minnesota" (Agmt., § 11[B]), and the Court should reject

plaintiffs' argument that the 2000 Agreement's "arising under" venue clause does not control plaintiffs' tort claims.

First, plaintiffs regurgitate cases that interpret "arising under" language without ever explaining why, supposedly, their claims as set forth in the Amended Complaint do not "arise under" the 2000 Agreement. Plaintiffs merely state in conclusory fashion that "[i]n the present case, none of the claims originate under the 2000 Agreement, even if it did apply to the purported 2008-2009 pocket part." Pls.' Supp. Mem. at 6. Plaintiffs never bother to articulate (because they cannot articulate) how their allegations supposedly arise outside of the 2000 Agreement and the parties' publishing relationship.

Yet, as West succinctly demonstrated, <u>all of plaintiffs' claims</u> here "arise under" the 2000 Agreement because they concern the alleged improper use of plaintiffs' names, false advertising, and the editorial quality of the pocket part (Am. Compl. ¶¶ 62-63, 72, 79-83, 88-89, 97-98, 103) – topics which are expressly covered by the Agreement (Agmt. §§ 3, 4 & 7). See Defs.' Memo in Support of Motion To Dismiss, at 9-11, citing <u>Crescent Int'l, Inc. v. Avatar Cmty., Inc.</u>, 857 F.2d 943, 945 (3d Cir. 1988); <u>Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.</u>, 709 F.2d 190, 203 (3d Cir. 1983); <u>Terra Int'l, Inc. v. Mississippi Chem. Corp.</u>, 119 F.3d 688, 694 (8th Cir. 1997); <u>Banco Popular de Puerto Rico v. Airborne Group PLC</u>, 882 F. Supp. 1212, 1214-17 (D.P.R. 1995); <u>Jordan v. SEI Corp.</u>, 1996 WL 296540, at *7 n.10 (E.D. Pa. 1996).

Second, plaintiffs' newly-cited cases are inapposite. It is well-settled that when a court interprets the scope of a forum selection clause, "[d]rawing analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue." <u>John Wyeth & Brother Ltd. v. Cigna Int'l Corp.</u>, 119 F.3d 1070, 1075-76 (3d Cir. 1997). Yet, plaintiffs cite <u>Wyeth</u> and <u>Phillips v. Audio Active Ltd.</u>, 494 F.3d 378 (2d Cir. 2007) in a misguided attempt to support their assertion that the forum selection clause in the 2000 Agreement is not broad enough. See Pls.' Supp. Mem. at 3-7. <u>Wyeth</u> and <u>Phillips</u>, however, interpret forum selection clauses that are not the same or substantially similar to the 2000 Agreement's "arising under" language.

5

The clause interpreted in Wyeth stated that "the English Courts shall have exclusive jurisdiction in relation to any dispute arising under or out of or in relation to [the agreement]"– a clause that is sufficiently different than the one presented here. Wyeth, 119 F.3d at 1072 (emphasis added). When interpreting differently worded clauses, courts in this district find such cases inapplicable. See Wild v. Jungle Media Group, No. 02 Civ. 5123, 2004 WL 834695, at *8 (E.D. Pa. Mar. 17, 2004) (interpreting a forum selection clause covering claims "arising under" an agreement and finding that "Wyeth [was] inapposite because the court did not address 'arising under' language but based its findings upon the forum selection clause's 'arising in relation to' language").[3]

The forum selection clause in Phillips – covering claims that "may arise out of [the agreement]" – is also not substantially similar to the "arising under" language presented here; thus, Phillips is inapposite. See Phillips, 494 F.3d at 390 (stating that interpreting the scope of forum selection clauses is "language-specific [in] nature" and that the court will "discount[] the precedential weight of cases that deal with dissimilarly worded clauses").

## CONCLUSION

For these reasons and those set forth in defendants' April 10, 2009 Memorandum of Law, defendants respectfully request that plaintiffs' motion for preliminary injunction be denied.

Dated: April 14, 2009                    Respectfully submitted,

                                                      /s/ James F. Rittinger
                                           James F. Rittinger, Esquire (adm. *pro hac vice*)
                                           Aaron M. Zeisler, Esq. (adm. *pro hac vice*)
                                           SATTERLEE STEPHENS BURKE & BURKE LLP

---

[3] Jungle Media is inapposite because that case addressed a tortious interference claim – involving other entities – that went beyond the scope of the parties' agreement. See Jungle Media, 2004 WL 834695 at *7. The instant action is distinguishable because: (i) West had a contractual right to use plaintiffs' names in the manner alleged in plaintiffs' Amended Complaint, and (ii) plaintiffs do not allege that West has done any affirmative wrongful act outside the scope of West's contractual rights. Instead, plaintiffs simply try to avoid the 2000 Agreement and the nature of the claims that they have alleged.

230 Park Avenue
New York, NY 10169-0079
(212) 818-9200
Email: jrittinger@ssbb.com
azeisler@ssbb.com


  /s/ Matthew J. Borger
Matthew J. Borger, Esquire
KLEHR, HARRISON, HARVEY, BRANZBURG
& ELLERS LLP
260 South Broad Street
Philadelphia, PA 19102-5003
(215) 568-6060
Email: mborger@klehr.com

*Attorney for the Defendants*

# CERTIFICATE OF SERVICE

I, Matthew J. Borger, hereby certify that the foregoing Motion For Leave To File A Reply To Plaintiffs' Supplemental Memorandum Of Law In Further Support Of Motion For Preliminary Injunction has been filed electronically and is available for viewing and downloading from the Court's ECF system. I further certify that on this date I served the foregoing Motion For Leave To File A Reply To Plaintiffs' Supplemental Memorandum Of Law In Further Support Of Motion For Preliminary Injunction upon counsel listed below via email and first class mail as follows:

Richard L. Bazelon
Noah H. Charlson
BAZELON LESS & FELDMAN, P.C.
1515 Market Street, Suite 700
Philadelphia, PA 19102-1907
215-568-1155
rbazelon@bazless.com
ncharlson@bazless.com

April 14, 2009

Matthew J. Borger