IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DAVID RUDOVSKY and LEONARD SOSNOV, | CIVIL ACTION |
| Plaintiffs, | |
| v. | NO. 09-CV-727 |
| WEST PUBLISHING CORPORATION, WEST SERVICES INC., AND THOMSON LEGAL AND REGULATORY INC. t/a THOMSON WEST, | |
| Defendants. | |



FILED

MAY 11 2009

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Defendants West Publishing Corporation, West Services Inc., and Thomson Reuters (Legal) Inc. (formerly known as Thomson Legal and Regulatory Inc.) d/b/a Thomson West (hereinafter "West"), submit this reply memorandum of law in further support of their motion to dismiss.[1]

## ARGUMENT

Plaintiffs' entire opposition is premised upon the argument, as it must be to defeat the motion, that there is no agreement in effect between the parties and, therefore, the parties' 2000 Agreement does not apply to the claims in this action. This is the latest of several contradictory positions by Plaintiffs, but the fact is that Plaintiffs simply forgot about the 2000 Agreement, as was brought out at the preliminary injunction hearing, and now must scramble to

---

[1] Plaintiffs' Opposition Memorandum of Law, dated May 4, 2009, is referenced herein as "Pls.' Opp." All other capitalized terms have the same meaning set forth in West's initial memorandum of law, dated April 3, 2009.

770148_5

Dockets.Justia.com

justify an Amended Complaint that was filed in ignorance of it. See Hearing Tr. at 38:14 – 39:3 (annexed hereto as Exhibit A).[2]

## A. The Court Must Decide The Narrow Legal Issue Of Whether The Parties' 2000 Agreement Has Been Superseded

The applicability of the parties' 2000 Agreement to Plaintiffs' action is a question of law for this Court to decide. Great American Ins. Co. v. Norwin School Dist., 544 F.3d 229, 243 (3d Cir. 2008) (citations and quotation marks omitted); Sentry Paint Techs., Inc. v. Topth, Inc., No. 08 Civ. 1064, WL 4787579, at *7-8 (E.D. Pa. Oct. 21, 2008).

### 1. The 2000 Agreement was not superceded by the 2007 Agreement as Plaintiffs now suggest.

Plaintiffs' argument that the 2000 Agreement does not apply to the 2008-2009 Pocket Part because the 2000 Agreement was supposedly superseded simply defies the plain language of the 2000 and 2007 Agreements and should be rejected. In short, the 2007 agreement only applies to the 2007 Supplement (i.e., the 2007-08 pocket part) – not the 2008-2009 Pocket Part at issue – a point which Plaintiffs previously conceded before they remembered the existence of the 2000 Agreement. See Rudovsky's March 23, 2009 Decl., ¶ 7 (Pls.' Opp. Ex. E) ("The 2007 pocket part was prepared pursuant to a stand-alone agreement dated 2007 with West Services, Inc. governing only that particular pocket part.") (emphasis added); see also Pls.' Mar. 23, 2009 Mem. at 2 n.2 ("The June 2007 Agreement, which contained a Minnesota forum selection clause is a stand-alone agreement that pertains only to the 2007-08 Pocket Part, and does not address in any way the parties' rights, including the right to use plaintiffs' names, concerning any other editions of the Treatise or any new pocket parts, such as the "2008-09 Pocket Part.") (emphasis added). Thus, in Plaintiffs' own words, the 2007 agreement is a stand-alone agreement that pertains only to the 2007-08 Pocket Part and does not address the parties' rights here "in any way." Id.

---

[2] Pursuant to Rule 12(d) the Court may choose to consider matters outside the pleadings and treat West's motion to dismiss as one for summary judgment pursuant to Rule 56.

770148_5

Moreover, and dispositively, the definition of "Work" set forth in the 2007 Agreement makes it abundantly clear that the 2007 Agreement is limited to the 2007 Supplement:

> Publisher is preparing a Work for publication entitled
> ***Pennsylvania Practice Criminal Procedure 2007 Supplement,***
> (the "Work").

See 2007 Agmt. § 1 (emphasis in original). Since the 2007 Agreement only applies to the "Work" as defined in the 2007 Agreement (i.e., the 2007 Supplement), then the 2007 Agreement's merger clause can only supersede prior agreements concerning that "Work" (i.e., the 2007 Supplement). See 2007 agreement, § 9(H) ("This Agreement supersedes all previous agreements regarding the Work.") (emphasis added).

The Court should reject Plaintiffs' new argument that, because the 2007 Agreement's merger clause states that "[a]ll prior negotiations and representations are merged into this Agreement," the 2007 Agreement supersedes all agreements between the parties, including the 2000 Agreement. Pls.' Opp. at 18. First, Plaintiffs' argument isolates one sentence and takes it out-of-context from the entire merger clause. At the same time, it ignores the fact that the merger clause is limited to the "Work" as defined in the 2007 Agreement (i.e., the 2007 Supplement). The merger clause provides in its entirety:

> This is the entire agreement of the parties. All prior negotiations and representations are merged into this Agreement. This Agreement supersedes all previous agreements concerning the Work.

See 2007 Agmt., § 9(H) (emphasis added). By its clear terms, the 2007 Agreement's merger clause is limited to the "Work" defined therein, and thus, the 2007 Agreement only supersedes previous negotiations, representations or agreements concerning the 2007 Supplement.

Second, Plaintiffs' interpretation of the merger clause -- taken to its logical conclusion -- would cause the 2007 Agreement that is otherwise limited to the 2007 Supplement to supersede any prior agreement between the parties, such as the parties' prior agreements

3

concerning the book entitled, "Police Misconduct: Law and Litigation," which was authored by Rudovsky and published by West. See Rudovsky Decl. ¶ 17 (Pls.' Opp., Ex. E). Clearly, the effect of the 2007 Agreement's merger clause cannot be so broad; it is limited to the 2007 Supplement – the "Work" at issue in the 2007 Agreement. See 2007 agmt., § 9(H).[3]

Only by glossing over the definition of Work in the respective agreements (Pls.' Opp. at 18) do Plaintiffs reach their erroneous conclusion that the 2007 Agreement superseded the 2000 Agreement. Yet, as a matter of contract interpretation, courts "assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used," In re Old Summit Mfg., 523 F.3d 134, 137-38 (3d Cir. 2008); thus, the Court should find that the 2007 Agreement is limited to the 2007 Supplement and that the 2000 Agreement controls the Treatise and the 2008-2009 Pocket Part at issue.

Finally, it should be noted that Plaintiffs have attempted to avoid the import of the 2000 Agreement by taking several contradictory positions: first, that the 2000 Agreement did not exist and a 1987 agreement controlled (Am. Compl., Ex. 2); next, after seeing the 2000 Agreement, by claiming that the 2000 Agreement was not enforceable because West did not sign it; next, after seeing a fully executed copy of the 2000 Agreement, by claiming that Plaintiffs did not know who West Group was (Pls.' April 10, 2009 Supp. Mem. at 2); and now, by claiming that no agreement controls the claims in this action. Pls.' Opp. at 12. West submits that Plaintiffs' ever-changing positions speak volumes concerning the merits of its latest contention that the 2000 Agreement has been superseded and is therefore of no effect.

2. **Plaintiffs cannot avoid the 2000 Agreement by baldly asserting that the 2007 Agreement is ambiguous.**

Plaintiffs also vaguely suggest that the 2007 Agreement is ambiguous without pointing to any specific language that is supposedly ambiguous. Indeed, Plaintiffs merely state

---

[3] Plaintiff readily acknowledged at the hearing that a merger clause like the one at issue would often be found in agreements where there were no prior written agreements because they would have the effect of superseding and protecting against any oral understandings during negotiations. Hearing Tr. 46:8-47:11 (Ex. A hereto).

4

that "if one were to assume that the language used by the defendants is ambiguous (defendants' best case), any ambiguity should be resolved against defendants" because they authored the agreements. Pls.' Opp. at 19. Yet, the definition of "Work" could not be clearer in the 2007 Agreement – it relates only to the 2007 Supplement.

The law requires that Plaintiffs provide more than their own subjective interpretation of a given contractual term in order to demonstrate ambiguity. See Pension Fund for Nursing Home and Health Care Employees v. Bala Nursing and Retirement Center, LP, 2003 WL 22428887, at *3 (E.D. Pa. Sept. 2, 2003). "The party claiming that a contract is ambiguous must first convince the judge that this is the case ... and must produce objective facts, not subjective and self-serving testimony, to show that a contract which looks clear on its face is actually ambiguous . . .." International Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Skinner Engine Co., 188 F.3d 130, 145 (3d Cir. 1999) (quoting Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 565 (7th Cir.1995)). Moreover, "a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 614 (3d Cir.1995) (citing Samuel Rappaport Family Partnership v. Meridian Bank, 441 Pa.Super. 194, 657 A.2d 17, 21-22 (Pa. Super. 1995)).

Here, Plaintiffs have utterly failed to explain how the 2007 Agreement is ambiguous.

### 3.  Rudovsky's hearing testimony belies Plaintiffs' latest position that no agreement applies to the claims at issue.[4]

Mr. Rudovsky clearly testified on cross-examination that he had entered into three written agreements with West: a 1987 Agreement, a 2000 Agreement about which he had forgotten, and a 2007 Agreement. See Hearing Tr. at 37:7-12 (Ex. A, hereto). Mr. Rudovsky further testified that he entered into the 2000 Agreement with West and that he understood it governed the Treatise and annual upkeep. Id. at 39:22 – 40:16. Mr. Rudovsky also testified that

---

[4] Again, pursuant to Rule 12(d), the Court can treat West's motion as one for summary judgment.

the 2007 Agreement was a "stand-alone agreement" that only governed preparation of the 2007 pocket part. Id. at 52:7 – 53:7. Based upon this testimony, Plaintiffs' newly-minted argument that no agreement applies to their claims because the 2000 Agreement was superseded by the 2007 Agreement must be rejected as it is contrary to Plaintiff's sworn testimony.

**B.** **This Action Falls Within The 2000 Agreement's Forum Selection Clause And Should Be Dismissed On Venue Grounds**

The Court should reject Plaintiffs' argument that the 2000 Agreement's "arising under" venue clause does not control Plaintiffs' tort claims. Pls.' Opp. at 12-16. The forum selection clause contained in the 2000 Agreement provides that: "Any legal action arising under this Agreement will be brought in the appropriate federal or state court in the State of Minnesota" (Agmt., § 11[B]), and Plaintiffs' claims arise under the 2000 Agreement.

All of Plaintiffs' claims here "arise under" the 2000 Agreement because they concern the alleged improper use of Plaintiffs' names, false advertising, and the editorial quality of the 2008-2009 Pocket Part (Am. Compl. ¶¶ 62-63, 72, 79-83, 88-89, 97-98, 103) – topics which are expressly covered by the Agreement (Agmt. §§ 3, 4 & 7), and thus, arise under it. See Defs.' Memo at 9-11. Tellingly, Plaintiffs never address or explain why, supposedly, their claims as set forth in the Amended Complaint do not "arise under" the 2000 Agreement. Plaintiffs merely state in conclusory fashion that "none of plaintiffs' claims assert contractual claims under *any* agreement, and therefore none of the claims can be subject to the venue clause." Pls.' Opp. at 13. Yet, it is clear that tort claims can "arise under" a contract. See, e.g., Crescent Int'l, Inc. v. Avatar Cmty., Inc., 857 F.2d 943, 945 (3d Cir. 1988); Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983); Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 694 (8th Cir. 1997); Banco Popular de Puerto Rico v. Airborne Group PLC, 882 F. Supp. 1212, 1214-17 (D.P.R. 1995); Jordan v. SEI Corp., 1996 WL 296540, at *7 n.10 (E.D. Pa. 1996).

Plaintiffs cite John Wyeth & Brother Ltd. v. Cigna Int'l Corp., 119 F.3d 1070 (3d Cir. 1997) and Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007) in a misguided attempt

6

to support their assertion that the forum selection clause in the 2000 Agreement is not broad enough. See Pls.' Opp. at 12-13. Neither case, however, supports the Plaintiffs' interpretation of the forum selection clause in this case.

First, the Third Circuit in Wyeth actually found the forum selection clause in that case to encompass the action, and it affirmed the district court's grant of summary judgment dismissing the case. See 119 F.3d at 1074-76. Plaintiffs nevertheless assert that Wyeth supports their position because, in the course of rejecting the Plaintiffs' opposition to dismissal, the Wyeth court noted that the operative phrase in the forum selection clause in that case – "arising in relation to" – was broader than the phrase "arising under." Id. at 1074-75. But the Wyeth court never defined the contours of the phrase "arising under" or even so much as intimated that it would not have also covered the action in its case – and even if it had, such a pronouncement would obviously have been pure dictum. Plaintiffs' argument – that since "arising in relation to" encompasses claims other than those brought directly under the contract, wording of any lesser breadth is necessarily limited to such claims – is quite simply a logical fallacy of the most basic order.

Moreover, as the Wyeth court specifically states, it is well-settled that when a court interprets the scope of a forum selection clause, "[d]rawing analogy to other cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue." Id. at 1075. This principle not only renders Wyeth of limited (or no) application here, see Wild v. Jungle Media Group, No. 02 Civ. 5123, 2004 WL 834695, at *8 (E.D. Pa. Mar. 17, 2004) (interpreting a forum selection clause covering claims "arising under" an agreement and finding that "Wyeth [was] inapposite because the court did not address 'arising under' language but based its findings upon the forum selection clause's 'arising in relation to'

language"),[5] but it also dispenses with Plaintiffs' reliance upon Phillips. The forum selection clause in Phillips – covering claims that "may arise out of [the agreement]" – is also not substantially similar to the "arising under" language presented here. See Phillips, 494 F.3d at 390 (stating that interpreting the scope of forum selection clauses is "language-specific [in] nature" and that the court will "discount[] the precedential weight of cases that deal with dissimilarly worded clauses").

In addition, the Seventh Circuit – in an opinion specifically cited with approval by the Wyeth court, see 119 F.3d at 1076 n.5 – has rejected the Second Circuit's crabbed and technical focus on the plaintiff's framing of its causes of action in favor of a more realistic assessment of the dispute between the parties and its relation to the contract containing the forum selection clause. See Omron Healthcare, Inc. v. Maclaren Exports Ltd., 28 F.3d 600 (7th Cir. 1994). In Omron, a case quite similar to the instant dispute, the plaintiff sued for trademark infringement by the defendant, which moved to dismiss based on a contractual forum selection clause that required "all disputes arising out of this Agreement" to be decided in England. Id. at 601-02. Defendants asserted that the terms of the agreement between the parties served as a defense to the infringement claim, and the Seventh Circuit agreed that resolution of the dispute "depend[ed] on an understanding of the parties' written bargain and of its implied terms." Id. at 602. This, held the court, was sufficient to warrant application of the forum selection clause and

---

[5] Jungle Media is inapposite because that case addressed a tortious interference claim – involving other entities – that went beyond the scope of the parties' agreement. See Jungle Media, 2004 WL 834695 at *7. The instant action is distinguishable because: (i) West had a contractual right to use plaintiffs' names in the manner alleged in plaintiffs' Amended Complaint, and (ii) plaintiffs do not allege that West has done any affirmative wrongful act outside the scope of West's contractual rights. Instead, plaintiffs try to avoid the 2000 Agreement by ignoring the nature of the claims that they have pleaded.

More importantly, in Jungle Media the plaintiff argued – and the district court agreed – that the inconvenience of the contractually specified forum was so great as to effectively deprive plaintiff of the opportunity to bring his claims. Id. at *9. The court therefore refused to transfer the case "[d]espite the parties' private manifestation of their preference that litigation arising under the contract should take place in New York City." Id. Plaintiffs have not, and cannot, make such a showing of such severe deprivation in this matter.

770148_5

dismissal of the action, because "all disputes the resolution of which arguably depend on the construction of an agreement 'arise out of' that agreement."[6] Id. at 603.

The claims and defenses in this action are intimately bound up in the contractual relationship between the parties, and the dispute herein necessarily requires a court to determine the boundaries and terms of that relationship. It is plain that both Plaintiffs and West intended that the proper court to make such determinations would be one located in Minnesota.[7] Plaintiffs have offered no valid reason not to hold them to this contractual choice. The Amended Complaint should therefore be dismissed.

C.    The 2000 Agreement Has Other Clear And Unambiguous Provisions That Bar Plaintiffs' Claims

The 2000 Agreement has clear and unambiguous provisions that govern the parties' rights and cannot be ignored in examining Plaintiffs' current claims. Indeed, Plaintiffs' opposition brief virtually acknowledges that, if the 2000 Agreement is not superseded, their current claims, asserted in forgetfulness of the 2000 Agreement's existence, cannot be sustained.

Thus, all of Plaintiffs' causes of action should be dismissed for the reasons set forth in West's initial memorandum of law. Defs.' Mem. at 11-17. For example, Plaintiffs cannot assert a claim for common law name misappropriation under Pennsylvania Code § 8316(a), when the elements of that claim depend upon the lack of "written consent." See 42 P.A. C.S. § 8316. Here, in relevant part, the 2000 Agreement gave West the right to use Plaintiffs'

---

[6] In reaching this conclusion, the Seventh Circuit specifically rejected the contrary holding of Corcovado Music Corp. v. Hollis Music, Inc., 981 F.2d 679 (2d Cir. 1993), the primary authority upon which Phillips relied, see 494 F.3d at 391.

[7] In this regard, we also point out that, though not applicable, the 2007 Agreement also has the identical Minnesota venue provision, which makes it even more clear that the Plaintiffs knew, intended and agreed that Minnesota is where this dispute should be resolved.

770148_5

names in connection with the Work – **regardless of whether or not Plaintiffs participate in any upkeep**:[8]

> Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work. <u>If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit</u> **in addition to or in lieu of credit given to Authors**.

2000 Agmt., § 3(A)(2) (emphasis added). Plaintiffs also gave West the right to use their names and summaries of their backgrounds and qualifications in connection with advertising and promotion of the Work:

> Use, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications as part of the Work, including revisions and new editions, as Publisher sees fit, and generally in connection with the advertising and promotion of the Work, including revisions and new editions.

Id. § 7(4). In light of the terms of the 2000 Agreement, Plaintiffs' common law claims should be dismissed.

Moreover, to the extent that Plaintiffs' opposition focuses upon the supposed viability of their Lanham Act claims for false endorsement and false advertising (Pls.' Opp. at 21-23), those claims are also legally deficient and should be dismissed. With respect to false endorsement under the Lanham Act (Count II), Plaintiffs do not address the legal fact that consent to the use of one's name or likeness is a valid defense against false endorsement claims under the Lanham Act. See Mem. at 11-12 (citing Troyer v. Shrider, 2008 WL 4291450, at *4-5 (C.D. Cal. 2008); Marketing Prods. Mgmt., LLC v. HealthAndBeautyDirect.com, Inc., 333 F.

---

[8] The Court expressed skepticism that it could constitute permissible use of the Plaintiffs' name on a supplement they did not prepare. But the fact is, even if the replaced supplement contained all that Plaintiffs say is missing, still the overwhelming majority of it would be the contents of previous supplements that were authored by Plaintiffs. Thus, this is not a situation of placing the authors' names on something they had nothing to do with -- they were the authors of the vast majority of the content of the replaced supplement.

770148_5

Supp. 2d 418, 432-33 (D. Md. 2004); Cairns v. Franklin Mint, 107 F. Supp. 2d 1212 (C.D. Cal. 2000)).

With respect to false advertising under the Lanham Act (Count I), Plaintiffs fail to address, much less rebut, West's cited case law that Plaintiffs' allegations are not actionable as false advertising claims. See Defs.' Mem. at 15 (citing Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC, 467 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2006) (granting motion to dismiss because false authorship claims are not actionable as Lanham Act false advertising claims); Thomas Publ'g Co. v. Technology Evaluation Ctrs., Inc., 2007 WL 2193964, at *3 (S.D.N.Y. 2007) (same)).

Similarly, the 2000 Agreement gave West full editorial discretion over publication of the Work. Section 7 of the 2000 Agreement provides:

> 7. PUBLISHER'S DETERMINATIONS. Publisher has sole discretion in determining the acceptability of the Work. Publisher may edit, alter, and reorganize the Work as it deems appropriate.
>
> When accepted for publication:
>
> 1. Publisher will publish the Work at its own expense and in such formats or media as Publisher deems best suited to the sale of the Work.
>
> 2. Publisher may determine: the title of the Work, list price, applicable discounts, sales commissions, and all other matters pertaining to printing, publication, advertising, distribution, and sale of the Work.
>
> 3. Publisher has the right to change any printing, publication and distribution decisions at any time.
>
> * * *
>
> Publisher reserves the right not to publish the Work where changes in the law or market conditions no longer make the Work commercially viable."

2000 Agmt., § 7.

11

West understands that Plaintiffs have submitted evidence that the replaced supplement was, in their often-repeated word, a "sham."[9] West also recognizes that if, in fact, Plaintiffs are ultimately able to prove this allegation, West's publication of the replaced supplement may well have constituted a breach of above quoted sections of paragraph 7 of the 2000 Agreement. Finally, West recognizes that, as the Court indicated in its decision denying the preliminary injunction, that if the replaced supplement is really so bad that it actually resulted in damage to Plaintiffs' reputation, Plaintiffs could recover damages for loss of reputation.

However, and quite aside from the fact that Plaintiffs have not been able to show a scintilla of evidence that their reputations have been in any way harmed, Plaintiffs have not asserted a viable cause of action for breach of the 2000 Agreement. In short, if the Plaintiffs can prove as they claim and establish damages, they might well have a viable claim for breach of contract, but not for any of the tort or statutory claims currently being asserted.

## CONCLUSION

The record establishes that West has acted promptly and unilaterally to replace the publication about which Plaintiffs complain -- a publication that has 300 plus subscribers and generated approximately $16,000[10] in total revenues. See Pls.' Opp. at 4 n.2 and Hearing Tr. at 7:6-7 (annexed hereto as Ex. C). It is being maintained in a forum that is not the one in which Plaintiffs twice agreed to litigate all disputes, and pursued with aggression and hyperbole, but without any evidence of any actual or real damage. The Amended Complaint was filed at a time when Plaintiffs did not even remember the existence of the applicable 2000 Agreement. It is respectfully submitted that for any or all of the reasons set forth herein, either pursuant to Rule

---

[9] The fact that West did not choose to rebut Plaintiffs' testimony in this regard at the preliminary injunction hearing with live testimony and limited its opposition to the lack of irreparable harm, does not mean, as Plaintiffs contend, that West has conceded that the replaced supplement was a "sham". In fact, West did offer affidavit testimony to the contrary and will do so further as necessary and appropriate if this action continues. See Declaration of Jean Maess dated April 10, 2009 ("Maess Decl."), ¶¶ 19-26 (annexed hereto as Ex. B).

[10] This is an amount hardly worth the effort of a Berger law firm, especially in the face of West's refund offer. Hearing Tr. at 7:20-23 (Ex. C, hereto).

12

12 and/or Rule 56, this action should be dismissed without prejudice so it can be properly maintained in Minnesota.

Dated: May 6, 2009

Respectfully submitted,

_/s/ James F. Rittinger_

James F. Rittinger, Esquire (adm. *pro hac vice*)

Aaron M. Zeisler, Esq. (adm. *pro hac vice*)

SATTERLEE STEPHENS BURKE & BURKE LLP

230 Park Avenue

New York, NY 10169-0079

(212) 818-9200

Email: jrittinger@ssbb.com

azeisler@ssbb.com

_/s/ Matthew J. Borger_

Matthew J. Borger, Esquire

KLEHR, HARRISON, HARVEY, BRANZBURG
& ELLERS LLP

260 South Broad Street

Philadelphia, PA 19102-5003

(215) 568-6060

Email: mborger@klehr.com

*Attorney for the Defendants*

13