## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DAVID RUDOVSKY and <br> LEONARD SOSNOV, <br>            Plaintiffs, <br><br>      v. <br><br> WEST PUBLISHING CORPORATION, <br> WEST SERVICES INC., AND <br> THOMSON LEGAL AND REGULATORY <br> INC. t/a THOMSON WEST, <br>            Defendants. | :   CIVIL ACTION <br> : <br> : <br> :   NO. 09-CV-727 <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## ORDER

       AND NOW, this ___ day of _____, 2010, upon consideration of the Defendants'

Motion For Summary Judgment, the parties' submissions in support thereof and in opposition

thereto, the arguments and/or hearings thereon, and all prior pleadings and proceedings had

herein, IT IS HEREBY ORDERED that Defendants' Motion is GRANTED and that Plaintiffs'

Amended Complaint is DISMISSED WITH PREJUDICE.

_____
John P. Fullam, J.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID RUDOVSKY and
LEONARD SOSNOV,                      :     CIVIL ACTION
                                     :
                Plaintiffs,          :
                                     :     NO. 09-CV-727
        v.                           :
                                     :
WEST PUBLISHING CORPORATION,         :
WEST SERVICES INC., AND              :
THOMSON LEGAL AND REGULATORY         :
INC. t/a THOMSON WEST,               :
                                     :
                Defendants.          :

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SATTERLEE STEPHENS BURKE & BURKE LLP
James F. Rittinger, Esquire (adm. *pro hac vice*)
Aaron M. Zeisler, Esquire (adm. *pro hac vice*)
230 Park Avenue
New York, New York 10169
Tel: (212) 818-9200

KLEHR HARRISON HARVEY BRANZBURG LLP
Matthew J. Borger, Esq.
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Tel: (215) 568-6060

Dated:  April 21, 2010

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iv

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF UNDISPUTED FACTS .............................................................................. 3

SUMMARY JUDGMENT STANDARD ................................................................................. 8

ARGUMENT............................................................................................................................ 8

I.      DISCOVERY HAS NOW CONFIRMED THAT PLAINTIFFS' CLAIM
FOR DEFAMATION SHOULD BE DISMISSED........................................................ 8

      A.     The 2008-2009 Pocket Part Cover Page Is Not Defamatory *Per Se*,
and Thus, Plaintiffs' Defamation Claim Must Be Dismissed
Because Plaintiffs Have Not Suffered Any Special Damages............................... 9

      B.     Even If West's Statement About Plaintiffs' Co-Authorship of the
2008-2009 Pocket Part Was Defamatory *Per Se* – Which It Was
Not – Plaintiffs' Claim Also Fails Because It Is Undisputed That
Plaintiffs Suffered No General Damages ........................................................... 11

      C.     The Defamation Claim Should Also Be Dismissed Because
Plaintiffs Contractually Gave West the Right to List Plaintiffs as
Authors of the Treatise and Its Pocket Parts Regardless of Whether
or Not They Participated As Authors .................................................................. 13

            1.     Discovery has established that Plaintiffs signed the 2000
Agreement with West and are bound by its terms. .................................... 14

            2.     The parties' 2000 Agreement was not superceded by a
2007 Agreement as Plaintiffs tried to assert after being
confronted with the 2000 Agreement. ....................................................... 14

            3.     The parties' 2000 Agreement covers the 2008-2009 Pocket
Part at issue. ............................................................................................... 16

            4.     Because Plaintiffs consented to the use of their names in
connection with the Treatise and pocket parts, their
defamation claim should be dismissed. ..................................................... 17

      D.     Plaintiffs' Statement That the 2008-2009 Pocket Part Was "By
David Rudovsky and Leonard Sosnov" and "The Publisher's Staff"
Is True or Substantially True and Thus Not Actionable ...................................... 19

**TABLE OF CONTENTS**
(Continued)

Page

II.    PLAINTIFFS' CLAIMS FOR FALSE ADVERTISING AND FALSE
       ENDORSEMENT UNDER THE LANHAM ACT MUST BE
       DISMISSED ...............................................................................................20

       A.    The Supreme Court's Decision In *Dastar* Bars Plaintiffs' Lanham
             Act Claims ................................................................................................20

       B.    Plaintiffs' False Endorsement Claim Based Upon Authorship Is
             Not Actionable ..........................................................................................22

       C.    Plaintiffs Lack Standing Under the Lanham Act to Bring a False
             Advertising Claim ......................................................................................23

       D.    West Possessed the Express Contractual Right to Use Plaintiffs'
             Names In Connection With the 2008-2009 Pocket Part Regardless
             of Whether or Not Plaintiffs Were Involved With It ................................24

       E.    West Made No False Statement on the Cover of the 2008-2009
             Pocket Part Because It Is Undisputed that Plaintiffs Were
             Substantial Contributors to the Majority of Material Contained in
             the Pocket Part, and Thus, West's Statements Are Not Actionable
             Under the Lanham Act ...............................................................................25

III.   PLAINTIFFS' CLAIM UNDER PENNSYLVANIA CODE § 8316(a)
       MUST BE DISMISSED BECAUSE PLAINTIFFS GAVE WEST
       PERMISSION TO USE THEIR NAMES AND WEST, AS A GOOD
       FAITH PUBLISHER, IS STATUTORILY IMMUNE FROM LIABILITY
       UNDER THE STATUTE ........................................................................26

       A.    Plaintiffs' Section 8316 Claim Must Be Dismissed Because
             Plaintiffs Contractually Gave West the Right to Use Their Names ...........26

       B.    West Is Also Immune From Liability For Unauthorized Use of
             Plaintiffs' Names Pursuant to Section 8316(d) .......................................26

IV.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF
       WEST ON PLAINTIFFS' CLAIMS FOR INVASION OF PRIVACY ...........27

       A.    Plaintiffs' False Light Claims Must Be Dismissed Because It Has
             Now Been Established That Plaintiffs Suffered No Special or
             General Damages .......................................................................................27

       B.    Plaintiffs' Common Law Claims for Invasion of Privacy Are Also
             Deficient In Light of the Parties' 2000 Agreement .................................28

**TABLE OF CONTENTS**
(Continued)

| | | Page |
|---|---|---|
| C. | Plaintiffs' Common Law Claims for False Light Are Also Deficient Because West's Statement Attributing Partial Authorship to Plaintiffs Was True | 29 |
| V. | SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF WEST ON PLAINTIFFS' PUNITIVE DAMAGES REQUEST | 30 |
| VI. | SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF WEST ON PLAINTIFFS' ATTORNEY'S FEES CLAIM | 31 |
| CONCLUSION | | 32 |

801706_3

## TABLE OF AUTHORITIES

**Page**

**CASES**

Andela v. The American Ass'n for Cancer Research,
    No. 09-2487, 2009 WL 5213716 (E.D. Pa. 2009) ............................................22

Antidote Intern. Films, Inc. v. Bloomsbury Publ'g,
    467 F. Supp. 2d 394 (S.D.N.Y. 2006) .............................................................22

Baden Sports, Inc. v. Molten USA, Inc.,
    556 F.3d 1300 (Fed. Cir. 2009) .......................................................................21

Baker v. Lafayette College,
    504 A.2d 247 (Pa. Super. 1986) ................................................................18, 19

Berckeley Inv. Group, Ltd. v. Colkitt,
    455 F.3d 195 (3d Cir. 2006) ............................................................................15

Bobb v. Kraybill,
    354 Pa. Super. 361, 511 A.2d 1379 (Pa. Super. 1986) ...............................19, 20

Boring v. Google Inc.,
    No. 09-2350, 2010 WL 318281 (3d Cir. Pa. Jan. 28, 2010) ........................30, 31

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ..........................................................................................8

Choi v. Sohn,
    No. 01 Civ. 1782, 2004 WL 627060 (E.D. Pa. Mar. 1, 2004) .....................29, 30

Clemente v. Espinosa,
    749 F. Supp. 672 (E.D. Pa. 1990) .....................................................................9

Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.,
    165 F.3d 221 (3d Cir. 1998) ............................................................................23

Corabi v. Curtis Publ., Co.,
    441 Pa. 432, 273 A.2d 899 (1971) .....................................................................8

Cornell Companies, Inc. v. Borough of New Morgan,
    512 F. Supp. 2d 238 (E.D. Pa. 2007) .................................................................8

Curran v. Children's Serv. Ctr. of Wyoming County, Inc.,
    578 A.2d 8 (Pa. Super. 1990) ..........................................................................29

801706_3

**TABLE OF AUTHORITIES**
(Continued)

Page

Dastar Corp. v. Twentieth Century Fox Film Corp.,
    539 U.S. 23, 123 S. Ct. 2041 (2003) ..................................................2, 20, 21, 22, 23

Ditri v. Coldwell Banker Residential Affiliates, Inc.,
    954 F.2d 869 (3rd Cir. 1992) ..................................................................23, 25

Feld v. Merriam,
    485 A.2d 742 (Pa. 1984) ......................................................................30, 31

Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,
    952 F.2d 44 (3d Cir. 1991) .........................................................................32

Fogel v. Forbes,
    500 F. Supp. 1081 (E.D. Pa. 1980) .......................................................9, 28, 29

Gilbert v. Bionetics Corp.,
    No. 98-2668, 2000 WL 807015 (E.D. Pa. June 6, 2000) ..................................19

GlaxoSmithKline Consumer Healthcare, LP v. Merix Pharm. Corp.,
    197 Fed. Appx. 120 (3d Cir. 2006) ..............................................................25

Great American Ins. Co. v. Norwin School Dist.,
    544 F.3d 229 (3d Cir. 2008) .......................................................................14

Hall v. Harleysville Ins. Co.,
    943 F. Supp. 536 (E.D. Pa. 1996) ...............................................................31

Keeshan v. Home Depot, U.S.A., Inc.,
    No. 00-529, 2001 WL 310601 (E.D. Pa. Mar. 27, 2001) ..................................20

Kryeski v. Schott Glass Tech, Inc.,
    426 Pa. Super. 105, 626 A.2d 595 (1993) .....................................................12

Lin v. Rohm & Haas Co.,
    293 F. Supp. 2d 505 (E.D. Pa. 2003) ...........................................................29

Lujan v. National Wildlife Federation,
    497 U.S. 871 (1990)...........................................................................8, 27, 30

Marketing Prods. Mgmt., LLC v. HealthAndBeautyDirect.com, Inc.,
    333 F. Supp. 2d 418 (D. Md. 2004) ..........................................................24, 25

Mathews v. Hermann,
    No. 07-01318, 2008 WL 1914781 (E.D. Pa. Apr. 30, 2008)...............................31

v

### TABLE OF AUTHORITIES
#### (Continued)

**Page**

McCabe v. Village Voice, Inc.,
    550 F. Supp. 525 (E.D. Pa. 1982) ...........................................................................9, 10, 11

McFadden v. United States of America,
    2005 WL 1413196 (M.D. Pa. 2005) ...........................................................................29

McNulty v. Citadel Broad. Co.,
    58 Fed. Appx. 556 (3d Cir. 2003)...........................................................................11, 12

Option One Mortg. Corp. v. Fitzgerald,
    No. 3:07-cv-1877, 2009 WL 3380679 (M.D. Pa. Mar. 11, 2009) ......................................31

Pacitti v. Durr,
    310 Fed. Appx. 526, 2009 WL 325760 (3d Cir. Pa. 2009) .........................................19, 20

Parilla v. IAP Worldwide Serv., VI, Inc.,
    368 F.3d 269 (3d Cir. 2004) ...........................................................................15

Parker v. Viacom Intern., Inc.,
    605 F. Supp. 2d 659 (E.D. Pa. 2009) ...........................................................................23

Phillips v. Cricket Lighters,
    883 A.2d 439 (Pa. 2005) ...........................................................................31

Pierce v. Capital Cities Comm., Inc.,
    576 F.2d 495 (3d Cir. 1978) ...........................................................................19

Pyle v. Meritor Savings Bank,
    No. 92-7361, 1996 WL 115048 (E.D. Pa. Mar. 13, 1996) ......................................2, 11, 12

SNA, Inc. v. Array,
    51 F. Supp. 2d 554 (E.D. Pa. 1999) ...........................................................................13

Schiffer Publ'g, Ltd. v. Chronicle Books, LLC,
    350 F. Supp. 2d 613 (E.D. Pa. 2004) ...........................................................................22

Scott-Taylor, Inc. v. Stokes,
    425 Pa. 426, 229 A.2d 733 (1967) ...........................................................................12

Sentry Paint Techs., Inc. v. Topth, Inc.,
    No. 08 Civ. 1064, WL 4787579 (E.D. Pa. Oct. 21, 2008)...........................................14

**TABLE OF AUTHORITIES**
(Continued)

**Page**

Sharman v. C. Schmidt & Sons, Inc.,
   216 F. Supp. 401 (E.D. Pa. 1963) .......................................................... 18, 19, 28

Sobel v. Wingard,
   531 A.2d 520 (Pa. Super. 1987) ...................................................................... 18

Standard Terry Mills, Inc. v. Shen Mfg. Co.,
   803 F.2d 778 (3d Cir. 1986) ............................................................................ 32

Synygy, Inc. v. Scott-Levin, Inc.,
   51 F. Supp. 2d 570 (E.D. Pa. 1999) ...................................... 2, 9, 10, 11, 13

Thomas Publ'g Co. v. Technology Evaluation Ctrs., Inc.,
   2007 WL 2193964 (S.D.N.Y. Jul. 27, 2007) .................................................. 22

Tillery v. Leonard & Sciolla, LLP,
   437 F. Supp. 2d 312 (E.D. Pa. 2006) .............................................................. 26

Trizechahn Gateway LLC v. Titus,
   601 Pa. 637, 976 A.2d 474 (Pa. 2009) ............................................................ 31

Troyer v. Shrider,
   2008 WL 4291450 (C.D. Cal. Jul. 31, 2008) .................................................. 24

Tucker v. Fischbein,
   237 F.3d 275 (3d Cir. 2001) ............................................................................ 19

Walker v. Grand Cent. Sanitation, Inc.,
   430 Pa. Super. 236, 634 A.2d 237 (1993) ...................................................... 12

**STATUTES AND RULES**

15 U.S.C. § 43(a) ........................................................................................ 20, 21

15 U.S.C. § 1117(a) ............................................................................................ 31

15 U.S.C. § 1125(a)(1)(A) .................................................................................. 22

42 U.S.C. § 1988 ................................................................................................. 31

42 Pa. Const. Stat. § 8316 ..................................................................... 2, 26, 27, 31

42 Pa. Const. Stat. § 8343(a) ............................................................................... 9

**TABLE OF AUTHORITIES**
(Continued)

Page

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 13

Fed. R. Civ. P. 56(c) ............................................................................... 8, 27, 30, 32

**MISCELLANEOUS**

Am. Jur. Privacy § 92 (2009)....................................................................................29

Restatement (Second) of Torts § 652E (1977) ..........................................................29

Robert D. Sack, Sack on Defamation § 2.8.3 (April 2009) .......................................10

S. Rep. No. 1400, 93d Cong., 2d Sess. 2 (1974),
       reprinted in 1974 U.S.C.C.A.N. 7132...............................................................32

Summary of Pa. Jur. 2d Torts § 22:19 ......................................................................28

801706_3

Defendants West Publishing Corporation, West Services Inc., and Thomson Reuters (Legal) Inc. (formerly known as Thomson Legal and Regulatory Inc.) d/b/a Thomson West (together "West") submit this memorandum of law in support of their motion seeking summary judgment on the claims of plaintiffs David Rudovsky and Leonard Sosnov as set forth in their Amended Complaint, dated March 24, 2009 ("Am. Compl."). West's motion is supported by the accompanying declarations of Jean Maess, dated April 14, 2010 ("Maess Apr. 14, 2010 Decl.") and Aaron M. Zeisler, dated April 20, 2010, with exhibits thereto ("Zeisler Decl.").

## PRELIMINARY STATEMENT

Discovery has now confirmed that West should be granted judgment in its favor on all of Plaintiffs' claims. As the Court will recall, Plaintiffs alleged that they were damaged by West in December 2008 when West published a pocket part to update "West's Pennsylvania Practice Series, Criminal Procedure" pursuant to a written publishing agreement dated August 22, 2000 (the "2000 Agreement") because the pocket part was supposedly a poor quality "sham" and that, by listing Plaintiffs as authors along with West's "Publishing Staff" on the cover of the pocket part, West had allegedly damaged Plaintiffs' reputations.

Yet, Plaintiffs' defamation claim should now be dismissed as a matter of law and undisputed fact. Putting aside West's defense that West made no actionable false statement of fact about the December 2008 pocket part (since listing Plaintiffs along with West's Publishing Staff as authors of the pocket part was substantially true given that the majority of the writing contained in the 2008 pocket part was Plaintiffs' work), Plaintiffs have suffered no damages as a result of West's publication of the 2008 pocket part. Indeed, discovery has now established that: (i) no one has told Plaintiffs that they thought less of Plaintiffs due to the pocket part; (ii) Plaintiffs are not aware of anyone who thought less of them due to the pocket part; (iii) Plaintiffs have not lost any income or any professional opportunities, or suffered any economic damages, as a result of the pocket part; and (iv) West has received no complaints about the 2008 pocket part or its April 2009 replacement. Moreover, Plaintiffs have stipulated that they suffered no

actual damages and that they are not calling any witnesses at trial who will say that Plaintiffs' reputations were damaged in their eyes.

Despite the foregoing evidence, Plaintiffs insist that damages to professional reputation are to be "presumed." However, this is not the law of defamation in Pennsylvania since courts here no longer permit defamation plaintiffs to rely on presumed damages. Even in cases of libel *per se* (which is inapplicable here because Plaintiffs do not allege that West accused them of any "business misconduct" as defined by relevant case law), a plaintiff cannot rely on presumed damages but must prove "general damage, i.e., proof of reputational harm." Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 581 (E.D. Pa. 1999). Additionally, Pennsylvania law provides that any damages sustained from an injury to reputation is to be "judged by the reaction of other persons in the community, and not by the party's self-estimation." Pyle v. Meritor Savings Bank, No. 92-7361, 1996 WL 115048, at *3 (E.D. Pa. Mar. 13, 1996). Here, given that Plaintiffs have suffered no economic damages and no general damages (loss to reputation in the community's eyes or emotional distress), West must be granted summary judgment on Plaintiffs' defamation claim (Count IV).

Judgment should also be granted in favor of West on Plaintiffs' five remaining causes of action. Plaintiffs' two Lanham Act claims for false advertising and false endorsement (Counts I and II) must be dismissed because, among other reasons: (i) claims involving communicative works such as books are not actionable under the Lanham Act as per the Supreme Court's decision in Dastar; (ii) Plaintiffs' false endorsement claim based upon authorship is not actionable; (iii) Plaintiffs lack standing under the Lanham Act to bring a false advertising claim; and (iv) West possessed the express contractual right to use Plaintiffs' names in connection with the pocket part and its advertising regardless of whether or not Plaintiffs were involved with it, and thus there was no false advertising or false endorsement. Plaintiffs' claim for wrongful use of their names under Pennsylvania Code § 8316(a) (Count III) is deficient because the statute contains express immunity for publishers who use names under a belief of authorization, and here, West had used Plaintiffs' names on pocket parts for the past decade

2

pursuant to the parties' 2000 Agreement, and at a minimum, believed it had authorization. Finally, Plaintiffs' two claims for common law invasion of privacy in the form of name misappropriation and false light (Counts V and VI) should be dismissed because, among other things: (i) West possessed the express contractual right to use their names on any upkeep of the work, including pocket parts, even if Plaintiffs were not involved, and (ii) despite West's contractual rights, Plaintiffs' claims cannot survive where Plaintiffs suffered no actual damages. For all of these reasons and those set forth herein, West's summary judgment motion should be granted.

## STATEMENT OF UNDISPUTED FACTS

West is a publisher that is engaged in the business of publishing legal case books, treatises, practice guides and other materials, both in book form and in various computerized formats, including a database known as "Westlaw." Am. Compl. ¶ 6; Maess Apr. 14, 2010 Decl., ¶ 1. Plaintiffs David Rudovsky ("Rudovsky") and Leonard Sosnov ("Sosnov") are law professors who have had distinguished careers in the law. Am. Compl. ¶¶ 1-2.

On August 22, 2000, West and Plaintiffs executed the 2000 Agreement for the publication of a second edition of the Treatise at issue, "West's Pennsylvania Practice Series, Criminal Procedure: Law Commentary and Forms." Maess Apr. 10, 2009 Decl., ¶ 3 (Zeisler Decl., Ex. F); Sosnov Tr. at 74:12-22; 75:19-21 (Zeisler Decl., Ex. G); the April 14 Preliminary Injunction Hearing Transcript ("Prelim. Inj. Hearing Tr.") at 39:22– 40:16 (Zeisler Decl., Ex. H).

### 1. The 2000 Agreement

Plaintiffs had opposed West's motion to dismiss by arguing, among other things, that the 2000 Agreement was not applicable because Plaintiffs perhaps did not sign a 2000 Agreement and had no idea who West Group was. However, it has now been established that Plaintiffs knew that they signed the 2000 Agreement with West Group – and had simply "forgotten" about that Agreement and had neglected to mention it in their initial Complaint. See Prelim. Inj. Hearing Tr. at 38:14 – 39:3 (Zeisler Decl., Ex. H). Mr. Sosnov also testified that he

signed the 2000 Agreement with West Group and that he understood that West Group was the publisher (Sosnov Tr. at 74:12-22; 75:19-21, Zeisler Decl., Ex. G), and Mr. Rudovsky similarly testified that he entered into the 2000 Agreement with West and that he understood it governed the Treatise and annual upkeep. Prelim. Inj. Hearing Tr. at 39:22 – 40:16.

The 2000 Agreement defines "Work" as the Treatise at issue in the case, and it also includes as part of its definition of "Work" all future pocket parts and other upkeep. See 2000 Agmt. § 1, § 2(B) (Zeisler Decl. Ex. C). The 2000 Agreement also expressly provides that all references to the "Work" in this Agreement "also apply to such upkeep as well as to the original Work." Id., § 2(B). In addition, the 2000 Agreement provides that West has the right to use Authors' names in connection with the Work and upkeep of the Work, and in advertising and promotion, even if Plaintiffs did not participate in its upkeep. Id., § 3(A)(2); § 7(4). West was also permitted to use another author and "give him or her authorship credit in addition to or in lieu of credit given to Authors." Id., § 3(A)(2). Under the 2000 Agreement, Plaintiffs were required to deliver the first update of the Work to West in 11 months, and Plaintiffs agreed that "subsequent upkeep will be due annually thereafter." Id., § 2(B)(1).

### 2. **The Use of West's Publisher's Staff**

The Plaintiffs prepared annual pocket parts to update the material each year after 2001, except of course, when Plaintiffs declined to prepare the 2008 pocket part and West had to use other authors. Maess Apr. 10, 2009 Decl. ¶¶ 6-8 (Zeisler Decl., Ex. F); Am. Compl. ¶¶ 11, 18. West had offered Plaintiffs $2,500 each to prepare the 2008-2009 Pocket Part, which they refused. Sosnov Tr. at 132:7-24 (Zeisler Decl., Ex. G). West offered this amount to Plaintiffs because the declining revenues from the Treatise could not justify paying Plaintiffs the $5,000 per person that they sought. Karen Early Tr. at 41:10-42:4 (Zeisler Decl., Ex. J). The Treatise had earned only $17,000 in gross revenues the prior year. Id. The Treatise only had 453 paying and 27 complimentary subscribers as of 12/31/2007, 390 paying and 28 complimentary subscribers as of 12/31/2008 and approximately 350 paying and 22 complimentary subscribers as of 12/31/2009. West's Suppl. Resp. to Interrogatories, No. 10 (Zeisler Decl., Ex. K).

4

### 3. The Alleged Defamatory Statement

Plaintiffs assert that West made a false statement of fact that defamed them when West published the cover page to the 2008-2009 Pocket Part which provides that it was "by David Rudovsky and Leonard Sosnov" and "The Publisher's Staff." Am. Compl. ¶ 37 & Ex. A. At deposition, however, Mr. Sosnov testified that he could not identify anyone who thought less of him as a result of the 2008-2009 Pocket Part, and Mr. Rudovsky testified that he had received no such complaints. See Sosnov Tr. at 6:12-18; 7:16-22; Prelim. Inj. Hearing Tr. at 49:15-22 (Zeisler Decl., Exhs. G and H, respectively). Mr. Frenkel, who also testified at the preliminary injunction hearing, testified that he knew of no one who complained about the 2008-2009 Pocket Part. See Prelim. Inj. Hearing Tr. at 7:14-21 (Zeisler Decl., Ex. H).

Plaintiffs suffered no competitive harm – such as specific lost business opportunities – as a result of West's publication of the 2008-2009 Pocket Part. See Plaintiffs' Interrogatory Responses ¶ 7 and Sosnov Tr. 6:12-7:19; 8:19-10:12; 121:24-123:21 (Zeisler Decl., Exhs E & G). Plaintiffs also testified that they suffered no emotional distress or similar damages. See Sosnov Tr. 6:12-15, 7:16-19 (Zeisler Decl., Ex. G); Prelim. Inj. Hearing Tr. at 24:16-20 (Zeisler Decl., Ex. H); Plaintiffs' Interrogatory Responses ¶ 7 (Zeisler Decl., Ex. E). Even the Court questioned Mr. Rudovsky as to his potential emotional distress damages, and yet he testified that he suffered no such damages:

> THE COURT:  Would you agree then that you suffered emotional distress as a result of this whole thing?
>
> THE WITNESS:  I -- distress, I -- I would say -- I -- I won't characterize it as emotional distress, Judge, at -- at this point.

Prelim. Inj. Hearing Tr. at 24:16-20 (Zeisler Decl., Ex. H).

Plaintiffs assert that they have suffered $75,000 each in reputational damages, but they point to no evidence substantiating how this sum was determined. See Sosnov Tr. 196:12-196:15 (Zeisler Decl., Ex. G). Plaintiffs' counsel stipulated that "there will be no specific claim made with respect to any lost opportunity, revenue as a result of lost opportunity, lost jobs, lost

5

teaching assignments, anything like that, there will be no specific evidence offered in that regard, however, [Plaintiffs] will be making a claim for presumed injury to reputation . . .." <u>See</u> stipulation of the parties regarding damages (Sosnov Tr. at 123:5-21, Zeisler Decl., Ex. G). Moreover, Plaintiffs' counsel agreed that no witnesses will be called to testify as to Plaintiffs' loss of reputation – only that Plaintiffs enjoy good reputations. <u>Id.</u> at 182:20 – 186:15.

### 4.   The 2008-2009 Pocket Part as a Cumulative Supplement

Plaintiffs allege that they did not author the 2008-2009 Pocket Part. Am. Compl. ¶ 37. But, Plaintiffs have consistently asserted that virtually all of the content in the 2008-2009 Pocket Part was work that they authored. <u>See</u> Am. Compl. ¶ 24; Rudovsky Mar. 23, 2009 Decl. ¶ 13.  At deposition, Mr. Sosnov admitted that the Plaintiffs were the authors of "the overwhelming majority of the content" contained in the 2008-2009 Pocket Part. Sosnov Tr. at 212:4-11 (Zeisler Decl., Ex. G).

Plaintiffs also assert that "[t]he '2008-2009 Pocket Part' is not a 'pocket part' for 2008-2009." Am. Compl., ¶ 38. Yet, the 2008-2009 Pocket Part is, on its face and in substance, a pocket part. West made no representations to its subscribers about the definition of a "pocket part." Maess Apr. 10, 2009 Decl. ¶ 11 (Zeisler Decl., Ex. F). The 2008-2009 Pocket Part also contains a prominent disclaimer on its inside cover:

> This publication was created to provide you with accurate and
> authoritative information concerning the subject matter covered;
> however, this publication was not necessarily prepared by persons
> licensed to practice law in a particular jurisdiction. The publisher
> is not engaged in rendering legal or other professional advice and
> this publication is not a substitute for the advice of an attorney. If
> you require legal or other expert advice, you should seek the
> services of a competent attorney or other professional.

<u>Id.</u> ¶ 11 & Ex. E annexed thereto.

### 5.   Reaction to the 2008-2009 Pocket Part and the April 2009 replacement pocket part

By letter dated February 3, 2009 from their counsel, Plaintiffs complained to West about the sufficiency and quality of the 2008-2009 Pocket Part. <u>See</u> Am. Compl., Ex. B.

Plaintiffs did not reach out to West to raise any issues that Plaintiffs had with the 2008-2009 Pocket Part prior to sending their litigation letter; instead, they had engaged counsel to write the February 3, 2009 demand letter to West because, in Mr. Sosnov's judgment, "a lawyer's letter would have better impact than calling up [West who Plaintiffs] had a 20 year experience of publishing with." Sosnov Tr. at 45:23-46:2 (Zeisler Decl., Ex. G).

In response to Plaintiffs' concerns, and after reviewing the 2008-2009 Pocket Part, West sent a letter dated March 2009 to all of its Treatise subscribers, informing them:

(i) plaintiffs had no involvement with the 2008-2009 pocket part;

(ii) plaintiffs "have discontinued their involvement in the publication;"

(iii) the "2008-2009 pocket part does not reflect all changes in the law that have occurred since the prior year's update" and "should be checked for later developments;"

(iv) West is "in the process of preparing a new 2009 pocket part which will be shipped to you free of charge;"

(v) if the subscriber is not satisfied, he or she may receive a credit for the 2008-2009 pocket part; and

(vi) "Westlaw will also reflect that the database is current through 2007-2008 pocket edition, pending further supplementation."

Maess Apr. 10, 2009 Decl. ¶ 14 & Ex. F thereto (Zeisler Decl., Ex. F).

West replaced the allegedly offensive 2008-2009 Pocket Part with a new pocket part in April 2009. Maess April 14, 2010 Decl., ¶ 5. Although not required to do so, the April 2009 pocket part states on its cover that it was: "Prepared By Publisher's Editorial Staff" and that "(David Rudovsky and Leonard Sosnov prepared the main volume and supplements issued prior to the 2008-2009 pocket part)." Id. ¶ 15.

In April 2010, West again searched its records to determine whether there had been any complaints from its customers concerning the sufficiency and quality of the 2008-2009 Pocket Part or the replacement April 2009 pocket part. Maess Apr. 14, 2010 Decl. ¶ 6. West received no complaints from any customers concerning the sufficiency and quality of either the 2008-2009 Pocket Part or the April 2009 Pocket Part. Id. ¶¶ 3, 6.

7

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact, it is not required to support the motion with affidavits or other materials that negate the opponent's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party has satisfied its initial burden, Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions, on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); see also Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990) (the non-moving party must bring forth "specific facts" to support its Complaint and cannot rely on conclusory allegations at the summary judgment stage). Here, based upon the submitted declarations, deposition testimony and stipulations, the Court will see that there is no genuine issue of material fact for trial and that summary judgment should be granted in favor of West.

## ARGUMENT

I.    **DISCOVERY HAS NOW CONFIRMED THAT PLAINTIFFS' CLAIM FOR DEFAMATION SHOULD BE DISMISSED**

It is for the court to determine whether the statement at issue is capable of a defamatory meaning. Cornell Companies, Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 271 (E.D. Pa. 2007); Corabi v. Curtis Publ., Co., 441 Pa. 432, 273 A.2d 899 (1971). West continues to believe that it is entitled to summary judgment on the grounds that the allegedly defamatory statement (i.e., that the 2008-2009 Pocket Part is "by Rudovsky and Sosnov and The

8

Publisher's Staff") is not defamatory *per se* and is substantially true. See Points I.A & I.D, infra.

However, even assuming, *arguendo*, that the statement is defamatory *per se*, Plaintiffs' claim

still fails because it is now undisputed that: (i) Plaintiffs have suffered no general damages; and

(ii) Plaintiffs executed a 2000 Agreement with West in which Plaintiffs expressly gave West the

right to list Plaintiffs as authors of the Treatise or its pocket parts regardless of whether or not

Plaintiffs participated as authors. See Points I.B and I.C, infra.

A. **The 2008-2009 Pocket Part Cover Page Is Not Defamatory *Per Se*, and Thus, Plaintiffs' Defamation Claim Must Be Dismissed Because Plaintiffs Have Not Suffered Any Special Damages**

West should be granted summary judgment in its favor even if the Court

determines that West's statements were capable of defamatory meaning because the complained

of statement about Plaintiffs' and West's co-authorship was not defamatory *per se*, and discovery

has now established that Plaintiffs suffered no special damages. By statute in Pennsylvania:

> In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised: (1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff. (6) *Special harm resulting to the plaintiff from its publication.* (7) Abuse of a conditionally privileged occasion.

42 Pa. Const. Stat. § 8343(a) (emphasis added); see also McCabe v. Village Voice, Inc., 550 F.

Supp. 525, 528-529 (E.D. Pa. 1982) ("Pennsylvania law requires that in a defamation action

where the defamation is not actionable *per se*, the plaintiff has the burden of pleading and

proving special damages."); Fogel v. Forbes, 500 F. Supp. 1081 (E.D. Pa. 1980) (same).[1]

The special harm element is only eliminated where the words constitute

defamation *per se*, and defamation *per se* arises only by "'words imputing (1) criminal offense,

(2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct.'" Synygy, Inc.

v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999) (quoting Clemente v. Espinosa, 749

---

[1] As is demonstrated in Point I.B, infra, even in cases of libel *per se*, a plaintiff cannot rely upon presumed damages but must prove general damages (a loss to reputation), which Plaintiffs have no evidence of here.

F. Supp. 672, 677 (E.D. Pa. 1990)).[2] Here, Plaintiffs assert in the Amended Complaint that West "harmed their personal and professional reputations" (Am. Compl. ¶ 93); however, with respect to business misconduct, the Synygy court explained that a party must claim more than general disparagement:

> A statement is defamatory *per se* as an accusation of business misconduct if it "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business." The statement must be more than mere *general disparagement*. It must be of the type that would be particularly harmful to an individual engaged in the plaintiff's business or profession.

Synygy, 51 F. Supp. 2d at 580 (quoting Restatement (Second) of Torts § 573 (1977)). Moreover, a statement only constitutes libel *per se* when its defamatory meaning is apparent on its face; if extrinsic facts are required to understand the libel, it is not *per se* defamatory. See Robert D. Sack, SACK ON DEFAMATION § 2.8.3 (April 2009).

Here, Plaintiffs' defamation claim should fail as defamation *per se* because the allegedly defamatory communication – that the 2008-2009 Pocket Part was co-authored by Plaintiffs and West's Publisher's Staff – does not impute any business misconduct to Plaintiffs on its face. See Am. Compl., Ex. A. In addition, the statement itself does not ascribe conduct to Plaintiffs that makes them unfit to practice law. Synygy, 51 F. Supp. 2d at 580. Thus, Plaintiffs' defamation claim does not qualify as libel *per se*, and accordingly, Plaintiffs must demonstrate special harm.

"Special harm requires proof of a specific monetary or out-of-pocket loss as a result of the defamation." Synygy, 51 F. Supp. 2d at 580. Indeed, special harm "means actual and concrete damages; damages capable of being estimated in money, . . . established by specific instances, such as actual loss due to withdrawal of trade of particular customers . . . And the statement of claim must allege such damages with certainty and particularity." McCabe, 550 F. Supp. at 529 n. 8. Yet, the Plaintiffs here cannot point to any evidence demonstrating specific

---

[2] "Whether the words allegedly used by a defendant were defamatory *per se* is also a question for the court." Synygy, 51 F. Supp. 2d at 580 (citing Fox v. Kahn, 421 Pa. 563, 221 A.2d 181 (1966)).

monetary or out-of-pocket loss that resulted from West's publication.  <u>See</u> Sosnov Tr. at 6:12-7:19; 8:19-10:12; 121:24-123:21 (Zeisler Decl., Ex. G) (stating that Plaintiffs did not suffer any specific or general lost income related to their claims and that there will be no specific claim made with respect to lost opportunity, lost jobs, or lost teaching assignments, but instead, that their claim will be for presumed injury to reputation) & Pls.' Interrogatory Responses, ¶ 7 (Zeisler Decl. as Ex. E).   Accordingly, West's motion for summary judgment on Plaintiffs' defamation claim should be granted. <u>McCabe</u>, 550 F. Supp. at 529-530.

    **B.**    **Even If West's Statement About Plaintiffs' Co-Authorship of the 2008-2009 Pocket Part Was Defamatory _Per Se_ – Which It Was Not – Plaintiffs' Claim Also Fails Because It Is <u>Undisputed That Plaintiffs Suffered No General Damages</u>**

        Plaintiffs assert that West made a false statement of fact that defamed them when West published the 2008-2009 Pocket Part, and more specifically, the title page which provides that it was "by David Rudovsky and Leonard Sosnov" and "The Publisher's Staff."  Am. Compl. ¶ 37 & Ex. A.  However, Plaintiffs' defamation claim must fail because they cannot establish any general damages, a _sine qua non_ of defamation _per se_ claims under Pennsylvania law.  Although Rudovsky and Sosnov insist that damages to their professional reputations are to be "presumed,"[3] this is not the law of defamation in Pennsylvania even in _per se_ cases since courts here no longer permit defamation plaintiffs to rely on presumed damages.

        In cases of defamation _per se_, a plaintiff cannot rely on presumed damages but must prove "general damage, i.e., <u>proof of reputational harm</u>."  <u>Synygy</u>, 51 F. Supp. 2d at 581 (emphasis added); <u>see also</u> <u>McNulty v. Citadel Broad. Co.</u>, 58 Fed. Appx. 556, 567 (3d Cir. 2003) (unpublished) ("even with defamation _per se_, the plaintiff must prove 'general damages'"); <u>Pyle v. Meritor Savings Bank</u>, No. 92-7361, 1996 WL 115048, at *3 (E.D. Pa. Mar.

---

      [3]  Plaintiffs' counsel stipulated that "there will be no specific claim made with respect to any lost opportunity, revenue as a result of lost opportunity, lost jobs, lost teaching assignments, anything like that, there will be no specific evidence offered in that regard, however, [Plaintiffs] will be making a claim for presumed injury to reputation...."  <u>See</u> the parties' stipulation regarding damages (Sosnov Tr. at 123:5-21, Zeisler Decl., Ex. G).  Moreover, Plaintiffs' counsel agreed that no witnesses will be called to testify as to Plaintiffs' loss of reputation – only that Plaintiffs enjoy good reputations. <u>Id.</u> at 182:20 - 186:15.

13, 1996) ("In a defamation *per se* case, a plaintiff must prove general damages from a defamatory publication and cannot rely upon presumed damages."); Walker v. Grand Cent. Sanitation, Inc., 430 Pa. Super. 236, 634 A.2d 237, 242 (1993) (holding that plaintiffs in *per se* cases prove "damage to reputation" and may not rely upon presumed damages).

Moreover, Pennsylvania law provides that any damages sustained from an injury to reputation must be "judged by the reaction of other persons in the community, and not by the party's self-estimation." Pyle, 1996 WL 115048, at *3. "It is not enough that the victim of the 'slings and arrows of outrageous fortune' be embarrassed or annoyed, he must have suffered that kind of harm which has grievously fractured his standing in the community of respectable society." Scott-Taylor, Inc. v. Stokes, 425 Pa. 426, 428, 229 A.2d 733, 734 (1967); see also Kryeski v. Schott Glass Tech, Inc., 426 Pa. Super 105, 116, 626 A.2d 595, 601 (1993) (statements which are "merely annoying or embarrassing" are not actionable).

The McNulty case is instructive as to reputational damages. There, the plaintiff broadcaster appealed from the district court's order granting summary judgment to the defendant radio station on plaintiff's defamation claim which was premised upon statements of alleged business misconduct. 58 Fed. Appx. at 567. In his opposition to defendant's motion, the plaintiff proffered several affidavits from industry professionals attesting generally that statements such as those allegedly made by defendant (statements about his age and ability to appeal to a younger audience) were the "kiss of death" in the plaintiff's industry. Id. The Third Circuit, however, affirmed the dismissal of plaintiff's defamation claim, finding that plaintiff had not proven "that his reputation was actually affected" or "damaged in anyone's eyes" even if the Court assumed that defendant's statements were defamatory *per se.* Id.

Here, discovery has now established that Plaintiffs can proffer no proof of reputational harm. At deposition, Mr. Sosnov testified that he could not identify anyone who thought less of him as a result of the 2008-2009 Pocket Part, and Mr. Rudovsky testified that he had received no such complaints. See Sosnov Tr. at 6:12-18; 7:16-22; Prelim. Inj. Hearing Tr. at 49:15-22 (Zeisler Decl., Exhs. G and H, respectively). Indeed, Plaintiffs' counsel has stipulated

12

that no witnesses will be brought in at trial to testify as to Plaintiffs' loss of reputation – only that

Plaintiffs enjoy good reputations.   Sosnov Tr. at 182:20 – 186:15 (Zeisler Decl., Ex. G).

Moreover, although Plaintiffs were apparently angry about the publication of the 2008-2009

Pocket Part, the record demonstrates that Plaintiffs suffered no emotional distress or similar

damages.  See Sosnov Tr. 6:12-15, 7:16-19 (Zeisler Decl., Ex. G); Prelim. Inj. Hearing Tr. at

24:16-20 (Zeisler Decl., Ex. H); Pls.' Interrogatory Responses ¶ 7 (Zeisler Decl., Ex. E).

Plaintiffs simply assert that they have suffered $75,000 each in reputational damages, even

though they can point to no evidence substantiating how this sum was determined.  See Sosnov

Tr. 196:12-196:15 (Zeisler Decl., Ex. G).

Based upon these undisputed facts, summary judgment should be granted in favor

of West because Plaintiffs cannot prove that their reputations were "actually damaged in

anyone's eyes."  See McNulty, 58 Fed. Appx. at 567; see also Synygy, 51 F. Supp. 2d at 582

(granting summary judgment to defendants because, even assuming that defendants' statements

were defamatory per se, plaintiff produced no evidence of general damages); SNA, Inc. v. Array,

51 F. Supp. 2d 554, 565 (E.D. Pa. 1999) (granting judgment to defendant on defamation per se

claim where plaintiff came forth with no credible evidence of reputational damage arising from

the allegedly defamatory statements).

**C.     The Defamation Claim Should Also Be Dismissed Because
         Plaintiffs Contractually Gave West the Right to List Plaintiffs
         as Authors of the Treatise and Its Pocket Parts Regardless of
         Whether or Not They Participated As Authors**

Although the Court denied West's motion to dismiss, the Court made it clear that

it was only doing so because the Court believed that the contract issues raised by West could not

be resolved on a motion to dismiss.  See Dkt. No. 47 (Order, p. 3).   Specifically, the Court held:

> Since all of the allegations of the complaint must be accepted as true at
> this stage, I am persuaded that this litigation does not arise under any of
> the contracts.  It may be that some of plaintiffs' claims can be defeated by
> invoking the language of one or more of the earlier contracts, but that
> issue may not be resolved under Fed. R. Civ. P. 12(b)(6).

Id.

Now, on summary judgment, West believes that the Court must find that the 2000 Agreement bars Plaintiffs' claims.

**1.     Discovery has established that Plaintiffs signed the 2000 Agreement with West and are bound by its terms.**

The applicability of the parties' 2000 Agreement to Plaintiffs' action is a question of law for this Court to decide. <u>Great American Ins. Co. v. Norwin School Dist.</u>, 544 F.3d 229, 243 (3d Cir. 2008); <u>Sentry Paint Techs., Inc. v. Topth, Inc.</u>, No. 08 Civ. 1064, WL 4787579, at *7-8 (E.D. Pa. Oct. 21, 2008). Although Plaintiffs opposed West's motion to dismiss by arguing, among other things, that the 2000 Agreement was not applicable because Plaintiffs perhaps did not sign a 2000 Agreement and had no idea who West Group was, it has now been established that Plaintiffs knew that they signed the 2000 Agreement with West Group – and had simply "forgotten" about that Agreement and had neglected to mention it in their initial Complaint. <u>See</u> Prelim. Inj. Hearing Tr. at 38:14 – 39:3 (Zeisler Decl., Ex. H). Mr. Sosnov subsequently testified that he signed the 2000 Agreement with West Group and that he understood that West Group was the publisher (Sosnov Tr. at 74:12-22; 75:19-21, Zeisler Decl., Ex. G), and Mr. Rudovsky similarly testified that he entered into the 2000 Agreement with West and that he understood it governed the Treatise and annual upkeep.   Prelim. Inj. Hearing Tr. at 39:22 – 40:16. Accordingly, Plaintiffs are bound by the 2000 Agreement. (Zeisler Decl., Ex. C).

**2.     The parties' 2000 Agreement was not superceded by a 2007 Agreement as Plaintiffs tried to assert after being confronted with the 2000 Agreement.**

To the extent that Plaintiffs attempt to argue that the parties' 2000 Agreement was superceded by a 2007 Agreement, that argument must be rejected.   First, Plaintiffs have acknowledged that the 2007 Agreement was "a <u>stand-alone agreement</u>" for the 2007 supplement and "<u>govern[ed] only that particular pocket part.</u>" <u>See</u> Rudovsky's March 23, 2009 Decl., ¶ 7 (Zeisler Decl., Ex. I); <u>see also</u> Prelim. Inj. Hearing Tr. at 46:17-25 & 53:1-7 (Zeisler Decl., Ex. H (Rudovsky conceded that the 2007 Agreement was a "stand-alone agreement" that only governed preparation of the 2007-2008 pocket part). Indeed, in a prior legal brief Plaintiffs stated:

14

> The June 2007 Agreement, which contained a Minnesota forum selection clause <u>is a stand-alone agreement</u> that pertains <u>only to the 2007-08 Pocket Part, and does not address in any way the parties' rights</u>, including the right to use plaintiffs' names, concerning any other editions of the Treatise <u>or any new pocket parts, such as the "2008-09 Pocket Part."</u>

<u>See</u> Dkt. No. 4 (Pls.' Mar. 24, 2009 Mem. at 2 n.2) (emphasis added).

Thus, Plaintiffs are bound by their judicial admissions that the 2007 Agreement was a stand alone agreement that it "<u>does not address in any way the parties' rights</u>, including the right to use plaintiffs' names, concerning any other editions of the Treatise <u>or any new pocket parts, such as the '2008-09 Pocket Part.'</u>"  <u>See</u> <u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, 455 F.3d 195, n. 20 (3d Cir. 2006) ("Judicial admissions are concessions in pleadings or briefs that bind the party who makes them."); <u>Parilla v. IAP Worldwide Serv., VI, Inc.</u>, 368 F.3d 269, 275 (3d Cir. 2004) (finding that the plaintiff was bound because she "expressly conceded those facts in her complaint.").

Second, in contrast to the broad definition of "Work" in the 2000 Agreement (Zeisler Decl., Ex. C & Point I.C.3, <u>infra</u>), the definition of "Work" set forth in the 2007 Agreement is extremely narrow and clearly limited to the 2007 Supplement:

> Publisher is preparing a Work for publication entitled
> ***Pennsylvania Practice Criminal Procedure 2007 Supplement,***
> (the "Work").

<u>See</u> 2007 Agmt. § 1 (emphasis in original) (Zeisler Decl., Ex. L).  Since the 2007 Agreement only applies to the "Work" as defined in the 2007 Agreement (i.e., the 2007 Supplement), then the 2007 Agreement's merger clause can only supersede prior agreements concerning that "Work" (i.e., the 2007 Supplement).  <u>See</u> 2007 agreement, § 9(H) ("This Agreement supersedes all previous agreements <u>regarding the Work</u>.") (emphasis added).

The Court should reject any argument by Plaintiffs that, because the 2007 Agreement's merger clause states that "[a]ll prior negotiations and representations are merged into this Agreement," the 2007 Agreement supersedes <u>all</u> agreements between the parties, including the 2000 Agreement.  That argument isolates one sentence and takes it out-of-context

15

from the entire merger clause.  At the same time, it ignores the fact that the merger clause is

limited to the "Work" as defined in the 2007 Agreement (i.e., the 2007 Supplement).  Yet, the

merger clause provides in its entirety:

> This is the entire agreement of the parties.  All prior negotiations
> and representations are merged into this Agreement.  This
> Agreement supersedes all previous agreements concerning the
> Work.

See 2007 Agmt., § 9(H) (emphasis added) (Zeisler Decl., Ex. L).  Thus, by its clear terms, the

2007 Agreement's merger clause is limited to the "Work" defined therein, and accordingly, the

2007 Agreement only supersedes previous negotiations, representations or agreements

concerning the 2007 Supplement.[4]  For all of these reasons, the 2000 Agreement was not

superceded and applies Plaintiffs' claims in this lawsuit.

### 3.   The parties' 2000 Agreement covers the 2008-2009 Pocket Part at issue.

In contrast to the limited definition of "Work" in the 2007 Agreement, the parties'

2000 Agreement defines the "Work" as:

> two original works (the "Work") tentatively entitled 1) West's
> Pennsylvania Forms Criminal Procedure and 2) **West's
> Pennsylvania Practice Criminal Procedure** regarding the law of
> criminal procedure in Pennsylvania.

2000 Agmt. § 1 (emphasis added) (Zeisler Decl. Ex. C).  The 2000 Agreement also includes as

part of its definition of "Work" all future pocket parts and other upkeep:

> Authors will provide upkeep to the Work on an annual basis, or as
> otherwise agreed by Publisher and Authors, **including but not
> limited to supplements, revisions, or new editions of the Work**
> in order to keep it current and marketable.  All references to the
> "Work" in this Agreement **also apply to such upkeep as well as**

---

[4]  Plaintiffs' interpretation of the merger clause – taken to its logical conclusion – would cause the
2007 Agreement that is otherwise limited to the 2007 Supplement to supersede any prior agreement
between the parties, such as the prior agreements concerning the book entitled, "Police Misconduct: Law
and Litigation," which was authored by Rudovsky and published by West.  See Rudovsky Decl. ¶ 17
(Zeisler Decl., Ex. I).  Clearly, the effect of the 2007 Agreement's merger clause cannot be so broad; it is
limited to the 2007 Supplement – the "Work" at issue in the 2007 Agreement.  See 2007 Agmt., § 9(H).

**to the original Work** unless otherwise provided.

Id., § 2(B) (emphasis added).  Under the 2000 Agreement, Plaintiffs were required to deliver the first update of the Work to West in 11 months, and Plaintiffs agreed that "subsequent upkeep will be due annually thereafter."  Id., § 2(B)(1).  Plaintiffs prepared annual pocket parts to update the material each year after 2001, except of course, when Plaintiffs declined to prepare the 2008 pocket part and West had to use other authors.  Maess Apr. 10, 2009 Decl. ¶¶ 6-7 (Zeisler Decl., Ex. F); Am. Compl. ¶ 11, 18.

Based upon the foregoing evidence, it is beyond dispute that the 2000 Agreement governs the Treatise and Plaintiffs' subsequent preparation of pocket parts.

    **4.**    **Because Plaintiffs consented to the use of their names in connection with the Treatise and pocket parts, their defamation claim should be dismissed.**

Plaintiffs' defamation claim is deficient because it is based upon the allegation that the 2008-2009 Pocket Part "constitutes a false statement that the Plaintiffs authored the publication."  Am. Compl. ¶ 87.  However, West possessed the express contractual right to use "Authors' names in connection with the Work and upkeep of the Work" *even if Plaintiffs did not participate in its upkeep*:

> Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work.  If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit **in addition to or in lieu of credit given to Authors**.

2000 Agmt., § 3(A)(2) (Zeisler Decl., Ex. C) (emphasis added).  Moreover, West was clearly permitted to use another author and "give him or her authorship credit in addition to or in lieu of credit given to Authors."  Id. (emphasis added).  Plaintiffs also gave West the right to use their names and summaries of their backgrounds and qualifications in connection with all advertising and promotion of the Work:

> Use, and license others to use, Author's names and likenesses, and summaries of Authors' backgrounds and professional qualifications

17

> as part of the Work, including revisions and new editions, as Publisher sees fit, and generally in connection with the advertising and promotion of the Work, including revisions and new editions.

Id. § 7(4).  Indeed, The Work was and is "a work made for hire within the meaning of the United States copyright laws" [§ 4(A)7], and to the extent that "any portion of the Work or work product" is not deemed to be a work made for hire under applicable copyright law:

> each Author grants, transfers and assigns exclusively to Publisher for the full term of the copyright and any renewals or extensions of the copyright all rights in the Work, or any portion of the Work, including but not limited to: . . . 2. The right to publish, reproduce, transmit, adapt, sell, or otherwise make use of the Work or portions of the Work (including **all subsequent editions, supplements, and versions of the Work, regardless of length or nature**) throughout the world in any form or medium, now or hereinafter devised . . . for the entire term of the copyright.

Id. § 4(B)(2) (emphasis added).

Based upon the foregoing contractual language, it is abundantly clear that West possessed the contractual right to list Plaintiffs' names along with the West's "Publisher's Staff" on the cover of the 2008-2009 Pocket Part and in connection with any promotion or advertising. Id., § 3(A)(2), § 4(B)(2) & § 7(4).

Courts applying Pennsylvania law have long held that a plaintiff's consent to a defendant's communication precludes any liability for defamation with respect to such communications.  See Sharman v. C. Schmidt & Sons, Inc., 216 F. Supp. 401, 405 (E.D. Pa. 1963) (stating that release signed by plaintiff precluded any liability on behalf of defendant with respect to the communications at issue and that "[s]uch consent negatives the existence of any tort in the first instance"); Baker v. Lafayette College, 504 A.2d 247 (Pa. Super. 1986) (finding professor's consent to publication of his performance evaluations gave college absolute privilege against defamation claim with respect to those evaluations); see also Sobel v. Wingard, 531 A.2d 520, 522 (Pa. Super. 1987) (stating that evaluations of an employee by an employer are deemed to be consented to by employee and finding that "consent is an absolute privilege").

18

Since Plaintiffs consented to, among other things, the use of their names in connection with the Work (which by definition includes upkeep and revisions such as the pocket parts [2000 Agmt., §§ 1, 2(B), 3(A)(2)]), Plaintiffs are precluded from asserting a defamation claim against West based upon the use of their names in connection with the 2008-2009 Pocket Part. <u>Sharman;B aker, supra.</u>

**D.    Plaintiffs' Statement That the 2008-2009 Pocket Part Was "By David Rudovsky and Leonard Sosnov" and "The Publisher's Staff" Is True or Substantially True and Thus Not Actionable**

"[I]n Pennsylvania truth is an absolute defense to a defamation claim and a defendant need only show substantial, rather than complete, truth." <u>Pacitti v. Durr</u>, 310 Fed. Appx. 526, 528-529, 2009 WL 325760, at *2 (3d Cir. [Pa.] 2009); <u>Tucker v. Fischbein</u>, 237 F.3d 275, 287-88 (3d Cir. 2001); <u>Pierce v. Capital Cities Comm., Inc.</u>, 576 F.2d 495, 507 n.46 (3d Cir. 1978); <u>see also</u> <u>Gilbert v. Bionetics Corp.</u>, No. 98-2668, 2000 WL 807015, at * 3 (E.D. Pa. June 6, 2000) ("The truth required to avoid liability for defamation is not complete truth, but rather substantial truth"); <u>Bobb v. Kraybill</u>, 354 Pa. Super. 361, 364, 511 A.2d 1379, 1380 (Pa. Super. 1986).

Here, the statement that the pocket part was by "The Publisher's Staff" and Plaintiffs (Am. Compl., Ex. A) is substantially true, if not completely true, since they <u>both</u> contributed to it. By a pocket part's very nature it is a cumulative work, and Plaintiffs have consistently asserted that virtually all of the content in the 2008-2009 Pocket Part was work that they authored. <u>See</u> Am. Compl. ¶ 24; Rudovsky Mar. 23, 2009 Decl. ¶ 13 (Zeisler Decl., Ex. I). Indeed, Mr. Sosnov admitted at deposition that the Plaintiffs were <u>the</u> <u>authors</u> of "the overwhelming majority of the content" contained in the 2008-2009 Pocket Part:

> Q:   It is fair to say that you are the author of the majority, the overwhelming majority of the content of West Exhibit 2 [the 2008-2009 Pocket Part]?

MR. CHARLSON:  Meaning Mr. Sosnov and Mr. Rudovsky.

MR. RITTINGER:  And Mr. Rudovsky.

THE WITNESS:  Yes.

19

Sosnov Tr. at 212:4-11 (Zeisler Decl., Ex. G).  Thus, the complained of statements about the 2008-2009 Pocket Part – that it was "by David Rudovsky and Leonard Sosnov" and "The Publisher's Staff" – are true or substantially true, and West should be granted summary judgment. See Pacitti, 2009 WL 325760 at *2 (affirming grant of summary judgment on defamation claim where written communications were substantially true); Keeshan v. Home Depot, U.S.A., Inc., No. 00-529, 2001 WL 310601, at *15-16 (E.D. Pa. Mar. 27, 2001) (granting summary judgment to defendant based upon the substantial truth of defendant's allegedly defamatory statement about plaintiff's termination); Kraybill, 354 Pa. Super. at 356 (affirming grant of summary judgment on defamation claim where appellant was "unable to specify *anything* reported that was misquoted or false").

II.     **PLAINTIFFS' CLAIMS FOR FALSE ADVERTISING AND FALSE ENDORSEMENT UNDER THE LANHAM ACT MUST BE DISMISSED**

        Plaintiffs' claims under the Lanham are deficient and judgment must be entered in West's favor because: (i) according to the Supreme Court's decision in Dastar, the Lanham Act does not apply to disputes about the authorship of communicative works such as books; (ii) Plaintiffs' false endorsement claim based upon authorship is not actionable under the Lanham Act; (iii) Plaintiffs lack standing under the Lanham Act to bring a false advertising claim; (iv) West possessed the express contractual right to use Plaintiffs' names in connection with the 2008-2009 Pocket Part regardless of whether or not Plaintiffs were involved with it, and thus there was no false advertising or false endorsement; and (v) despite West's contractual rights, West made no false statement on the cover of the 2008-2009 Pocket Part because it is undisputed that Plaintiffs were substantial contributors to the majority of material contained therein.

    A.      **The Supreme Court's Decision In *Dastar* Bars Plaintiffs' Lanham Act Claims**

        Plaintiffs assert Lanham Act claims against West for false advertising ("West's false attribution of the Work to the Plaintiffs" is likely to cause consumer confusion in violation of Section 43(a) of the Lanham Act), and for false endorsement (West's attribution of the "sham"

20

2008-09 Pocket Part to plaintiffs falsely implies that plaintiffs endorse or sponsor the 2008-09 Pocket Part which is likely to cause consumer confusion in violation of Section 43(a) of the Lanham Act). See Am. Compl. ¶¶ 62-64, 68, 70, 72.

However, Plaintiffs' Lanham Act claims must fail because the Supreme Court has held that the Act only applies to the "origin" of the "tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37, 123 S.Ct. 2041, 2050 (2003) (emphasis added); see also Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300, 1306 (Fed. Cir. 2009) ("The Supreme Court held that 'origin of goods,' as that term is used in Section 43(a), does not refer to 'the person or entity that originated the ideas or communications that 'goods' embody or contain.' Instead, the Court read 'origin of goods' as referring 'to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.'").

Specifically, in Dastar, the Supreme Court addressed whether the word "origin" in the Lanham Act could be read to refer to the author of a work, such as a novel, rather than to the producer of the physical book. 539 U.S. at 31-33. Even though the Court recognized that "[t]he purchaser of a novel is interested not merely, if at all, in the identity of the producer of the physical tome (the publisher), but also, and indeed primarily, in the identity of the creator of the story it conveys (the author)," the Court refused to accord "special treatment" to "communicative products" (i.e., to read the word "origin" in the Lanham Act to cover the authors of communicative products) because such treatment would "cause[ ] the Lanham Act to conflict with the law of copyright, which addresses that subject specifically." Id. at 33. Accordingly, the Supreme Court expressly held that the Lanham Act could not apply to disputes over authorship of communicative products such as books. Id. at 37.

Indeed, this Court recently dismissed a plaintiff's false advertising claim under the Lanham Act against a research organization for its publication of an alleged sham research paper – akin to the alleged "sham" pocket part here – holding that "[t]he Lanham Act protects

against the misrepresentation of the origin of goods; it does not reach 'communicative products' such as books or articles." Andela v. The American Ass'n for Cancer Research, No. 09-2487, 2009 WL 5213716, at *1 (E.D. Pa. 2009) (Fullam, J.) (citing Dastar, 539 U.S. at 36-37). Since Dastar, courts in this Circuit and others have consistently dismissed Lanham Act claims involving the origin of communicative products. See, e.g., Schiffer Publ'g, Ltd. v. Chronicle Books, LLC, 350 F. Supp. 2d 613, 618 (E.D. Pa. 2004); Antidote Intern. Films, Inc. v. Bloomsbury Publ'g, 467 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2006); Thomas Publ'g Co. v. Technology Evaluation Ctrs., Inc., 2007 WL 2193964, at *3 (S.D.N.Y. 2007).

Here, there is no dispute that West is publisher of the Treatise and the 2008-2009 Pocket Part at issue. See West's Responses and Objections to Plaintiffs' First Set of Interrogatories, dated October 5, 2009; Sosnov Tr. 10:19-14:11 (Zeisler Decl., Exhs. D & G). Accordingly, Plaintiffs' Lanham Act claims must be dismissed. Dastar, Andela, Schiffer, Antidote, supra.

**B.  Plaintiffs' False Endorsement Claim Based Upon Authorship Is Not Actionable**

One of the Supreme Court's stated rationales in Dastar for refusing to extend "origin" under the Lanham Act to include authorship was so that publishers would not face the Hobbsian choice that West faced here; namely, a claim from Rudovsky and Sosnov for "false" sponsorship if West listed them as authors along with West's Publisher's Staff, versus a claim from Rudovsky and Sosnov for failure to provide proper attribution if West only listed West's publishing staff as the author. See Dastar, 539 U.S. at 36:

> Another practical difficulty of adopting a special definition of 'origin' for communicative products is that it places the manufacturers of those products in a difficult position. On the one hand, they would face Lanham Act liability for failing to credit the creator of a work on which their lawful copies are based; and on the other hand they could face Lanham Act liability for crediting the creator if that should be regarded as implying the creator's 'sponsorship or approval' of the copy, 15 U.S.C. § 1125(a)(1)(A).

801706_3

Here, West chose to list the Plaintiffs and West's Publishing Staff as authors (Am. Compl., Ex. A), and Plaintiffs subsequently asserted two Lanham claims against West. These claims, however, must be dismissed. Dastar, 539 U.S. at 36-38.

### C.   Plaintiffs Lack Standing Under the Lanham Act to Bring a False Advertising Claim

Plaintiffs lack standing to bring a false advertising claim under the Lanham Act here because they have not, and cannot, allege a competitive harm.[5]   Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 234 (3d Cir. 1998) (Alito, J.) (affirming district court's dismissal of plaintiff's Lanham Act claim due to lack of standing since plaintiff did not allege competitive harm based upon defendant's advertising).   Even if Plaintiffs alleged some general commercial interest in the publishing of Pennsylvania Criminal Practice and Procedure guides (which Plaintiffs did not allege here), their false advertising claim would have to be dismissed for lack of standing because Plaintiffs did not allege any specific competitive harm. Parker v. Viacom Intern., Inc., 605 F. Supp. 2d 659, 665 (E.D. Pa. 2009).

Discovery has confirmed that Plaintiffs have suffered no competitive harm – such as specific lost business opportunities – as a result of West's publication of the 2008-2009 Pocket Part. See Plaintiffs' Interrogatory Responses ¶ 7 and Sosnov Tr. 6:12-7:19; 8:19-10:12; 121:24-123:21 (Zeisler Decl., Exhs E & G).   Indeed, Plaintiffs are not competitors of West, and under the 2000 Agreement, Plaintiffs could not have sold their own Pennsylvania Criminal Practice and Procedure treatise. See 2000 Agmt. § 5(A).   For these reasons, Plaintiffs lack standing to bring a false advertising claim under the Lanham Act. See Conte, Parker, supra.

---

[5] The complete elements for a Lanham Act claim for false advertising are: "(1) that the defendant made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) *that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.*" Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 872 (3rd Cir. 1992) (emphasis added).

D.   **West Possessed the Express Contractual Right to Use Plaintiffs' Names In Connection With the 2008-2009 Pocket Part Regardless of Whether or Not Plaintiffs Were Involved With It**

West possessed the express right to use Plaintiffs' names "generally in connection with the <u>advertising</u> and <u>promotion</u> of the Work." 2000 Agmt. § 7[4] (emphasis added). Indeed, to the extent that Plaintiffs complain that West's cover-page gives attribution (or false attribution) to both the "Publisher's Staff" and to the Plaintiffs as authors (Am. Compl. ¶¶ 37, 62), the Agreement clearly gives West that right:

> Publisher will have the right to use Authors' names in connection with the Work and upkeep of the Work. If the Work or upkeep is prepared by a person other than Authors, Publisher may identify that person on the new material and any related advertising and give him or her authorship credit <u>in addition to or in lieu of credit given to Authors</u>.

2000 Agmt. § 3(A)(2) (emphasis added); <u>see also</u> Point I.C., <u>supra</u>.

It is well recognized that consent to the use of one's name or likeness is a valid defense against false advertising and false endorsement claims under the Lanham Act. See, <u>e.g.</u>, <u>Troyer v. Shrider</u>, 2008 WL 4291450, at *4-5 (C.D. Cal. 2008) (denying plaintiff's motion for preliminary injunction and stating that false endorsement claims must be based on unauthorized use of celebrity's identity); <u>Marketing Prods. Mgmt., LLC v. HealthAndBeautyDirect.com, Inc.</u>, 333 F. Supp. 2d 418, 432-33 (D. Md. 2004) (granting defendant's motion to dismiss false endorsement claim brought under Lanham Act because, among other things, defendant's continued use of plaintiff's likeness in marketing was "in no sense a violation of the authority granted by plaintiffs to the defendants"). Here, given the provisions of the 2000 Agreement, West should be granted judgment on Plaintiffs' claims for false advertising (Count I) and false sponsorship (Count II). <u>Troyer</u>, <u>Marketing Prods.</u>, <u>supra</u>.

24

**E.**    **West Made No False Statement on the Cover of the 2008-2009 Pocket Part Because It Is Undisputed that Plaintiffs Were Substantial Contributors to the Majority of Material Contained in the Pocket Part, and Thus, West's Statements Are Not Actionable Under the Lanham Act**

Plaintiffs' Lanham Act claim for false advertising claim (Count I) and false endorsement (Count II) also fail because West's statements were true or substantially true. See Point I.D., supra. In order to establish a false advertising claim under the Lanham Act, a plaintiff must prove, in pertinent part, "that the defendant has made false or misleading statements as to his own product [or another's]." Ditri, 954 F.2d at 872; see also GlaxoSmithKline Consumer Healthcare, LP v. Merix Pharm. Corp., 197 Fed. Appx. 120, 123 n.1 (3d Cir. 2006). Truth, therefore, is a defense to a Lanham Act false advertising claim. See Ditri, 954 F.2d at 872; GlaxoSmithKline, 197 Fed. Appx. at 123 n.1. Here, Plaintiffs have conceded that they authored the majority of the material contained in the 2008-09 Pocket Part (Point I.D), and thus, West's attribution of authorship cannot serve as the basis for Plaintiffs' Lanham Act false advertising claim. See, e.g., Ditri, 954 F.2d at 872.

Similarly, Plaintiffs' claim for false endorsement under the Lanham Act also fails because statements of sponsorship that are true are not likely to create confusion and cannot serve as the basis of a Lanham Act false endorsement claim. See, e.g., Marketing Prods. Mgmt., LLC v. Healthandbeautydirect.com, Inc., 333 F. Supp. 2d 418, 429-33 (D. Md. 2004) (finding that defendant did not violate the Lanham Act where it continued using a commercial that featured the product's inventor — even though the inventor no longer had a business affiliation with the product and claimed that he no longer endorsed the product — because the statements made in the commercial were literally true and not likely to confuse consumers).

Here, as previously stated, it is beyond dispute that Plaintiffs authored the majority of the 2008-2009 Pocket Part (see supra Point I.D), and consequently, West's attribution of partial authorship to Plaintiffs was a true statement. Accordingly, Plaintiffs' Lanham Act false endorsement claim fails as a matter of law. See, e.g., Marketing Prods. Mgmt., LLC, 333 F. Supp. 2d at 429-33.

25

III.   **PLAINTIFFS' CLAIM UNDER PENNSYLVANIA CODE § 8316(a) MUST BE DISMISSED BECAUSE PLAINTIFFS GAVE WEST PERMISSION TO USE THEIR NAMES AND WEST, AS A GOOD FAITH PUBLISHER, IS STATUTORILY IMMUNE FROM LIABILITY UNDER THE STATUTE**

A.   **Plaintiffs' Section 8316 Claim Must Be Dismissed Because Plaintiffs Contractually Gave West the Right to Use Their Names**

Pursuant to Pennsylvania Code Section 8316(a), "[a]ny natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose <u>without the written consent</u> of such natural person . . . may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use." 42 Pa. C.S. § 8316 (emphasis added). Plaintiffs allege in Count III that West, without authorization, partially attributed authorship of the 2008-2009 Pocket Part to Plaintiffs. <u>See</u> Am. Compl. ¶¶ 76, 79, 81, 83.

Yet, Plaintiffs' Section 8316 claim should be dismissed because West had authorization to use Plaintiffs' names in connection with the "Work and upkeep of the Work" (2000 Agmt., § 3[A][2]), and to use Plaintiffs' names and likenesses with respect to revisions and new editions as West sees fit (<u>id.</u>, § 7[4]). <u>See</u> Point I.C, <u>supra</u>. Given this contractual permission, Plaintiffs' Section 8316(a) claim is legally deficient. <u>See</u> 42 Pa. C.S.A. § 8316(a) (prohibiting use of another's name for a commercial purpose "without the written consent of such natural person"); <u>see</u>, <u>e.g.</u>, <u>Tillery v. Leonard & Sciolla, LLP</u>, 437 F. Supp. 2d 312, 328-29 (E.D. Pa. 2006) (denying plaintiff's motion for preliminary injunction pursuant to § 8316 because, among other things, plaintiff signed a written consent agreement allowing defendant to use his name).

B.   **West Is Also Immune From Liability For Unauthorized Use of Plaintiffs' Names Pursuant to Section 8316(d)**

Count III also fails as a matter of law because West is immune from suit pursuant to Section 8316(d) of that statute. Although the statute prohibits the unauthorized use of a person's name or likeness, Section 8316(d) grants immunity to any "person, firm or corporation . . . in the business of producing, manufacturing, publishing or disseminating material for

26

commercial or advertising purposes by any communications medium . . . unless they had actual knowledge of the unauthorized use" of that person's name or likeness. 42 Pa. C.S. § 8316(d).

Here, it is undisputed that West is a publishing corporation that publishes and disseminates material for commercial purposes. See Maess April 14, 2010 Decl. ¶ 1; Am. Compl. ¶ 6 (West is "engaged in the business consisting of . . . publishing"). Moreover, at the time that West published and disseminated the 2008-2009 Pocket Part, West reasonably believed that it was acting with Plaintiffs' authorization pursuant to the 2000 Agreement. See Maess April 10, 2009 Decl. ¶¶ 6, 10 (Zeisler Ex. F). Indeed, West had published annual pocket parts pursuant to the parties' written agreements for each year after 2001. Id. ¶ 7; Am. Compl. ¶ 11.

Moreover, Plaintiffs deposed West's witnesses and elicited no testimony suggesting that West believed it was acting without authorization. Plaintiffs' bald assertion that "West had actual knowledge of the unauthorized use of the names of Rudovsky and Sosnov" (Am. Compl. ¶ 82) is legally insufficient to overcome West's motion for summary judgment and the Declaration of Jean Maess stating that West believed it was acting pursuant to the parties' agreement. See Fed. R. Civ. P. 56(e); Lujan 497 U.S. at 888 (the non-moving party must bring forth "specific facts" to support its Complaint and cannot rely on conclusory allegations at the summary judgment stage). Accordingly, this claim should be dismissed because West – believing it had the contractual authority to publish using Plaintiffs' names – is immune from liability. See § 8316(d).

## IV.   SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF WEST ON PLAINTIFFS' CLAIMS FOR INVASION OF PRIVACY

### A.   Plaintiffs' False Light Claims Must Be Dismissed Because It Has Now Been Established That Plaintiffs Suffered No Special or General Damages

Plaintiffs' common law claims for invasion of privacy claims are deficient because they have incurred no special damages or general damages. See Points I.A. & I.B, supra. Courts in Pennsylvania apply the same damages rules governing defamation actions to

invasion of privacy actions.  Fogel, 500 F. Supp. at 1088. "These restrictions include, for example, the requirement that special damages be pleaded and proved by the plaintiff in any case in which the defamatory words are not actionable per se."  Id. (citing Restatement (Second) of Torts, § 652E).  Because Plaintiffs have suffered no special or general damages, summary judgment must be granted to West because Plaintiffs will be unable to establish an essential element of the invasion of privacy claims.  Fogel, 500 F. Supp. at 1088-89 ("Since the requirement of special damage is likewise applicable to invasion of privacy based upon 'Publicity placing person in false light,' and since plaintiffs in their depositions stated that they were unable to prove special damage, the plaintiffs are unable to establish an essential element for such a claim.").

### B.   Plaintiffs' Common Law Claims for Invasion of Privacy Are Also Deficient In Light of the Parties' 2000 Agreement

Plaintiffs allege in Count V (common law misappropriation of name) that they did not authorize West to use their names as authors with respect to the 2008-2009 Pocket Part and that such false use of Plaintiffs' names constitutes invasion of privacy through the misappropriation of their name or likeness. Am. Compl. ¶¶ 96-98.  As is demonstrated above, however, the Agreement grants West the right to use Plaintiffs' names in connection with the "Work and upkeep of the Work" [], and to use and license to use Plaintiffs' names and likenesses with respect to revisions and new editions as West sees fit.  See 2000 Agmt., § 3(A)(2), § 7(4); Point I.C, supra.  Accordingly, Plaintiffs' common law claim for invasion of privacy through misappropriation of names is legally deficient.  See Sharman, 216 F. Supp. at 406-07 (E.D. Pa. 1963) ("One universally accepted principle of the right of privacy is that a consent to an invasion is a complete defense to the appropriation of a plaintiff's likeness to sell products"); 2 Summary of Pa. Jur. 2d Torts § 22:19, Effect of Release (stating that, to be actionable, invasions of privacy with respect to appropriation of name or likeness must be made without authority).

Similarly, Plaintiffs allege in Count VI (invasion of privacy - false light) that West's use of Plaintiffs' names with respect to the publication of the 2008-2009 Pocket Part

28

constitutes a major misrepresentation of Plaintiffs' involvement with the 2008-2009 Pocket Part. Specifically, Plaintiffs claim that use of their names suggests that they approve of the pocket part as updated and revised, which thereby invades their privacy and casts it in a false light. See Am. Compl. ¶¶ 103-04.

Once again, however, because West possessed written permission to use Plaintiffs' names (Point I.C), Plaintiffs' common law claim for invasion of privacy through false light is legally deficient. See McFadden v. United States of America, 2005 WL 1413196, at *6 (M.D. Pa. 2005) (finding signed written consent granting defendant right to make certain disclosures was dispositive of plaintiff's invasion of privacy claim); see also Am. Jur. Privacy § 92 (2009) (right of privacy waived by written consent).

### C.   Plaintiffs' Common Law Claims for False Light Are Also Deficient Because West's Statement Attributing Partial Authorship to Plaintiffs Was True

Plaintiffs' common law claim for invasion of privacy/false light (Count VI) fails for the additional reason that West's statements were true. See Point I.D, supra. In Pennsylvania, to prove a claim for invasion of privacy based on false light, a plaintiff must prove that he was (1) placed in a false light that would be highly offensive to a reasonable person; and (2) that the actor had knowledge of or acted in disregard as to the falsity of the publicized matter and the false light in which the other would be placed. See Choi v. Sohn, No. 01 Civ. 1782, 2004 WL 627060, at *4 (E.D. Pa. Mar. 1, 2004); Curran v. Children's Serv. Ctr. of Wyoming County, Inc., 578 A.2d 8, 12 (Pa. Super. 1990); see also Lin v. Rohm & Haas Co., 293 F.Supp.2d 505, 521-22 (E.D. Pa. 2003); Restatement Second of Torts § 652E. Accordingly, truth is a defense to false light claims. See, e.g., Choi, 2004 WL 627060, at *4 (granting summary judgment dismissing plaintiff's false light claim because, among other reasons, plaintiff could not demonstrate how the publication of an accurate statement painted him in a false light); Fogel v. Forbes, Inc., 500 F. Supp. 1081, 1088 (E.D. Pa. 1980) ("It is essential, however, that the matter published concerning the plaintiff be untrue.").

801706_3

Here, the Plaintiffs claim that West's attribution to them of partial authorship of the 2008-2009 Pocket Part has placed them in a false light. See Am. Compl. ¶ 103. However, as previously demonstrated in Point I.D, supra, the Plaintiffs authored the majority of the 2008-2009 Pocket Part, and consequently, West's statement was accurate statement and not subject to a false light claim. Choi, 2004 WL 627060, at *4.

## V.   SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF WEST ON PLAINTIFFS' PUNITIVE DAMAGES REQUEST

Plaintiffs' *ad damnum* request for punitive damages should be stricken. "Pennsylvania law provides that a defendant must have engaged in 'outrageous' or 'intentional, reckless or malicious' conduct to sustain a claim for punitive damages." Boring v. Google Inc., No. 09-2350, 2010 WL 318281, at *7 (3d Cir. Pa. Jan. 28, 2010) (quoting Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984)). Here, Plaintiffs' Amended Complaint is devoid of a single concrete allegation of intentional, reckless or malicious conduct by West. While Plaintiffs conclusorily alleged in the Amended Complaint that "[t]he wrongful actions by Defendants in this case were egregious, and done intentionally to injure Plaintiffs or with deliberate indifference to the reputation and rights of Plaintiffs" (Am. Compl. ¶ 85; see also ¶¶ 47-48), Mr. Sosnov testified that he had no idea what West's motivation was. Sosnov Tr. 30:4-31:6 (Zeisler Decl., Ex. G). Indeed, West has denied that it intended to hurt Plaintiffs' reputations (Zeisler Decl., Ex. B), and Plaintiffs took four depositions of West employees in March 2010 who were involved with the Treatise and elicited no testimony that anyone at West did anything to intentionally injure Plaintiffs. Moreover, West has another publication with Mr. Rudovsky entitled "Police Misconduct: Law and Litigation" that the parties continued to publish without dispute. Maess Apr. 10, 2009 Decl. ¶ 28 (Zeisler Decl., Ex. F).

Pursuant to Rule 56(e), it is incumbent upon Plaintiffs to bring forth "specific facts" to support its Amended Complaint and cannot rely on conclusory allegations at the summary judgment stage. Lujan, 497 U.S. at 888. They cannot bring forth any such specific facts. Accordingly, the Court should dismiss Plaintiffs' request for punitive damages in advance

30

of trial. See Boring, 2010 WL 318281, at *7 (dismissing claim for punitive damages before trial where the complaint failed to allege any outrageous or malicious conduct toward plaintiff); see also Phillips v. Cricket Lighters, 883 A.2d 439, 445, 447 (Pa. 2005) (reversing a denial of summary judgment as to a punitive damages claim because "[a] showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed"); Feld, 485 A.2d at 748 (holding that submission of punitive damages is sue to jury was error).

## VI.   SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF WEST ON PLAINTIFFS' ATTORNEY'S FEES CLAIM

To the extent that Plaintiffs request attorney's fees, it must be denied given that the Court should award summary judgment in favor of West on all of Plaintiffs' claims. See, e.g., Mathews v. Hermann, No. 07-01318, 2008 WL 1914781, at *16 (E.D. Pa. Apr. 30, 2008) ("To the extent that Plaintiff's invocation of Section 1988 constitutes a request for attorney's fees, it is denied, as the Court has awarded summary judgment against Plaintiff on all claims.").

In addition, none of Plaintiffs' causes of action permit an award of attorney's fees under the facts alleged here. "In Pennsylvania, a litigant cannot recover attorney's fees unless there is express statutory authorization, an agreement between the parties, or some other exception." Option One Mortg. Corp. v. Fitzgerald, No. 3:07-cv-1877, 2009 WL 3380679, at *8 (M.D. Pa. 2009); Trizechahn Gateway LLC v. Titus, 601 Pa. 637, 652, 976 A.2d 474, 482-83 (Pa. 2009). Neither a defamation claim (42 Pa. C.S. § 8343) nor a claim for unauthorized use of name (42 Pa. C.S. § 8316) authorizes an award of attorney's fees. Moreover, Plaintiffs cannot recover attorney's fees for their common law claims for invasion of privacy. See, e.g., Hall v. Harleysville Ins. Co., 943 F. Supp. 536, 545 (E.D. Pa. 1996) ("Plaintiffs asserted against both groups of defendants a claim under Pennsylvania common law for invasion of privacy for which the law provides no recovery of attorney's fees.").

Even Plaintiffs' legally deficient Lanham Act claims (see Point II, supra) only permit an award of attorney's fees in "exceptional" circumstances that are not alleged here. 15 U.S.C. § 1117(a). First, a relevant factor in declining to award attorney's fees under Section

1117(a) has been the plaintiff's failure to show any damages, <u>Ferrero U.S.A., Inc. v. Ozak</u> <u>Trading, Inc.</u>, 952 F.2d 44 (3d Cir. 1991), and here, discovery has established that Plaintiffs have suffered no actual damages. <u>See</u> Point I.A & I.B, <u>supra</u>. Second, the Third Circuit has adopted the standard that attorney's fees may only be awarded under the Lanham Act where the infringing acts "can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" <u>Id.</u> (citing S. Rep. No. 1400, 93d Cong., 2d Sess. 2 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133; <u>Standard Terry Mills, Inc. v. Shen Mfg. Co.</u>, 803 F.2d 778, 782 n. 7 (3d Cir. 1986)). Yet, as West has addressed in detail, the statement that West's Publishing Staff and the Plaintiffs authored the 2008-2009 Pocket Part cannot be characterized as malicious, fraudulent, deliberate or willful since, among other things: (i) West had the express contractual right to list Plaintiffs and West's Publishing Staff as authors of the pocket part regardless of whether or not Plaintiffs participated in it (Point I.C, <u>supra</u>); (ii) at a minimum, West believed it had this right (Point III.B, <u>supra</u>); and (iii) Mr. Sosnov admitted that he knew of no factual basis to supported Plaintiffs' conclusory allegation that West intentionally tried to harm Plaintiffs' reputations. Sosnov Tr. 30:4-31:6 (Zeisler Decl., Ex. G). For these reasons and all of the reasons previously set forth herein, Plaintiffs' request for attorney's fees should be denied.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss the Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 56.

Dated:  April 21, 2010                                    Respectfully submitted,

/s/ James F. Rittinger
James F. Rittinger, Esq. (admitted *pro hac vice*)
Aaron M. Zeisler, Esq. (admitted *pro hac vice*)
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, NY 10169-0079
Tel: (212) 818-9200
Email: jrittinger@ssbb.com
        azeisler@ssbb.com

801706_3

_/s/ Matthew J. Borger_
Matthew J. Borger, Esq.
KLEHR HARRISON HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
Tel: (215) 568-6060
Email: mborger@klehr.com

801706_3

## CERTIFICATE OF SERVICE

I, Matthew J. Borger, hereby certify that the foregoing Memorandum of Law In Support of Defendants' Motion For Summary Judgment, the Declaration of Aaron M. Zeisler in Support Thereof, and the Declaration of Jean Maess in Support Thereof have been filed electronically and are available for viewing and downloading from the Court's ECF system.  I further certify that on this date I served the foregoing upon counsel listed below by hand delivery as follows:

Richard L. Bazelon
BAZELON LESS & FELDMAN, P.C.
1515 Market Street, Suite 700
Philadelphia, PA  19102-1907
215-568-1155
rbazelon@bazless.com

April 21, 2010

Matthew J. Borger

PHIL1 948916-1