IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID RUDOVSKY and                   :          CIVIL ACTION
LEONARD SOSNOV                       :
                                     :
          v.                         :
                                     :
WEST PUBLISHING CORPORATION,         :
WEST SERVICES INC., and              :
THOMSON LEGAL AND REGULATORY         :
INC. t/a THOMSON WEST                :          NO. 09-cv-00727-JF

MEMORANDUM

Fullam, Sr. J.                                          July 15, 2010

        Plaintiffs are two law professors; the defendants,

together, constitute an entity which publishes law books.  In

1987, plaintiffs authored, and defendants published, a two-volume

treatise on Pennsylvania criminal procedure, with annual updates

("pocket parts") sent to subscribers.

        In 2000, the parties contracted for a second edition of

the treatise, which was published in 2001 and for which

plaintiffs again provided annual pocket parts.  In 2007, the

parties entered into a separate, stand-alone agreement covering

the 2007 pocket part.

        In 2008, however, the parties were unable to come to

terms on the compensation to be paid plaintiffs.  Thereupon,

defendants proceeded to prepare, with their own staff, what

purported to be a 2008-2009 pocket part, and the cover of which

listed the authors as:

                      DAVID RUDOVSKY
              Member of the Pennsylvania Bar
     Senior Fellow, University of Pennsylvania Law School

LEONARD SOSNOV
Member of the Pennsylvania Bar
Professor of Law, Widener University School of Law


and
THE PUBLISHER'S STAFF

Complaint Ex. B.  The treatise as updated also was published on the Westlaw database, apparently without the reference to "The Publisher's Staff."  Plaintiffs, who had no part in the preparation of the pocket part in question, contend that it is largely a reprint of the pocket part for the previous year, and does not reflect changes which had occurred in Pennsylvania criminal procedural law.

Plaintiffs filed this action, alleging violations of the Lanham Act, 15 U.S.C. § 1125, and state-law claims for unauthorized use of name, defamation, and invasion of privacy. After suit was filed, defendants notified subscribers that plaintiffs had not "participated in any manner in this pocket part and they have discontinued their involvement in the publication," noted this change on the Westlaw database, and prepared and shipped a new pocket part that both revised the substance of the pocket part and did not list plaintiffs as authors.  Now before the Court is defendants' motion for summary judgment.

The claims under the Lanham Act, for false advertising and false endorsement, are precluded by the Supreme Court's

decision in Dastar Corp. v. Twentieth Century Fox Film Corp., 539

U.S. 23, 36-37 (2003), in which the Court held that

"communicative products," such as books, were not "goods" for the

purposes of the Lanham Act.  The Court recognized that "[t]he

purchaser of a novel is interested not merely, if at all, in the

identity of the producer of the physical tome (the publisher),

but also, and indeed primarily, in the identity of the creator of

the story it conveys (the author)."  Id. at 33.  However, to

accord "special treatment" to "communicative products" – that is,

to read the word "origin" in the Lanham Act to cover the authors

of communicative products -- would "cause[ ] the Lanham Act to

conflict with the law of copyright, which addresses that subject

specifically."  Id.  The Court held that:

> Another practical difficulty of adopting a
> special definition of "origin" for
> communicative products is that it places the
> manufacturers of those products in a
> difficult position.  On the one hand, they
> would face Lanham Act liability for failing
> to credit the creator of a work on which
> their lawful copies are based; and on the
> other hand they could face Lanham Act
> liability for crediting the creator if that
> should be regarded as implying the creator's
> "sponsorship or approval" of the copy, 15
> U.S.C. § 1125(a)(1)(A).

Dastar, 539 U.S. at 36.  The defendants here would be placed in

precisely this position if the Lanham Act claims, particularly

the false endorsement claim, were permitted to go forward. See

Antidote Intern. Films, Inc. v. Bloomsbury Pub., PLC, 467 F.

Supp. 2d 394, 398 (S.D.N.Y. 2006) ("Dastar holds that a claim for

false designation origin is unavailable where the "origin" in

question is the authorship of a communicative work.  This holding

necessarily applies with equal force to any claim for "false ...

representation[s]" with respect to the "affiliation ... of [one]

person with another person," where, as here, one person is the

publisher of a novel and the other is the author of the novel,

because the holding of Dastar would be meaningless if a false

authorship claim could be recast in this manner.")

        To the extent that "[t]he Court in Dastar left open the

possibility that some false authorship claims could be vindicated

under the auspices of § 43(a)(1)(B)'s prohibition on false

advertising," Zyla v. Wadsworth, Division of Thomson Corp., 360

F.3d 243 (1st Cir. 2004), the plaintiffs must be able to

establish that the cover page of the pocket part is a form of

"commercial advertising or promotion." Id. at 252 n.8.  There is

no evidence here that would permit a reasonable fact finder to

reach that conclusion.

        With regard to the state-law claims, defendants argue

first that the 2000 agreement between the parties bars any tort

claims. Plaintiffs argue that to the extent any contract

controls, the 2007 agreement superseded the 2000 agreement.  The

2000 agreement provides that "Authors will provide upkeep to the

Work on an annual basis, or as otherwise agreed by Publisher and

authors, including but not limited to supplements, revisions, or new editions of the Work in order to keep it current and marketable.  All references to the 'Work' in this Agreement also apply to such upkeep as well as to the original Work unless otherwise provided." 2000 Agreement at ¶ 2B.   The 2007 agreement includes a provision that "[t]his Agreement supersedes all previous agreements regarding the Work."  2007 Agreement at ¶ H. However, another provision of the 2007 agreement specifically defines the "Work" as "Pennsylvania Practice Criminal Procedure 2007 Supplement."  2007 Agreement at ¶ A1.  The question, then, is whether the 2000 agreement terminated in 2007 (leaving the parties without any agreement as to the 2008-2009 pocket part) or whether the 2007 agreement affected only the 2007 pocket part, leaving the 2000 agreement to control the 2008-2009 pocket part. This answer cannot be determined on the summary judgment record, and therefore the specific provisions of any contract cannot provide a basis for granting summary judgment to defendants.

Defendants' other arguments as to the state-law claims rely on two premises: that everything the defendants published was substantially true, and that plaintiffs have not suffered any harm.  As defendants note, plaintiffs did indeed author most of the 2008-2009 pocket part — but that is precisely the problem. By its very nature, a pocket part is presumed to be current as of its publication date, and so the alleged harm comes from the

possibility that a subscriber could interpret the pocket part as
a representation by plaintiffs that the pocket part is an
accurate analysis of Pennsylvania criminal law and procedure as
of December 2008.  If it accepted this interpretation, i.e., that
the pocket part communicates that purported experts on a legal
subject had provided outdated and incomplete information, knowing
that the reader would rely upon it, a jury could conclude that
the pocket part constituted defamation *per se*, because the work
"ascribes to another conduct . . . that would adversely affect
his fitness for the proper conduct of his lawful business."
Restatement (Second) of Torts § 573 (1977).  Plaintiffs then need
only prove "general damages," i.e., proof that one's reputation
was actually affected by the slander, or that he suffered
personal humiliation, or both. <u>Franklin Prescriptions, Inc. v.
New York Times Co.</u>, 424 F.3d 336, 343 (3d Cir. Pa. 2005).
Plaintiffs have adduced sufficient evidence of their personal
humiliation to proceed.

     An order will be entered.


                    BY THE COURT:


                    /s/ John P. Fullam
                    John P. Fullam,      Sr. J.