IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID RUDOVSKY and            :      CIVIL ACTION
LEONARD SOSNOV              :
                             :
        v.                   :
                             :
WEST PUBLISHING CORPORATION,   :
WEST SERVICES INC., and       :
THOMSON LEGAL AND REGULATORY   :
INC. t/a THOMSON WEST        :      NO. 09-cv-00727-JF

MEMORANDUM

Fullam, Sr. J.                                    March 30, 2011

      Plaintiffs are law professors who, several years ago, authored a treatise on Pennsylvania criminal law and practice, published by the defendants.  Pursuant to their contractual arrangements with the defendants, plaintiffs authored a series of annual updates of the treatise, which were circulated to subscribers in the form of "pocket parts."  Initially, plaintiffs were paid $5,000 each for authoring the pocket parts, but, in 2008, the defendants proposed that their compensation be reduced to $2,500 each.  This was not satisfactory to plaintiffs, and they declined to participate in the annual updates of the treatise.

      Notwithstanding plaintiffs' non-participation in the annual update for the year 2008 (and subsequent years), the defendants issued a 2008 pocket part for the treatise, and represented that it had been authored by the plaintiffs, whereas they had had nothing whatever to do with its creation.  It is plaintiffs' position that the 2008 supplement (and subsequent

supplements) were actually "sham" publications, since they did not actually represent updates of Pennsylvania law.  For example, whereas the pamphlet parts which plaintiffs had prepared tended to cite in excess of 100 reported cases, decided during the relevant year, the 2008 and subsequent pocket parts included only as few as six or seven cases (for 2008 only three Pennsylvania Supreme Court decisions), and omitted mention of the fact that many of the cases cited in the earlier updates had actually been reversed by appellate courts.

Plaintiffs brought this action, charging the defendants with defamation and holding them in false light.  Throughout this litigation, defendants have pursued what may properly be described as a "scorched earth" approach to defense – that there is no possible merit to any of plaintiffs' complaints, that plaintiffs are money-grubbing law professors with nothing better to do than sue West, which is, after all, a highly respected publishing house, etc., etc.

The jury has disregarded the defense arguments, and awarded each of the plaintiffs $90,000 in actual damages, plus $2.5 million in punitive damages.  Not surprisingly, the defendants have filed post-trial motions, contending that judgment should be entered in favor of the defendants or, at the very least, that a new trial should be granted, because the verdict lacks evidentiary support in any respect.

Actually, the facts are not very much in dispute. There is no question about the fact that the defendants did represent to the subscribing public that the offending pocket part had been authored by plaintiffs, whereas they had had nothing to do with its preparation.  As to whether plaintiffs were defamed by the publication, the evidence clearly permitted the jury to find that the pocket parts in question were totally inadequate, so much so that the reputation of the purported authors must have suffered.

Although there were many disagreements about the law expressed in the course of the trial, I am satisfied that the charge actually given to the jury was in fact correct.  Indeed, defendants' arguments in support of their post-trial motions do not actually identify any specific error in the charge, but appear principally to be disagreements with the factual findings of the jury.

More specifically, the jury was properly instructed about the requirement of actual malice before they could return an award of punitive damages, and before they could assume that plaintiffs' reputations had been damaged; and that the pertinent findings had to be made on the basis of clear and convincing evidence.

I am satisfied that the only significant issue is the amount of the verdict rendered by the jury.  With respect to

3

compensatory damages, their award of $90,000 to each plaintiff strikes me as quite generous, but not so excessive as to warrant interference by the court.  That is what we have juries for.

With respect to punitive damages, I do agree that the award of a total of $5 million is undoubtedly excessive.  The jury may have been too much influenced by the net worth of the defendants, and undoubtedly was influenced to some extent by the defendants' own evidence at trial, which seemed to show that the defendants have learned nothing from the experience, and would be likely to continue to commit violations of individuals' rights in the future.

Be that as it may, it is the obligation of this Court to make sure that constitutional limitations are not violated. In order to conform to constitutional limitations, punitive damages should not exceed the amount reasonably necessary to punish the wrongdoer for the harm actually caused, and to deter the wrongdoer from repeating such conduct in the future.  *See generally* <u>Pacific Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1 (1991); <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996); <u>Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.</u>, 399 F.3d 224 (3d Cir. 2005).

Taking into account the nature of the defendants' conduct, the amount of harm caused (as measured by the jury), and the need to provide deterrence, I conclude that the

constitutional limit in this case should be set at $110,000 for

each plaintiff.  When combined with the compensatory damages,

this would result in a recovery of $200,000 for each plaintiff.

An Order follows.


BY THE COURT:


/s/ John P. Fullam
John P. Fullam, Sr. J.